STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

STEVEN B. JACOBSON       4117-0
(sjacobson.law@hawaiiantel.net)
P. O. Box 240761
Honolulu, HI  96824-0761
Telephone:  (808) 377-1814

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK KSC<br><br>PLAINTIFF'S OPENING MEMORANDUM ON REMAND; CERTIFICATE OF SERVICE |

PLAINTIFF'S OPENING MEMORANDUM ON REMAND

Plaintiff Alice H. Morgan, Trustee, hereby submits the following opening brief on remand.

I.  **PLAINTIFF IS ENTITLED TO RECOVER THE AMOUNT OF THE JUDGMENT IN HER FAVOR WHICH SHE SURRENDERED IN SETTLEMENT, PLUS LEGAL INTEREST THEREON.**

The Ninth Circuit's Memorandum and Order in this action provides (at 1):

> "The surrender of a judgment may constitute consideration recoverable as compensatory damages. See *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 875 P.2d 894, 913 (Haw. 1994); *Earth Elements, Inc. v. Nat'l Am. Ins. Co. of Cal.*, 48 Cal. Rptr. 2d 399, 402 (Ct. App. 1996). Therefore, the district court erred in dismissing the Morgans' claim that they are entitled to reimbursement for the $30,096.64 judgment they surrendered to Dimiceli as part of their settlement of Dimiceli's claims. On remand, the court must consider whether the Morgans established that this element of their settlement with Dimiceli was reasonable and in good faith, such that it "may then be utilized as presumptive evidence of the breaching insurer's liability." *Sentinel*, 875 P.2d at 913."

The $30,096.64 judgment which was surrendered in settlement was entered in Hawaii state court on June 26, 1998. (Trial Exhibit 147, para. 2) Under HRS § 478-3, the legal interest which would have accrued on that judgment through October 19, 2007 – the date Mrs. Morgan's reply memo is due – is $28,035.24 ($30,096.64 x 9 115/365 days x .10). Interest thereon will accrue thereafter until the date judgment is entered, at a rate of $8.25 per day ($30,096.64 x 1/365 x .10), under HRS § 478-3.

The reasonableness and good faith of Morgans' surrender of their $30,096.64 judgment against Ms. Dimiceli, *after Chicago Title breached its duty to defend the validity of their mortgage,* in order to bring and end to Dimiceli's challenge to their insured mortgage, is clear beyond cavil.

2

The settlement agreement between the Morgans and Chicago Title, executed in November 1998, is Trial Exhibit 219. (Stipulated Morgan Trial Testimony, para. 14; Stipulated Sulla Trial Testimony, para. 13)

It brought an end to over five years of litigation in the Kauai Circuit Court, begun on August 16, 1993, when Morgans sued to collect amounts owed to them under a promissory note in the principal amount of $300,000 owed to them by Mr. Kerr, the repayment of which had been secured by their CT-insured mortgage. (Trial Exhibits 1, 5, 215, 216; Stipulated Morgan Trial Testimony, para. 7)

It is a straight-forward, standard settlement agreement in which the parties thereto – the Morgans and Ms. Dimiceli, who had purchased the mortgaged property from Kerr – exchanged standard forms of consideration, specifically the dismissal of pending claims and appeals among each other, and a mutual general release of all rights against each other, including Morgans' rights under the $30,096.64 judgment of June 26, 1998. (Trial Exhibit 219, esp. pp. 1-4, esp. para. 7g)

There are none of the badges of a settlement in bad faith in this case – *i.e.,* of collusion or fraud designed to create undue liability for Morgans' insurance carrier. See *Samson v. Transamerica Insurance Co.*, 30 Cal.3d 220, 636 P.2d 32, 45 (Cal. 1980); *Hamilton v. Maryland Casualty Co.*, 27 Cal.4th 718, 41 P.3d 128, 135-136 (Cal. 2002); *Rowan v. Unigard Insurance Group*, 26 Cal.App.4th 177, 180, 184, 31

Cal.Rptr.2d 501, 502, 504-505 (Cal.App. 1994). For example, Morgans did not stipulate to a judgment in Dimiceli's favor against themselves, and then seek to recover that judgment's amount from Chicago Title, in return for Dimiceli's promise not to enforce the judgment against them.

