Of Counsel:
ALSTON HUNT FLOYD & ING
Attorney At Law
A Law Corporation

NEIL F. HULBERT         1143-0
JADE LYNNE CHING        5808-0
LAURA P. COUCH          7860-0
18th Floor, Pacific Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800

Attorneys for Defendant
CHICAGO TITLE INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>    Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>    Defendant. | CIVIL NO. CV00-00145 HG BMK<br><br>DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S OPENING MEMORANDUM ON REMAND, FILED AUGUST 31, 2007; DECLARATION OF LAURA P. COUCH; EXHIBITS 146, 147, 149, 219, 1006, 1019-1022, 1024, 1055, 1056; EXHIBIT "A"; CERTIFICATE OF SERVICE<br><br>(No Trial Date Set) |

DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
OPENING MEMORANDUM ON REMAND, FILED AUGUST 31, 2007

Defendant Chicago Title Insurance Company ("Chicago Title") submits its Memorandum in Opposition to Plaintiff's Opening Memorandum on Remand, filed August 31, 2007.

656305v1 / 3968-37

I.   **INTRODUCTION**

On remand, the Ninth Circuit Court of Appeal ordered this Court to consider (1) whether Plaintiff's surrender of a $30,096.64 judgment against Rosetta Dimiceli ("Dimiceli Judgment") was "reasonable and in good faith", (2) determine whether Plaintiff is entitled to recover tax losses caused by Chicago Title's breach of contract, and (3) Plaintiff's entitlement to attorneys' fees under Haw. Rev. Stat. § 607-14 (2006) and Haw. Rev. Stat. § 431:10-242 (2006). *See* Ninth Circuit Court of Appeals April 6, 2007 Memorandum and Order (the "Remand Order"). As demonstrated herein:

- Plaintiff cannot show the value of the Dimiceli Judgment "given up" in settlement, and therefore cannot establish whether the settlement was "reasonable" or "in good faith",

- Even if the settlement could be shown as reasonable, the law does not authorize "tax liability" on sums which would have been taxable as income, regardless, and

- Determination of Plaintiff's claim for attorneys' fees is premature; it a matter for consideration after judgment on remand is entered.

Plaintiff may not submit new evidence and has not met her burden to prove "reasonableness" and "good faith." This Court's original nominal damage award was correct and should remain unchanged on remand.

## II. BRIEF STATEMENT OF THE CASE

### A. The Action

This action arose from Plaintiffs Albert R. Morgan, Jr. and Alice H. Morgan, Trustees of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended (collectively, "Plaintiffs" or the "Morgans")[1] foreclosure of a residential mortgage in state court (the "Foreclosure Action") and their attempt here to recover from Chicago Title all fees and costs incurred in the Foreclosure Action. Plaintiffs claimed Chicago Title breached a contract of title insurance (the "Policy") by failing to pay their fees and costs in responding to the claims raised by Rosetta Dimiceli ("Dimiceli") in the Foreclosure Action.

Plaintiffs' First Claim for Relief was for breach of the title insurance contract. (Complaint, ¶¶ 5-13.) At trial in May, 2005 Plaintiffs prevailed on their breach of contract claim, but failed to prove any damages resulted from the breach. The Court awarded $1.00 as nominal damages.[2]

---

[1] Albert Morgan has since died and Alice Morgan is the only remaining Plaintiff.

[2] In their Second Claim for Relief for bad faith, Plaintiffs alleged that Chicago Title breached the duty of good faith and fair dealing implied in the Policy. (Complaint, ¶¶ 14-25). The Second Claim was dismissed on summary judgment by Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment Regarding (1) Plaintiffs' Second Cause of Action for Bad Faith, and (2) a Determination that Chicago Title is Responsible for Fees and Costs related to Defense of only the DROA Claim, filed October 15, 2004 (the "Order Granting Partial Summary Judgment"), and affirmed by the Ninth Circuit in its

Plaintiffs' initially sought recovery of their attorneys' fees and costs ($200,000.00) and losses attributable to an "unfavorable settlement" ($300,000.00) in the foreclosure action and $1,000,000.00 in punitive damages. (Complaint, ¶¶ 12, 23, and 24.)

