# DWYER IMANAKA SCHRAFF KUDO MEYER & FUJIMOTO

ATTORNEYS AT LAW ❖ A LAW CORPORATION

1800 PIONEER PLAZA ❖ 900 FORT STREET MALL ❖ HONOLULU, HAWAII 96813 ❖ POST OFFICE BOX 2727 ❖ HONOLULU, HAWAII 96803
TELEPHONE: (808) 524-8000 ❖ FACSIMILE: (808) 526-1419

JOHN R. DWYER, JR.
MITCHELL A. IMANAKA
PAUL A. SCHRAFF
BENJAMIN A. KUDO
WILLIAM G. MEYER, III
WESLEY M. FUJIMOTO
RONALD V. GRANT
JON M.H. PANG
BLAKE W. BUSHNELL
ADELBERT GREEN
RICHARD T. ASATO, JR.
SCOTT W. SETTLE

DARCIE S. YOSHINAGA
LAWRENCE I. KAWASAKI
STACY E. UEHARA
KRIS N. NAKAGAWA
JEFFERY S. WERBELOW
LORI ANN K. KOSEKI
TROY T. FUKUHARA
KATY Y. CHEN

Of Counsel:
RANDALL Y. IWASE
R. BRIAN TSUJIMURA

February 20, 1996

**HAND DELIVERY**

Steven B. Jacobson, Esq.
Torkildson Katz Jossem Fonseca
  Jaffe Moore & Hetherington
Amfac Building, 15th Floor
700 Bishop Street
Honolulu, Hawaii 96813-4187

Re:   *Morgan v. Dimiceli*; S.Ct. No. 19552
      Fifth Circuit Civil No. 93-0199

Dear Mr. Jacobson:

This letter is in response to your letter of February 13, 1996. This letter constitutes an attempt to compromise the above matter within the meaning of Rule 408 of the *Hawaii Rules of Evidence* and all statements made herein are for the purpose of that attempt. If you do not agree, please return the original copy of this letter, and any copies you may have made, to me without reading any further.

While we obviously differ concerning our evaluation of the potential liability of Ms. Dimiceli and the prospects of appeal, we view your clients' offer as a good faith effort to resolve the disputes. The difficulty with the offer is that it exceeds Ms. Dimiceli's financial means and, in requesting assignments of her claims, also deprives her of the prospect of recovering this loss from the two causes, Mr. Kerr and the Nimkies. Obviously, Ms. Dimiceli has an iron-clad claim against Mr. Kerr for the value of the house and the cost of this litigation, an amount which is probably in the range of half a million dollars. As for the Nimkies, there may be claims against them for breach of the contract to purchase, which may also be a six figure claim. There is obvious liability in the Nimkies for the rent which they failed to pay, and there is also a $5,000 loan which Ms. Dimiceli made to Dennis Nimkie. You are asking for all of those claims to be assigned to the Morgans.

I do not know how collectible those claims presently are, but they are not valueless unless Ed Kerr and the Nimkies are, and remain, penniless. In addition, the Nimkies and Mr. Kerr played the major roles in causing this loss to Ms. Dimiceli. If the claims are

EXHIBIT 1020

Steven B. Jacobson, Esq.
February 20, 1996
Page 2

collectible, the assignment basically doubles, or more, the Morgans' recovery, and completely deprives Ms. Dimiceli of what, in fact, she paid for.

Ms. Dimiceli believes that the claims against Kerr and the Nimkies will, ultimately, be collectible, at least in significant part. The claim against Kerr is only one step from judgment, and that judgment can be kept alive indefinitely. The Nimkies also face an imminent entry of judgment. In both cases, particularly in Kerr's case, the claims are not likely to be dischargeable in bankruptcy. We believe that both Edgar Kerr and Dennis Nimkie are too ambitious to be penniless for the rest of their lives and sooner or later, they will have to answer to these judgments. Because of that, we think that the assignment of claims which you requested is a very substantial cost to Ms. Dimiceli.

With respect to the cash portion, Ms. Dimiceli simply does not have that kind of money. Ms. Dimiceli's equity and net worth is the house on Kauai. Giving up the house basically wipes out her net worth. She does not have $50,000. In that regard, your settlement offer is simply beyond her economic reach. The claims against Kerr and the Nimkies are what is left of the Kauai property. However, those claims are not cash today, nor does Ms. Dimiceli have substantial cash available or obtainable, to "buy peace" with the Morgans.

Given that, Ms. Dimiceli offers to settle all of the pending disputes between Mr. and Mrs. Morgan, trustees, and Ms. Dimiceli on the terms set forth in your letter of February 13, 1996 except that paragraph 1 would be modified to provide that the cash payment would be $5,000.

In addition, paragraph 4 refers to a written settlement or release agreement with "the usual terms." I do not know what you think are "the usual terms," but we may not agree. For example, although I believe a settlement and release would properly contemplate a covenant not to sue, I do not know what else you consider to be the usual terms. I am not expecting a disagreement, but rather expressing the need to move promptly to a written settlement agreement so that the terms are agreed to.

With the assignment of claims to the Morgans, we would expect "the usual terms" to include an indemnification of Ms. Dimiceli against claims being made against her by either Kerr or the Nimkies. We could not agree to put Ms. Dimiceli in a position where, if the Morgans pursue an assigned claim and that causes Kerr or the Nimkies to assert some claim against Ms. Dimiceli, that she would have no means to protect herself or offset any such claim. Because of that, any assignment of claims to the Morgans would have to include an indemnification by the Morgans. Further, with respect to cooperation with the Morgans in prosecuting claims, Ms. Dimiceli will agree to the extent that she is not required to incur any out-of-pocket cost or expense.

Steven B. Jacobson, Esq.
February 20, 1996
Page 3

      Obviously, the major consideration in making this settlement offer is avoiding the cost of further litigation, both in the trial court and the appellate court. To the extent that events continue to progress, and attorneys' fees continue to accrue, my client's willingness and ability to settle on these offered terms may change. In that regard, the appeal was docketed on February 14, 1996 and we will have to shortly begin preparing the Statement of Jurisdiction and our Opening Brief. In addition, we anticipate that a confirmation hearing will occur soon. Our intention in providing a rapid response to your offer is to settle this before further expense is incurred by either side.

      I believe that this proposal is not only a fair settlement, it is one which is within Ms. Dimiceli's financial ability. Frankly, I believe that Ms. Dimiceli is virtually certain to prevail on appeal and that, ultimately, the courts would determine that her interest is senior to the mortgage.

      Again, in order that we both avoid further attorneys' fees and cost, please let me hear from you at your earliest convenience.

      Very truly yours,

      DWYER IMANAKA SCHRAFF KUDO
      MEYER & FUJIMOTO

      Paul A. Schraff

PAS:bcf
0075385.04

cc:    Ms. Rosetta Dimiceli