ORIGINAL

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

STEVEN B. JACOBSON    4117-0
(sjacobson.law@hawaiiantel.net)
P. O. Box 240761
Honolulu, HI 96824-0761
Telephone: (808) 377-1814

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 22 2007

at 11 o'clock and 40 min ___M
SUE BEITIA, CLERK

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK KSC<br><br>PLAINTIFF'S REPLY MEMORANDUM ON REMAND; CERTIFICATE OF SERVICE |

PLAINTIFF'S REPLY MEMORANDUM ON REMAND

Plaintiff Alice H. Morgan, Trustee, hereby submits the following reply to the

opposition memorandum of Defendant Chicago Title Insurance Company

("Chicago Title") submitted on remand.

Mrs. Morgan notes that the U. S. Supreme Court has yet to rule on her

pending petition for a writ of certiorari. Chicago Title's response to her petition is not due until the end of this month. Jurisprudential concerns suggest that this Court should withhold its decision on remand until after the Supreme Court has acted, inasmuch as additional issues for remand would emerge from a ruling in Mrs. Morgan's favor.

As for the merits, Chicago Title agrees (at 14) with Mrs. Morgan that the question of her attorneys fees should be deferred until this Court's judgment on remand has been entered, so no reply on that point is necessary except to note that Chicago Title is wrong in alleging that HRS § 431:10-242 includes a 25% cap. There is no such cap in Section 431:10-242.[1]

I. **MRS. MORGAN IS ENTITLED TO RECOVER THE AMOUNT OF THE JUDGMENT IN HER FAVOR WHICH SHE SURRENDERED IN SETTLEMENT, PLUS LEGAL INTEREST THEREON.**

**Collectibility/"Value".** Chicago Title now, on remand, wants to litigate the "value" of the $ 30,096.64 judgment the Morgans surrendered in settling with Dimiceli – by questioning whether it was collectible. Neither "value" nor "collectibility," however, are properly before this Court. Indeed, having previously insisted that collectibility is "not relevant," Chicago Title has waived

---

[1] Section 431:10-242 simply provides that "Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be

and is estopped from changing its mind and contending to the contrary now.

The Ninth Circuit's Memorandum and Order in this action **already** establishes the "value" of the surrendered $30,096.64 judgment, stating (at 1, emphasis added):

> "The surrender of a judgment may constitute consideration recoverable as compensatory damages. See *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 875 P.2d 894, 913 (Haw. 1994); *Earth Elements, Inc. v. Nat'l Am. Ins. Co. of Cal.*, 48 Cal. Rptr. 2d 399, 402 (Ct. App. 1996). Therefore, the district court erred in dismissing the Morgans' claim that they are entitled to reimbursement for the $30,096.64 judgment they surrendered to Dimiceli as part of their settlement of Dimiceli's claims. On remand, the court must consider whether the Morgans established that this element of their settlement with Dimiceli was **reasonable and in good faith, such that it "may then be utilized as presumptive evidence of the breaching insurer's liability."** *Sentinel*, 875 P.2d at 913."

Thus, the Ninth Circuit has **already** determined the extent of Chicago Title's "liability" for the surrendered judgment, as long as it was surrendered reasonably and in good faith, so there is no issue of "value" left to be litigated. See also *Sentinel, supra*; *Isaacson v. California Insurance Guarantee Ass'n*, 44 Cal.3d 775, 791, 750 P.2d 297, 308 (1994) (relied upon in *Sentinel*) (where "an insurer wrongfully fails to provide coverage or a defense and the insured then settles the claim, ... a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability

---

awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy.

**and the amount** of such liability); *Newhouse v. Citizens Security Mutual Insurance Co.*, 176 Wisc.2d 824, 501 N.W.2d 1, 6-7 (Wisc. 1993) ("damages that naturally flow from the breach" include "the amount of the judgment or settlement … plus interest"); *Ritchie v. Anchor Casualty Co.*, 286 P.2d 1000, 1008 (Cal.App. 1955) (face value of account receivable); *Earth Elements, Inc. v. National American Insurance Co. of California*, 48 Cal.Rprt.2d 399, 400, 402 (Cal.App. 1996) (face value of counterclaim).