To the contrary, the trial exhibits documenting the course of settlement negotiations show that they were lengthy and bitter, and that no better settlement agreement was available to the Morgans. (Stipulated Morgan Trial Testimony, para. 10-13; Stipulated Sulla Trial Testimony, para. 8-12; and the Trial Exhibits cited in the Morgan and Sulla testimony)

By the time the Morgans agreed to settle, they had already obtained a foreclosure judgment (Trial Exhibits 96-97, 106), the subject property had already been sold by a Court-appointed Commissioner and the sale proceeds of approximately $270,000 had been distributed to the Morgans (Trial Exhibits 124-125).

Thus, at the time the Morgans settled, the security for the amounts owed to them had been exhausted, and the remainder of their claim was for deficiencies owed to them.

Because of Chicago Title's failure to defend their mortgage, and the vigor of Dimiceli's attack thereon, they had been forced to incur approximately $200,000 of attorneys' fees and costs on their own. (Stipulated Morgan Trial Testimony, para.

4

3, 9; Stipulated Cuatto Trial Testimony, para. 2-5; Stipulated Sulla Trial Testimony, para. 3-4; Trial Exhibits 212-214)

Dimiceli had appealed from the foreclosure judgment, and from all subsequent orders and judgments – including those confirming the foreclosure sale and distributing the proceeds to the Morgans. (Trial Exhibits 149-150) So the Morgans faced the further incurring of substantial attorneys' fees and costs, additional years of uncertainty while the Hawaii appellate courts pondered Dimiceli's appeal, and the always-possible threat of a reversal – which could have deprived them of the approximately $270,000 they had already received from the foreclosure sale.

Under these circumstances, their settlement with Dimiceli, and more specifically their surrender of their $30,096.64 deficiency judgment against Dimiceli in return *inter alia* for her dropping of her appeal from the foreclosure order and the distribution of approximately $270,000 to the Morgans, was clearly reasonable and in good faith.

II.  PLAINTIFF IS ENTITLED TO RECOVER HER ATTORNEYS' FEES AND COSTS.

The Ninth Circuit's Memorandum and Order states (at 5): "On remand, the court should consider Morgans' entitlement to attorneys' fees under Haw. Rev. Stat.§ 607-14 (2006) and Haw. Rev. Stat. § 431:10-242 (2006)."

5

Once judgment is entered, and she therefore knows the full amount of her attorneys' fees and costs, Mrs. Morgan will file an application for her attorneys' fees within the period provided in FRCP Rule 54(d)(2)(B) based upon HRS §§ 431:10-242 and 607-14, and will seek her costs under HRS § 607-9 as provided in FRCP Rule 54(d)(2)(A) and LR 54.2(b) et seq.

III. PLAINTIFF IS ENTITLED TO RECOVER A MULTIPLIER OF THE JUDGMENT, FEE AND COST AWARDS TO COMPENSATE HER FOR THE ADVERSE TAX CONSEQUENCES OF CHICAGO TITLE'S FAILURE TO DEFEND THE MORGANS IN THE KAUAI ACTION.

The Ninth Circuit's Memorandum and Order further provides (at 4-5):

> "The parties have not cited any Hawai'i decision directly ruling whether plaintiffs can recover losses due to tax consequences caused by a breach of contract. However, Hawai'i courts generally allow plaintiffs to recover any loss that can be shown with reasonable certainty, and have rejected a per se rule that certain types of losses are too speculative as a matter of law. See *Chung v. Kaonohi Ctr. Co.*, 618 P.2d 283, 290-291 (Haw. 1980), abrogated on other grounds by *Francis v. Lee Enters., Inc.*, 971 P.2d 707 (Haw. 1999); see also *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 366 (9th Cir. 2005). Therefore, the district court erred in refusing to allow the Morgans to introduce evidence of tax consequences caused by Chicago Title's breach of insurance contract. On remand, if the district court concludes that the Morgans are entitled to greater than nominal damages, it must also determine whether under the law of Hawai'i and the facts of this case, the Morgans are entitled to recover tax losses caused by Chicago Title's breach of contract. If the district court determines again that the damages are nominal, it need not revisit this issue because any error would be harmless."