### B.   The Second Appeal

Plaintiffs appealed. (No. 05-17145.) On April 6, 2007, the Ninth Circuit issued its Remand Order. The Remand Order did not change the District Court's trial findings and leaves only three issues for further determination by this Court:

(1) "On remand, the court must consider whether the Morgans established that [surrender of the $30,096.64 Dimiceli Judgment] [hereinafter the "Dimiceli Settlement"] was reasonable and in good faith, such that it 'may then be utilized as presumptive evidence of the breaching insurer's liability'" under *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 875 P.2d 894, 913 (Haw. 1994) (emphasis added). Remand Order, page 2.

(2) "On remand, if the district court concludes that the Morgans are entitled to greater than nominal damages, it must also determine whether under the law of Hawai`i and facts of this case, the Morgans are entitled to recover tax losses caused by Chicago Title's breach of contract. If the district court determines again that the damages are nominal, it need not revisit this issue because any error would be harmless." Remand Order, page 4.

(3) "On remand, the court should consider Morgans' entitlement to attorneys fees under Haw. Rev. Stat. § 607-14 (2006) and Haw. Rev. Stat. § 431:10-242 (2006)." Remand Order, page 5.

---

Remand Order.

656305v1 / 3968-37                         4

## III. ARGUMENT

### A. The Evidence in the Record

Of the hundreds of trial exhibits, there are only nine (9) which mention or relate to the Dimiceli Settlement: the Settlement Agreement (Exhibit 219)[3] and eight letters between counsel regarding settlement negotiations (Exhibits 1006, 1019, 1020, 1021, 1022, 1024, 1055 and 1056.)

In October 1994 Dimiceli offered a settlement which included a payment of $221,000 to the Morgans upon receipt of loan proceeds. (Exhibit 1006.) There is no evidence that the Morgans responded. The stipulated trial testimony states simply that Plaintiffs did not accept this offer because it was less than the amount secured by the mortgage and it was unclear if the difference could be recovered from Kerr. (Exhibit 1006, Morgans' Stipulated Trial Testimony, ¶ 9.)

A year and a half passed until February 1996 when the Morgans made a settlement demand which included payment by Dimiceli of $50,000. (Exhibit 1019.) This demand was rejected and Dimiceli's counsel explained "[S]he does not have $50,000." (Exhibit 1020.) In response, the Morgans offered to take the $50,000 over time as long as it was fully secured. (Exhibit 1021.) Again Dimiceli's counsel said she "does not have the financial wherewithal to pay $50,000" and suggested the Morgans

---

[3] For the Court's ease of reference, true and correct copies of the trial exhibits referred to herein are attached to the attached Declaration Laura P. Couch.

"might as well demand $500,000." (Exhibit 1022.) Apparently the Morgans replied, but it is not in evidence. In the next letter Dimiceli's counsel included financial statements and said Dimiceli would represent she had no other assets. He reiterated that Dimiceli could not pay $50,000. (Exhibit 1024.)

There is no evidence of further negotiations until another year and a half later. In October 1997 Jacobson had the Morgans sign authorization for a settlement including mutual releases of all claims between the Morgans and Dimiceli. (Exhibit 1055.) Even after giving that authority, the Morgans sought a settlement including a $40,000 stipulated judgment. (Exhibit 1056.) That was apparently rejected and the Settlement Agreement followed in 1998. (Exhibit 219.)

The Dimiceli Settlement included dismissal of the Dimiceli Judgment (Exhibit 147) for $30,096, representing unpaid rent for the use of the property during the Foreclosure Action (Exhibit 146). The Dimiceli Judgment was on appeal at the time of settlement. (Exhibit 149.)