That is, the Ninth Circuit has **already** established that the face amount of the $30,096.64 judgment surrendered in settlement was exactly that amount – $30,096.64 – which therefore is established as the "presumptive" amount of Chicago Title's "liability" as of the date that judgment was entered under *Sentinel*. That judgment was entered in Hawaii state court on June 26, 1998 (Trial Exhibit 147, para. 2), and the legal interest which would have accrued on that judgment through October 22, 2007 is $28,059.99 ($30,096.64 x 9 118/365 days x .10). Interest thereon will accrue thereafter until the date judgment is entered, at a rate of $8.25 per day ($30,096.64 x 1/365 x .10), under HRS § 478-3.

According to the Ninth Circuit, as quoted above, the only remaining issues are whether it was "reasonable" to surrender that judgment in settlement, and whether the settlement was "in good faith."

4

The Ninth Circuit's ruling came *after* Morgans had pointed out, in their Ninth Circuit brief (at 36-37), that:

Uncollectibility is an affirmative defense, and Chicago Title did not plead such a defense. Chicago Title Answer, filed 4-18-2001; see *Sentinel, supra*, 76 Haw. at 296-297, 875 P.2d at 913-914; *Smith v. Haden*, 872 F.Supp. 1040, 1054 (D.D.C. 1994), *aff'd*, 69 F.3d 606 (D.C. Cir. 1995); *Ridenour v. Lewis*, 121 Or.App. 416, 419, 854 P.2d 1005, 1006 (1993).

Even if Chicago Title had pleaded an uncollectibility defense, it could not have proven it, as Hawaii judgments remain subject to collection for twenty (20) years after their entry -- in this instance, until 2018. HRS § 657-5. One cannot prove the future.

Moreover, Chicago Title has waived and is now estopped from asserting uncollectibility by its *successful* objection to the admission of the Morgans' forty-one trial exhibits on collectibility as "not relevant." *Wagner v. Professional Engineers in California Government*, 354 F.3d 1036, 1048-1049 (9th Cir. 2004); *Travelers Insurance Co. v. Lesher*, 187 Cal.App.3d 169, 197, 231 Cal.Rprt. 791, 825 (Cal.App. 1986) ("A party who prevents proof of a fact by his or her erroneous objection will not be permitted" to later assert that the evidence of that fact was lacking.).

At trial, the Morgans offered forty-one exhibits (Trial Exhibits 1073-1113)

which showed Dimiceli's assets and employment and the Morgans' lien on Dimiceli's real estate holdings in Oregon, and thus the collectibility of the $30,096.64 judgment. However, Chicago Title strenuously objected to all evidence of collectibility as "not relevant," and to evidence of Dimiceli's business interests as not probative, and this Court sustained Dimiceli's objections. (Objections filed 5-10-2005, at 4-9; Trial Transcript, at 74-77)

**Reasonableness and Good Faith.** The reasonableness and good faith of Morgans' surrender of their $30,096.64 judgment against Ms. Dimiceli, *after Chicago Title breached its duty to defend the validity of their mortgage*, in order to bring an end to Dimiceli's challenge to their insured mortgage, is clear beyond cavil.

Chicago Title's opposition simply misstates and/or ignores the applicable trial exhibits and other evidence. The applicable facts include the following:

A. By the time of the settlement, because of Chicago Title's failure to defend their mortgage and the vigor of Dimiceli's attack thereon,[2] the Morgans had been forced to incur over $200,000 of attorneys' fees and costs on their own which Chicago Title was, and still is, unwilling to pay a penny of. (Stipulated Morgan

---

[2] The expensive attack Dimiceli launched and maintained on the Morgans' mortgage belies her counsel's unsupported hearsay statements that she was penniless, as do the excluded trial exhibits offered by the Morgans.

6

Trial Testimony, para. 3, 9; Stipulated Cuatto Trial Testimony, para. 2-5; Stipulated Sulla Trial Testimony, para. 3-4; Trial Exhibits 212-214)

    B.  By that time, the Morgans had already obtained a summary judgment foreclosing the mortgage (Trial Exhibits 96-97, 106), the mortgaged property had already been sold by a Court-appointed Commissioner, and the sale proceeds of approximately $270,000 had already been distributed to the Morgans (Trial Exhibits 124-125) – significantly more than the $221,000 contingently-offered[3] by Dimiceli to settle in October 1994.