Under modern law, the recoverability of *additional* tax liability resulting from a breach of contract, as an element of contract damages, is well established in

6

contract actions of all kinds. *Home Savings of America, FSB v. United States*, 399 F.3d 1341, 1354-1355 (Fed. Cir. 2005) (breach of contract) (where the federal government promised that Home Savings could count supervisory goodwill toward regulatory capital requirements if Home took over a number of ailing thrifts, but then breached that promise, the Court of Claims properly "grossed up" Home's damage award to account for the federal tax consequences of the award so that Home would be made whole; "We adopt the rule of other courts that a tax gross-up is appropriate when a taxable award compensates a plaintiff for lost monies that would not have been taxable.").

Accord, *Pruett v. Ericson Air-Crane Co.*, 183 F.R.D. 248, 249, 252-253 (D. Oregon 1998) (breach of contract action); *Delucca v. United States*, 670 F.2d 843, 844-846 (9th Cir. 1982) (Federal Tort Claims Act lump sum award for future lost earnings should be increased "to compensate for taxes on the income that will be earned by investing the award"); *Oddi v. Ayco Corp.*, 947 F.2d 257, 267-268 (7th Cir. 1991) (breach of contract) (trial court properly grossed-up a damage award to cover additional taxes the plaintiff would not have been required to pay but for an investment company's erroneous advice); see *Thomas v. Cleary*, 768 P.2d 1090, 1095 n. 5 (Alaska 1989) (Where parties become subject to tax liability they otherwise would not have had, as a result of a defendant's acts or omissions, "the

appropriate measure of damages is the difference between what [they] would have owed in any event . . . and what they now owe."). .

In this case, if Chicago Title had fulfilled its duties to the Morgans in the Kauai action by itself defending the Morgans and providing Dimiceli with consideration valued at $30,096.64 (plus accruing interest) in order to settle her claim against the Morgans' insured mortgage, the Morgans would not have owed federal income tax on Chicago Title's payment to Dimiceli. Dimiceli's direct receipt of such amounts from Chicago Title would *not* have constituted the receipt of gross income by Morgans themselves for federal income tax purposes. 26 USC § 61(a).

However, because Chicago Title failed to perform, Mrs. Morgan will be receiving sums from Chicago Title to compensate her for both (1) the value of the consideration the Morgans gave up to settle with Dimiceli; and (2) the fees, costs and expenses the Morgans have been forced to incur in this action.

That recovery will be taxable because Mrs. Morgan's or Morgans' counsel's receipt of all such amounts *will* constitute gross income received by Mrs. Morgan for federal income tax purposes, and Mrs. Morgan will not be able to subtract any of those amounts in determining their alternative minimum taxable income – neither miscellaneous expenses nor interest are proper deductions for alternative minimum tax purposes. See 26 U.S.C. §§ 56(b)(1)(a)(i), 61(a), 67(a-b) & 212(1);

*Commissioner v. Banks*, 125 S.Ct. 826, 829-833 (2005).

Thus, if Mrs. Morgan is to be made whole from Chicago Title's breaches, her damage award *must* be "grossed up" to cover her resultant AMT liability.

Morgans offered their then-most recent federal income tax return at trial (Trial Exhibit 1072), which then was the best evidence of their likely AMT bracket when CT eventually pays their judgment. Mrs. Morgan should be allowed leave, now, to offer her most recent federal income tax return as more recent evidence of the same.

To calculate the required gross-up, the pre-grossup amount of Mrs. Morgan's judgment should be multiplied by a factor of 1.388888889, assuming an AMT rate of 28%. For example, Mrs. Morgan's AMT on an award of $138,888.89 would be $38,888.89 (28% of $138,888.89) and her recovery would be $100,000.00 (72% of $138,888.89). Or a factor of 1.35135135, assuming an AMT rate of 26%. There are only two AMT rates, 26% or 28%, depending upon one's income. 26 U.S.C. § 55(b)(1)(a)(i)(I).

DATED: Honolulu, Hawai'i, August 31, 2007.

> STEVEN B. JACOBSON
> Attorney at Law
> A Limited Liability Law Company
>
> _____
> STEVEN B. JACOBSON
> Attorneys for Plaintiff

9

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALICE H. MORGAN, Trustees of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK KSC<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served on this date by first-class mail or hand delivery upon the following:

NEIL F. HULBERT, ESQ.
JADE LYNNE CHING, ESQ.
LAURA P. COUCH, ESQ.
Alston Hunt Floyd & Ing
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawaiʻi 96813

Attorneys for Defendant

DATED: Honolulu, Hawaii, August 31, 2007.

STEVEN B. JACOBSON
Attorney for Plaintiff