B.  **The Reasonableness and Good Faith of the Settlement**

As to the this requirement, and as agreed by Plaintiff, the Ninth Circuit directed the District Court to determine if Plaintiff *already* demonstrated reasonableness and good faith. There is no opportunity to submit more evidence on remand.[4]

---

[4] Both the Court and Plaintiff's counsel agreed on this view of the remaining issues at the May 29, 2007 rescheduling conference before Judge Kuren (the "Conference").

656305v1 / 3968-37                          6

*Sentinel Ins. Co. v. First Ins. Co., supra,* requires evidence of a settlement's reasonableness and good faith to include reasonableness as to amount, *i.e.*, the value of the settlement. Where a breaching insurer has waived its right to approve a settlement, "the insured is entitled to negotiate a reasonable and good faith settlement of the underlying claim which amount may then be utilized as presumptive evidence of the breaching insurer's liability." *Sentinel, supra,* 76 Hawai`i at 296, 875 P.2d 894.[5] The settlement amount must be reasonable in view of the size of the possible recovery and likelihood of success. *Societe Generale Energie Corp. v. New York Marine and General Ins. Co.,* 368 F. Supp. 2d 296 (S.D. N.Y. 2005). It was the Plaintiff's burden to prove the settlement was reasonable (including value) and in good faith. Plaintiff failed to meet that burden.

Determining reasonableness and good faith involves factual determinations of several matters, including but not limited to,

---

[5] The initial burden of proof is on the **plaintiff** to show the "reasonableness" and "good faith" of the settlement. *Guillen v. Potomac Ins. Co. of Illinois,* 203 Ill.2d 141, 785 N.E.2d 1 (Ill. 2003) (the burden of proving reasonableness is on plaintiff because plaintiff was the one who agreed to the settlement and will have better access to the facts bearing on the reasonableness of the settlement); *Pasha v. Rosemount Memorial Park,* 344 N.J. Super. 350, 781 A.2d 1119 (N.J. Sup. 2001) (placing the initial burden of production on the insured to demonstrate reasonableness and good faith of the settlement serves to protect the carrier from having to pay a settlement reached through collusion or the product of bad faith).

- evidence pertaining to the releasing person's damages,
- merits of liability,
- merits of defense,
- relative fault,
- risks and expenses of continued litigation,
- ability to pay,
- evidence of bad faith or fraud,
- investigation and preparation of the case, and
- the interests of parties not released.

*Glover for Cobb v. Tacoma General Hosp.*, 98 Wash.2d 708, 658 P.2d 1230 (Wash. 1983). Plaintiff failed to satisfy her burden since she (1) failed to present evidence of the factors taken into consideration in the settlement, and (2) merely claimed the settlement was reasonable under the circumstances. *Pasha, supra,* 344 N.J. Super. at 356, 781 A.2d at 1123.

   C.   **Plaintiff Did Not Present Evidence Demonstrating the Value of the Deficiency Judgment, and thus Cannot Demonstrate its Dismissal in Settlement was "Reasonable" or in "Good Faith"**

Plaintiff did not pay money for the settlement. Plaintiff merely gave up the right to pursue the Dimiceli Judgment which was on appeal and on which nothing had been collected. Plaintiff must show evidence already in the record establishing the value of the Dimiceli Judgment released. It is an impossible task because there is no such evidence. To the contrary, the evidence supports the conclusion that the Dimiceli

Judgment had absolutely no value.[6] For two and a half years Dimiceli had been professing an inability to pay anything and had provided financial statements to support that contention. There is no contrary evidence in the record.

Plaintiff's burden is the same as if she had given Dimiceli an old Cadillac in settlement and was seeking recovery of its value from Chicago Title. Since it was not money, she would need to show that the thing given up, the old Cadillac, had value. Value cannot be assumed. *Ferreira v. Honolulu Star-Bulletin, Ltd.*, 44 Haw. 567, 576, 356 P.2d 651, 656 (1960) ("[t]o authorize recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a basis for measuring the plaintiff's loss with measurable certainty"). For example, the old Cadillac might be a rust bucket which would cost money for merely hauling to the junk yard. Similarly, the Dimiceli Judgment had value only if it was final and collectible; there is no evidence that is was. The Dimiceli Judgment was on appeal and there is no evidence demonstrating it was collectible or that Dimiceli had assets from which it could be satisfied. Again, the evidence to the contrary.