    C.  However, Dimiceli had appealed from the foreclosure judgment, and from all subsequent orders and judgments – including the orders and judgments confirming the foreclosure sale and distributing the sale proceeds to the Morgans. (Trial Exhibits 149-150)

    D.  Dimiceli's appeal forced the Morgans to choose between two alternatives:  (i) settling with Dimiceli on the best terms they could then obtain; or (ii)(a) incurring on their own, without Chicago Title's contractually-promised participation, substantial attorneys' fees and costs defending that appeal, (b) facing additional years and years of uncertainty while Hawaii's understaffed and exceedingly slow state appellate courts processed Dimiceli's appeal, and (c) the

---

[3] The $221,000 offer was contingent upon Dimiceli's being able to borrow that amount (Trial Exhibit 1006), which was among the reasons the Morgans rejected it (Morgan Trial Testimony, para. 9).

always-potential threat of a reversal which – whether likely or slim – theoretically could have vacated the summary foreclosure judgment and required them to incur the substantial additional fees and costs of a trial of their foreclosure claim – still without Chicago Title's promised assistance – and perhaps (in theory) having to return the approximately $270,000 they had already received from the foreclosure sale.

E.  It was obviously "reasonable" and "in good faith" for the Morgans to give up a then-newly-entered judgment for $30,096.64, in return for Dimiceli's dismissal of an appeal (i) in which the Morgans could easily have incurred – on their own and without Chicago Title's promised assistance – attorneys' fees and costs approaching that amount, (ii) which saved the Morgans the years and years of additional emotional wear and tear in their twilight years which additional years and years of litigation with Dimiceli would have entailed, and (iii) which theoretically could have resulted in a remand requiring trial of the Morgans' foreclosure claim, or even return of the approximately $270,000 they had already successfully collected.

F.  How Chicago Title can pretend that exhibits like Trial Exhibit 202A, especially Sub-Exhibits A through D thereto (in which Dimiceli offered a settlement but then backed out of her offer), don't demonstrate lengthy and bitter settlement negotiations, is astonishing.  (See also the Stipulated Morgan Trial

Testimony, para. 10-13; Stipulated Sulla Trial Testimony, para. 8-12; and the Trial Exhibits cited in the Morgan and Sulla testimony)

This case is *nothing* like *Pasha v. Rosemount Memorial Park*, 781 A.2d 1191, 1121, 1124 (N. J. Super. 2001), in which a policyholder apparently stipulated to a $500,000 judgment against itself, and assigned a claim against its insurance carrier for that amount to plaintiffs who had sued the policyholder, although the plaintiff agreed that the policyholder would have to pay only $30,000 of that judgment. The policyholders' lack of good faith in *Pasha* was obvious, and this case – in its present posture – involves a judgment of only $30,096.64, not $500,000.

Whether it is reasonable to settle a matter by surrendering a $30,096.64 judgment is a far simpler question that whether a much larger settlement was reasonable.

II.   <u>PLAINTIFF IS ENTITLED TO RECOVER A MULTIPLIER OF THE JUDGMENT, FEE AND COST AWARDS TO COMPENSATE HER FOR THE ADVERSE TAX CONSEQUENCES OF CHICAGO TITLE'S FAILURE TO DEFEND THE MORGANS IN THE KAUAI ACTION.</u>

As for Mrs. Morgan's current tax status, the Morgans offered their then-most recent federal income tax return at trial (Trial Exhibit 1072), which then was the best evidence of their likely AMT bracket when Chicago Title eventually pays their judgment. Mrs. Morgan should be allowed leave, now, to offer her most

recent federal income tax return as more recent evidence of the same.