---

[6] Plaintiff concedes, in fact, that "security for the amounts owed ... had ben exhausted and the remainder of their claim was for deficiencies owed..." Plaintiff's Opening Memorandum on Remand ("Opening Memorandum"), page 4. Plaintiff also concedes there was significant uncertainty as to whether the judgment would stand on appeal: "So the Morgans faced ... additional years of uncertainty while the Hawai`i appellate courts pondered Dimiceli's appeal, and the always-possible threat of reversal ..." *Id.* at page 5.

The evidence relevant to the Dimiceli Settlement is sparse and does not offer any insight into the factors actually considered for settlement.[7] Over 250 exhibits were admitted into evidence, but only eight (8) relate to settlement negotiations, and none relate to the negotiations for the ultimate Dimiceli Settlement.

The record demonstrates settlement discussions began in October 1994, when Dimiceli offered to pay Plaintiffs' $221,000.00 upon receipt of loan proceeds. (Exhibit 1006.)

There were no further discussions until early 1996, when the correspondence shows Plaintiffs' demand for $50,000.00 from Dimiceli and Dimiceli's counsel's insistence that payment of $50,000.00 from Dimiceli was impossible. (Exhibits 1019, 1020, 1021, 1022, 1024.) No other evidence of settlement negotiations appear in the record until late 1997, when Plaintiffs made another settlement overture for a stipulated judgment against Dimiceli in the amount of $40,000.00 (plus any judgments Dimiceli obtains against the other parties in the dispute) (Exhibit 1056), that offer was apparently rejected and the parties signed the Settlement Agreement by which Plaintiffs "gave up" the Dimiceli Judgment.

The record demonstrates an exponential drop in the "value" of any settlement over the years of litigation in the

---

[7] One way to prove value would have been for Plaintiff to introduce evidence of what an independent third party would have paid on discount for an assignment of the judgment. There is no such evidence, however, in the record.

Foreclosure Action, from Dimiceli's willingness to pay $221,000 to her inability to pay anything.[8] Given the state of the record, Plaintiff cannot demonstrate the Dimiceli Judgment had any value, much less a value of $30,000, and thus, it is impossible for Plaintiff to demonstrate the necessary "reasonableness" of the settlement.

Plaintiff's real dilemma is that in order to prove that giving up the Dimiceli Judgment was reasonable, she must show it had little or no value. Stated another way, since the Dimiceli Judgment was uncollectible or valueless, it was not **unreasonable** to give it up. Plaintiffs gave away nothing of value, in exchange for which they extricated themselves from continuing litigation and claims by Dimiceli. Even if the Court assumes the Dimiceli Judgment had some value, there is no evidence of what that value might be. It is the same problem raised by the old Cadillac example. Plaintiff's burden is to prove the value of the thing given up in settlement, and Plaintiff failed to do so.

C.   **The Tax Liability Claim**

Assuming *arguendo* the Court finds sufficient evidence to prove that the Dimiceli Settlement was reasonable and in good faith, there are no recoverable tax consequences (assuming the Court is even willing to award tax liability damages). Plaintiff

---

[8] Plaintiff claims that "...the trial exhibits documenting the course of settlement negotiations show that they were lengthy and bitter ..." Opening Memorandum, page 4. Plaintiff fails, however, to identify any evidence supporting this contention.

has failed to prove (1) that had Dimiceli paid the Dimiceli Judgment there would have been **no** tax consequence, and (2) if Chicago Title pays it there will be a tax consequence. Indeed the opposite is true. The tax consequence will be the same whether the Dimiceli Judgment were paid by Dimiceli or is paid by Chicago Title.[9] This issue is governed by Hawai`i law and Chicago Title is unaware of any Hawai`i holding that potential tax consequences may be included as part of damages. Nor does Plaintiff cite any Hawai`i case law.