As for the law, the applicable law showing that Plaintiff is entitled to a gross-up of her judgment, to cover the federal income tax she otherwise would not be liable for, is already set forth in her opening memorandum. As the Ninth Circuit noted, Hawai'i courts generally allow plaintiffs to recover any loss that can be shown with reasonable certainty, and have rejected a per se rule that certain types of losses are too speculative as a matter of law. See *Chung v. Kaonohi Ctr. Co.*, 618 P.2d 283, 290-291 (Haw. 1980), abrogated on other grounds by *Francis v. Lee Enters., Inc.*, 971 P.2d 707 (Haw. 1999); see also *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 366 (9th Cir. 2005); *Home Savings of America, FSB v. United States*, 399 F.3d 1341, 1354-1355 (Fed. Cir. 2005); *Pruett v. Ericson Air-Crane Co.*, 183 F.R.D. 248, 249, 252-253 (D. Oregon 1998); *Delucca v. United States*, 670 F.2d 843, 844-846 (9th Cir. 1982); *Oddi v. Ayco Corp.*, 947 F.2d 257, 267-268 (7th Cir. 1991); *Thomas v. Cleary*, 768 P.2d 1090, 1095 n. 5 (Alaska 1989).

As for taxability and non-taxability, Chicago Title is attempting to market irrelevancies. The $30,096.64 (plus interest) Chicago Title now owes the Morgans is a policy benefit, representing *the value* of the consideration they surrendered in order to settle with Dimiceli after Chicago Title breached its duties to defend their mortgage, and to settle Dimiceli's attack against that mortgage. It is decidedly *not*

the consideration itself, and it is decidedly not "rent."

If Chicago Title had fulfilled its duties to the Morgans in the Kauai action, by itself defending the Morgans and itself providing Dimiceli with consideration valued at $30,096.64 (plus accruing interest) in order to settle her claim against the Morgans' insured mortgage, the Morgans would not have owed federal income tax on Chicago Title's payment to Dimiceli. Dimiceli's direct receipt of such amounts from Chicago Title would *not* have constituted the receipt of gross income by Morgans themselves for federal income tax purposes. 26 USC § 61(a).

However, because Chicago Title failed to perform, Mrs. Morgan will be recovering policy benefits *directly* from Chicago Title, those benefits will be taxable because Mrs. Morgan's (or Morgans' counsel's) receipt of all such amounts *will* constitute gross income received by Mrs. Morgan for federal income tax purposes, and Mrs. Morgan will not be able to subtract any part of those amounts in determining her alternative minimum taxable income – neither miscellaneous expenses nor interest are proper deductions for alternative minimum tax purposes. See 26 U.S.C. §§ 56(b)(1)(a)(i), 61(a), 67(a-b) & 212(1); *Commissioner v. Banks*, 125 S.Ct. 826, 829-833 (2005).

Furthermore, the Morgans were not landlords and Dimiceli was not their tenant. (See Trial Exhibit 106, para. 16) Rather, the Morgans were holders of a promissory note secured by their insured mortgage. (Trial Exhibits 215-216) They

11

were entitled to recover the principal, interest, and other amounts due under the note. (*Id.*) Consequently, any amounts the Court Clerk was to receive from occupancy of the mortgaged property, and which were in turn to be passed on to the Morgans, were to be received *by the Morgans* as principal, etc., owed to them under the mortgage. For example, the foreclosure judgment required that the amounts the Court Clerk *did* receive from Dimiceli be applied to the property taxes which the borrower was supposed to pay under the mortgage. (Trial Exhibit 106, para. 26, 28, see also para. 15; Trial Exhibit 216, at 2, last para.)

Later on, in entering the $30,096.64 judgment, the State Court expressly provided that amounts received thereunder were to be applied against the amounts owed by the borrower (Kerr) under the promissory note. (Trial Exhibit 146, para. 1-2) The State Court further stated that although those amounts represented rents Dimiceli's tenant owed to her, as between Kerr-Dimiceli and the Morgans, they represented amounts owed by Dimiceli under her promise to Kerr that she would pay the Morgans amounts he owed them under his note and mortgage. (Trial Exhibit 146, para. 2; see Trial Exhibit 106, para. 7)

DATED: Honolulu, Hawai'i, October 22, 2007.

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

_____
STEVEN B. JACOBSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ALICE H. MORGAN, Trustees of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK KSC<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served on this date by first-class mail or hand delivery upon the following:

NEIL F. HULBERT, ESQ.
JADE LYNNE CHING, ESQ.
LAURA P. COUCH, ESQ.
Alston Hunt Floyd & Ing
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813

Attorneys for Defendant

DATED: Honolulu, Hawaii, October 22, 2007

_____
STEVEN B. JACOBSON
Attorney for Plaintiff