    Plaintiff's own cases support the principle that tax liability should not be awarded unless a party is being compensated for lost monies which otherwise would not have been taxable. *Home Savings of America, FSB v. United States*, 399 F.3d 1341, 1354-1355 (Fed. Cir. 2005) ("We adopt the rule of other courts that a tax gross-up is appropriate **when** a taxable award compensates plaintiff for lost monies that would not have been taxable."). Here, had Dimiceli paid the rent ordered in the Foreclosure Action or paid the judgment for the rent, Plaintiff would have been taxed on such amounts as income. There is no "additional" income for which Plaintiff will be potentially taxed if Chicago Title is required to pay the unpaid rent judgment. Where the plaintiff would have paid the taxes in any event,

---

[9] The Dimiceli Judgment was for "unpaid rent" for which Plaintiff would have had tax liability in any event, notwithstanding a breach of the insurance contract by Chicago Title. (Exhibit 146.)

656305v1 / 3968-37                    12

plaintiff is not entitled to be compensated for the taxes. *Pruett v. Erickson Air-Crane Company*, 183 F.R.D. 248 (D. Or. 1998).

Contrary to Plaintiff's contention, the Dimiceli Judgment was not caused by Chicago Title's failure to defend; it was for rent Dimiceli failed to pay for occupation of the premises. There is no relationship between the Dimiceli Judgment for unpaid rent and Chicago Title's failure to defend. As conceded by Plaintiff in the case law cited, parties are not entitled to a gross-up where the award is for money which would have created a tax liability in any event. *See Oddi v. Ayco Corp.*, 947 F.2d 257, 267-268 (7th Cir. 1991) (trial court grossed-up damage award to cover additional taxes plaintiff would **not** have been required to pay but for erroneous tax advice). In *Oddi, supra*, the court allowed the tax compensation because it determined that the tax consequence was "solely the result of [defendant's] mistake." *Id.* at 267.

Plaintiff cites *Thomas v. Cleary*, 768 P.2d 1090, 1095 n. 5 (Alaska 1989) for the proposition that the claimant is liable for taxes not otherwise owed, the measure of damages is the difference between what would have been owed and what is now owed. Plaintiff fails to note that *Thomas* was an accounting malpractice case and the discussion was about what the damages would be if the accountant committed malpractice. It had nothing to do with "grossing up" a damage award.

Finally, Plaintiff bases her calculation on the current Alternative Minimum Tax rate. There is no evidence that Plaintiff is currently subject to the AMT, that she will be subject to the AMT whenever a judgment might be paid, or that the AMT will still be in effect or applied with the current rate. In *Home Savings, supra,* 399 F.3d at 1356, the Federal Circuit affirmed the tax liability, in part, because there was expert testimony on the applicable tax rate. Likewise in *DeLucca v. United States,* 670 F.2d 848 (9th Cir. 1982) the court noted there was sufficient expert testimony about tax consequences to support the district court's findings. Plaintiff offered no expert testimony on the tax issue. The uncertainties associated with future tax consequences are some of the reasons that most courts are reluctant to apply the concept prospectively.

D.  **The Attorneys' Fee Claim**

Hawai`i Revised Statutes ("H.R.S.") § 607-14 and § 431:10-242 limit recovery of attorneys fees in this action to a reasonable amount, not to exceed 25% of the principal and interest. Because attorneys' fees cannot be calculated until the judgment sum is determined, the issue is premature for this Court. Plaintiff's claim for attorneys' fees must be by motion pursuant to Fed. R. Civ. P. Rule 54 and LR 54.3 after judgment is entered on remand.

## IV. CONCLUSION

Based on the foregoing, Chicago Title respectfully requests that this Court's original nominal damage award remain unchanged on remand.

DATED: Honolulu, Hawai`i, October 1, 2007.

          /s/ Laura P. Couch
NEIL F. HULBERT
JADE LYNNE CHING
LAURA P. COUCH
Attorneys for Defendant
CHICAGO TITLE INSURANCE COMPANY