IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

### I. THE AMOUNT OF THE COURT'S JUDGMENT SHOULD BE INCREASED TO REFLECT THE FULL VALUE OF THE JUDGMENT MR. AND MRS. MORGAN SURRENDERED IN SETTLEMENT *AS OF THE DATE IT WAS SURRENDERED* (i.e., THE DATE THAT ELEMENT OF THEIR DAMAGES BEGAN TO ACCRUE), PLUS PRE-JUDGMENT INTEREST THEREON FROM AND AFTER THE DATE IT WAS SURRENDERED.

Mrs. Morgan's Memorandum on Remand asked the Court for an award of both (1) $30,096.64, representing the value of the Hawaii judgment which she and her late husband later surrendered in settlement, as of the time it was entered in the Hawaii state court on June 26, 1998 (Trial Exhibit 147, para. 2), and (2) the interest which would have accrued on the Hawaii judgment from and after *June 26, 1998*,

at the Hawaii legal rate of ten percent (10%) under HRS § 478-3, through the date of this Court's judgment on remand.

This Court's judgment of November 8, 2007, correctly awards the $30,096.64 face amount of the judgment, but adds interest only from and after the date this action was filed – *February 22, 2000*. However, the applicable law requires that interest be awarded from and after June 26, 1998, as Mrs. Morgan requested, for two reasons:

First, the surrendered $30,096.64 judgment should be valued *as of the date it was given up in settlement*, rather that the earlier date it was entered. Or, in other words, that element of the Morgans' losses should be valued as of the date it accrued. See, e.g., Roxas v. Marcos, 89 Haw. 91, 149-152, 969 P.2d 1209, 1267-1270 (1998) (at minimum, the measure of damages for conversion is the value of the converted property "at the time of the conversion"); Fukuda v. Hon/Hawaii Service and Repair, 97 Haw. 38, 45, 33 P.3d 204, 211 (2001) (loss of use damages start to run from the date one's property is taken).

There is no authority saying that damages for breach of contract can be lowered, by measuring them as of a date earlier than when the breach actually caused the damage.

Under HRS § 478-3, interest on a Hawaii state court judgment accrues at the 10% legal rate from and after the date of its entry. Consequently, by the date the

$30,096.64 judgment was surrendered in settlement, its value was $30,096.64 *plus the 10% interest that had accrued on the $30,096.64 from June 26, 1998 through the date of surrender.*

The date the judgment was surrendered can be measured in various ways. The exact date of the last signature on the settlement agreement is unclear. Trial Exhibit 219. However, the Morgans and Dimiceli jointly moved for dismissal of the state court action on November 13, 1998, and that motion was granted on December 21, 1998. Trial Exhibits 163 & 165.

The exact date is need not be determined in the context of this action because:

Second, pre-judgment interest on the value of the surrendered judgment should be awarded from and after the date of the Morgans' loss, i.e., the date the judgment was surrendered in 1998, rather than the date in 2000 when this action was filed.

There is no basis for denying the Morgans pre-judgment interest from the surrender date in November 1998 through February 22, 2000.

In Roxas, supra, 89 Haw. at 154, 969 P.2d at 1272, the Hawaii Supreme Court reversed the trial court, holding that it had "committed an abuse of discretion" because it "fail[ed] to award GBC prejudgment interest with respect to GBC's damages resulting from the conversion." The Hawaii Supreme Court

remanded, directing the trial court "require the jury to make a special finding" of the date the plaintiff's damages would be valued, from and after which "an award of prejudgment interest would be calculated." Id., 89 Haw. at 152, 969 P.2d 1270.

In American General Corp. v. Continental Airlines Corp., 622 A.2d 1, 13 (Del. Chanc. 1992), approvingly cited in Roxas, 89 Haw. at 156, 969 P.2d at 1274, the Court held that, at the latest, "Prejudgment interest in contract actions should be awarded from the date the plaintiffs damages began to accrue."[1]

"Prejudgment interest is compensatory, to compensate parties for the lost use of their assets or funds, and such losses begin at the moment of loss. See Lucas v. Liggett & Myers, 51 Haw. 346, 348, 461 P.2d 140, 143 (1969); Roxas, supra, 89 Haw. at 154-155, 969 P.2d at 1272-1273; Fukuda, supra, 97 Haw. at 45, 33 P.2d at 211.

Conclusion: Because Mrs. Morgan should be awarded the full value of the surrendered judgment *as of the date of its surrender in settlement (including the interest accrued thereon)*, and because pre-judgment interest should be awarded from and after the date the judgment was surrendered in settlement, Mrs. Morgan should recover – however characterized – 10% per annum from and after June 26, 1998 on the $30,096.64 value of the judgment as of June 26, 1998, through and

---

[1] In Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1088 (9th Cir. 2003), the Ninth Circuit notes that Hawaii law authorizes interest awards "commencing with … the date the breach occurred for contract cases."

including the date the judgment herein is entered, in addition to the judgment's $30,096.64 value as of that date.

## II. THE AMOUNT OF THE COURT'S JUDGMENT SHOULD BE INCREASED BY AN ADDDITIONAL $295,877.20, PLUS PRE-JUDGMENT INTEREST, TO REFLECT THE VALUE OF THE $295,877.20 DEFICIENCY CLAIM MR. AND MRS. MORGAN SURRENDERED IN SETTLEMENT. ALTERNATIVELY, THERE SHOULD BE A NEW TRIAL OF THAT QUESTION.

Reconsideration under FRCP 59(e) is appropriate whenever "the court has overlooked matters or controlling decisions which might have materially influenced [an] earlier decision." Motor Vehicle Manufacturers v. New York State Dep't of Environmental Conservation, 831 F.Supp. 57, 60 (N.D.N.Y. 1993), *aff'd and rev'd on other grounds*, 17 F.3d 521 (2d Cir. 1994). For example, Rule 59(e) authorizes reconsideration whenever a court's prior ruling was based upon "an erroneous understanding of the relevance of … information." EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997). Moreover, FRCP 60(b)(1), which is stricter than FRCP 59(e), expressly provides for post-judgment reconsideration of mistakes.

It appears that this Court may never have understood the relevance, and thus may never have considered, the evidence – i.e., the entire state court record (Trial Exhibits 4 through 209)[2] – submitted at trial by the Morgans to support their claim

---

[2] The relevance of the state court record is shown below.

5

for the value of the $295,877.20 deficiency claim they surrendered in order to settle with Dimiceli. See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-33, 37-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-40, 44-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

It would have been physically impossible for the Court to review and analyze the entire state court record before it granted Chicago Title's motion for judgment, made late morning on the first day of trial, right after the Court had ruled on which exhibits it would admit – especially at a time the Court was instead focused on attorneys' fee questions.

When the Court later entered its findings and conclusions, its only comment on the claim for the value of the surrendered $295,877.20 deficiency claim was that "the Plaintiffs did not produce any evidence on the remaining consequential damage claims" – obviously indicating that no such evidence, let alone the entire state court record, had been weighed and evaluated. Findings and Conclusions, filed July 15, 2005, at 1033.

When Morgans then filed post-finding motions, the Court denied reconsideration of the $295,877.20 claim, based upon findings that the value of non-cash consideration given up in settlement is unrecoverable, and/or that Morgans had supposedly failed to cite the California Court of Appeal's Earth Elements holding in their pre-judgment filings – again without indicating that the

6

Court had gone through the State Court record, to weigh and evaluate the merits of the $295,877.20 claim. Order of October 28, 2005, at 1227-1228; Order of March 2, 2006, at 1261-1265.

The Ninth Circuit has now ruled that Mrs. Morgan *can* recover the value of non-cash consideration she surrendered in settlement, disregarding the Court's (inaccurate)[3] finding that Earth Elements hadn't been cited.

Mrs. Morgan therefore asks the Court to reconsider that claim, weigh and consider the evidence it deemed irrelevant to its considerations before, and upon such reconsideration increase her judgment by the $295,877.20 plus pre-judgment interest.[4]

Alternatively, Mrs. Morgan asks that her judgment be increased by such other value as the Court may determine that said claim had[5] at the time it was

---

[3] Earth Elements had been cited in Morgans' Trial Brief, filed May 10, 2005, at 1-17, 25; Proposed Findings, filed June 20, 2005, at 30), Proposed Conclusions, filed June 20, 2005, at 35-36), and reconsideration motion filed August 1, 2005, at 39-40.

[4] That part of the settlement was in good faith for the same reasons the other parts of the settlement were in good faith.

[5] Under Hawaii contract and tort law, "The uncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount." "When the fact of damage is established, Hawaii law will not insist upon a higher degree of certainty as to the amount of damages than the nature of the case admits, particularly where the uncertainty was caused by the defendant's own wrongful conduct." "Damages which cannot accurately be measured should not for that reason be denied, but the amount should be left to the jury." Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 355, 366, 376 (9th Cir. 2005).

surrendered, plus prejudgment interest, or order a new trial on that question.

As for the merits of her claim:

At the trial of this action, Mr. and Mrs. Morgan presented claims for two kinds of damages: (1) the value of the consideration they surrendered in settling with Dimiceli after Chicago Title breached its duty to defend them in the state court action, *and* (2) the attorneys' fees and costs they incurred in the state court action. See, e.g., as to the value of the surrendered consideration, Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

Mrs. Morgan's two-part claim for *the value of the surrendered consideration should not be confused* with her analytically separate claim for the *attorneys' fees and costs* incurred by the Morgans in the state court action.

The surrendered consideration was (1) the $30,096.64 judgment against Dimiceli which is the subject of Part I above, plus (2) Morgans' claim against Dimiceli for the $295,877.20 deficiency still owed to the Morgans on their secured promissory note, after the state-court-ordered foreclosure sale. See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.



8

The $295,877.20 value of the surrendered deficiency claim was sought under <u>Sentinel Insurance Co. v. First Insurance Co. of Hawaii</u>, 76 Haw. 277, 296, 875 P.2d 894, 913 (1994)("Sentinel"), where the Hawaii Supreme Court held that once the duty to defend has been breached, the carrier's policyholder is "entitled to negotiate a reasonable and good faith settlement of the underlying claim which amount may then be utilized as presumptive evidence of the breaching insurer's liability" to the policyholder for indemnification, the carrier's breach having "waive[d] its right to approve of any settlement" as well as its right to require that liability be established by a litigated judgment. <u>Id.</u>; see, e.g., Proposed Findings, filed June 20, 2005, at 28, 37; Proposed Conclusions, filed June 20, 2005, at 34-36, 44-45; 76; see also Morgan Trial Brief, filed May 10, 2005, at 25.

$295,877.20 is the amount of the deficiency judgment entered against Kerr, the promisor, by the Hawaii state court. Trial Exhibit 147. That fact is important because <u>Sentinel</u> further holds, as a matter of Hawaii law, that an insurance carrier in breach of its duty to defend is "collaterally estopped from re-litigating material factual findings" – such as the amount of the deficiency here – which were "actually or implicitly adjudicated in the underlying suit," even though the carrier was not a party thereto. <u>Id.</u>

9

Under Migra v. Warren City School District Board of Education, 465 U.S. 75, 80-85, 102 S.Ct. 892, 896-898, 79 L.Ed.2d. 56, 61-64 (1984), and its progeny, this Court is required to follow Hawaii collateral estoppel law.

The Morgans' showing at trial as to the value of their deficiency claim against Dimiceli, which was on appeal by the time it was surrendered in settlement, necessarily consisted entirely of documents. See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

Those documents showed that Morgans' state appeal "should" have been successful, based upon a review of the record in the state trial court, which is a common way of showing the value of a lost or surrendered appellate claim. See, e.g., Daugert v. Pappas, 104 Wash.2d 254, 704 P.2d 600, 603-604 (Wash. 1985); Proposed Findings, filed June 20, 2005, at 37-62; Proposed Conclusions, filed June 20, 2005, at 45-76; see also Morgan Trial Brief, filed May 10, 2005, at 26-32.

Use of a "should" or "reasonable appellate court" standard in conducting such evaluations eliminates speculation over individualized factors. See Mattco Forge, Inc. v Arthur Young & Co., 52 Cal. App.4th 820, 840, 60 Cal.Rptr.2d 780, 793 (1997).

The amount of the $295,877.20 deficiency, definitively established by the deficiency judgment against Kerr, can be recalculated by re-performing the same

calculations performed by the state trial judge. See Proposed Findings, filed June 20, 2005, at 10-13, 58-62; Proposed Conclusions, filed June 20, 2005, at 19-22, 71-76; see also Trial Exhibits 141 and 148.

That Dimiceli "should" have been held liable for that deficiency is established by her agreement – of which Morgans were third-party beneficiaries as a matter of Hawaii law – to take title to seller Kerr's property subject to the Morgans' mortgage, and to pay amounts she otherwise would have owed Kerr directly to the Morgans to help retire their mortgage. Trial Exhibit 106, at 4, para. 7; Trial Exhibit 218, *passim*; Trial Brief, filed May 10, 2005, at 26-29; Proposed Findings, filed June 20, 2005, at 8, 46-49; Proposed Conclusions, filed June 20, 2005, at 17, 56-60.

As held in In re New England Fish Co., 749 F.2d 1277, 1281 (9th Cir. 1994), in determining whether a third party is an "intended" beneficiary of a contractual promise, a provision that performance be rendered directly to the third party "objectively verifies" the contracting parties' "inten[t]" to benefit the third party, and any alleged "subjective motive, purpose or desire of the contracting parties is not material."

The present judgment for Mrs. Morgan should therefore be increased by $295,877.20, plus interest at the legal rate reflecting the increase in the amount of the deficiency between June 26, 1998, and the date the Morgans surrendered the

deficiency claim in settlement, and pre-judgment interest at the legal rate since the date of the surrender.

### III. THE COURT SHOULD RECONSIDER ITS COMPLETE REJECTION OF ANY AND ALL FEES AND COSTS INCURRED BY THE MORGANS AS A RESULT OF CHICAGO TITLE'S BREACH OF ITS DUTY TO DEFEND, IN LIGHT OF EVIDENCE AND LAW THE COURT APPARENTLY OVERLOOKED, A RECENT HAWAII SUPREME COURT DECISION, AND OTHER FACTORS, AND GRANT A PARTIAL NEW TRIAL ON THE FEE AND COST QUESTION.

Reconsideration under FRCP 59(e) is appropriate whenever "the court has overlooked matters or controlling decisions which might have materially influenced [an] earlier decision." Motor Vehicle Manufacturers, supra, 831 F.Supp. at 60 (N.D.N.Y. 1993), *aff'd and rev'd on other grounds*, 17 F.3d 521 (2d Cir. 1994). For example, Rule 59(e) authorizes reconsideration whenever a court's prior ruling was based upon "an erroneous understanding of the relevance of … information." EEOC, supra, 116 F.3d at 112. See also FRCP 60(b)(1), which is stricter than FRCP 59(e), expressly provides for post-judgment reconsideration of mistakes.

In addition, "a rule to alter or amend a judgment may be granted where there has been an intervening change in the law" 12 Moore's Federal Practice, § 59.30[5][a][2](3d ed. 2007).

Amount, Reasonableness, and Necessity. At trial, the Morgans attempted to show the amount, reasonableness and necessity of their state court attorneys' fees

in two different ways.

First, the Morgans presented duly-admitted exhibits showing that the Hawaii state court had already determined that they actually, reasonably and reasonably incurred not less than $131,941.30 of fees in the underlying state court action, based upon the state court's own review of the state court record, the sworn declaration of Morgans' counsel, and Morgans' detailed task-by-task breakdown of the fees incurred there. See Proposed Findings, filed June 20, 2005, at 85, detailing the calculation and the exhibits supporting it; Proposed Conclusions, filed June 20, 2005, at 103-104, again detailing the same; Trial Exhibits 141, 146 and 147.

A copy of the Morgans' detailed task-by-task fee breakdown, included within Trial Exhibit 141, is attached.

The Morgans then showed that under Sentinel, supra, 76 Haw. at 296, 875 P.2d at 913, the state court's determination that they actually and reasonably incurred at least $131,941.30 of fees resolves that question for purposes of this action. Proposed Findings, filed June 20, 2005, at 86; Proposed Conclusions, filed June 20, 2005, at 104.

That is because of Sentinel's holding that, as a matter of Hawaii law, an insurance carrier in breach of its duty to defend is "collaterally estopped from re-litigating material factual findings actually or implicitly adjudicated in the

underlying suit," even though the carrier was not a party thereto. Id. Under Migra, supra, 465 U.S. at 80-85, 102 S.Ct. at 896-898, 79 L.Ed.2d. at 61-64, this federal district court is required to follow Hawaii collateral estoppel law in diversity cases.

It appears obvious, however, from the Court's findings and conclusions, that the Court may have overlooked, and may never even have considered, (1) Morgans' collateral estoppel argument, (2) Migra's requirement that the federal courts apply Hawaii's special collateral estoppel rule in diversity actions where an insurance company has breached its duty to defend, (3) the existence or significance of the state court's determination that Morgans had reasonably incurred at least $131,941.30 of fees in the underlying action, or (4) the Morgans' detailed task-by-task breakdown of their state court fees.

Neither the collateral estoppel argument, nor the existence of the state court's determination, nor the Morgans' detailed task-by-task breakdown of their state court fees, are addressed – or even mentioned – in the court's findings and conclusions. Findings and Conclusions, filed July 15, 2005, at 1-7, esp. 5-6.

Nor is any of those matters mentioned in any of the Court's subsequent orders, although the Morgans again pointed to them in their motion for amended findings and conclusions. Motion, filed August 1, 2005, at Motion, para. 2(c), p, 4, Requested Amendments and Additions, at 83, 84-85, Memorandum, at 135, 141; Order of October 26, 2005, at 1-8; Order of March 2, 2006, at 1-10, esp. 5-9; Order

of May 8, 2006, at 1-2.

That being so, the Court should reconsider its previous findings and conclusions in light of the overlooked matters, i.e., the state court's determination, Sentinel, Migra, and the Morgans' (attached) detailed task-by-task fee breakdown, and hold that Morgans' have indeed established the actuality, reasonableness, and necessity of at least $131,941.30 of their state court fees.

Alternatively, if the Court did consider the significance of the state court's determination of the $131,941.30 figure, but chose to disregard it *sub silento*, the Court should reconsider that decision in light of Sentinel, Migra, the Morgans' task-by-task fee breakdown, and the Hawaii Supreme Court's new decision – rendered after this Court's previous orders – in Stanford Carr Development v. Unity House, 111 Haw. 286, 306, 141 P.3d 459, 479 (2006).

In Stanford Carr Development, supra, the Hawaii Supreme Court held that a declaration by the supervising litigation attorney that s/he reviewed and approved fee charges sought, and that the time spent and costs incurred were reasonable and necessary under the circumstances, is sufficient to support a request for all such fees and costs. It further held as follows (id.):

> "This Court has stated that 'The Judge is an expert [her]self and knows as well as a legal expert what are reasonable attorneys' fees … the amount of attorneys fees is within the jurisdiction of the Court, and in fixing that amount the trial court may proceed on its own knowledge of the value of the solicitor's services.' In re Thz Fo Farm, 37 Haw. 447, 453 (1947). Here the circuit court judge had

15

personal knowledge of the complexity of the litigation and the nature and quality of the legal services rendered before it."

Second, Morgans attempted a *de novo* showing of the actuality, reasonableness and necessity of a larger amount of fees incurred in the underlying action, which this Court rejected in its entirety.

If the Court overlooked the Morgans' attached, detailed, duly authenticated, task-by-task fee summary in rejecting that showing, or applied law now superseded in Stanford Carr Development in doing so, that rejection should be reconsidered.

That rejection should be reconsidered in any event, because it is based upon a mistaken reading of Aerojet-General Corp. v. Transport Indemnity Co., 17 Cal.4th 38, 64, 948 P.2d 909, 925 (Cal. 1997), which actually holds that it is insurance carriers in breach of their duty to defend which have "the burden of proof" that their policyholders' fees and costs "are in fact . . . unnecessary" –that is *not* their policyholders' burden.

If the Court doubts that the Hawaii Supreme Court would apply the same rule as the California Supreme Court, i.e., placing the burden of proving reasonableness and necessity upon insurance carriers in breach of their duty to defend, that question should be certified to the Hawaii Supreme Court for its resolution under Hawaii Rule of Appellate Procedure 13.

Allocability. Notwithstanding this Court's previous holding, California law plainly holds that it is insurance carriers in breach of their duty to defend which

have the burden of proving that their policyholders' reasonably incurred fees and costs are allocable to uncovered matters – that is *not* the policyholder's burden.

That is, quite clearly, what is held in both The Upper Deck Co., LLC v. Federal Insurance Co., 358 F.3d 608, 612 (9th Cir. 2004) ("Once it has been established that there is a duty to defend, '*the insurer* becomes obligated to defend against all of the claims in the lawsuit, both covered and uncovered, until *the insurer* produces undeniable evidence supporting the allocation of a specific portion of the defense costs to a non-covered claim."); and Buss v. Superior Court, 47 Cal.App.4th 679, 50 Cal.Rptr. 447, 456-457 (Cal.App. 1996) (the insurer's burden of proving by "undeniable evidence" the existence of uncovered matters, and that fee, cost or expense items are solely allocable to them, is equivalent to the burden faced by a movant for summary judgment), *aff'd*, 16 Cal.4th 38, 939 P.2d 766 (Cal. 1997).

Notably, the Ninth Circuit did *not* affirm that part of the Court's prior judgment.

Consequently, the Court's previous findings and conclusions which so held should be revised and amended, to say that Chicago Title has the burden of proving allocability. The Court should order a new trial limited to the question of whether Chicago Title can meet its burden of proving that any of Mrs. Morgans' actual, reasonable, and necessary state court fees are allocable to uncovered matters.

If the Court doubts that the Hawaii Supreme Court would apply the same rule as the California Supreme Court, i.e., placing the burden of proving allocation upon insurance carriers in breach of their duty to defend, that question should likewise be certified to the Hawaii Supreme Court for its resolution under Hawaii Rule of Appellate Procedure 13.

Alternatively, if this Court maintains that the burden of proving non-allocability is on Mrs. Morgan, she should be granted a partial new trial for the purpose of allowing her to meet that burden. The record shows that this Court clearly indicated that Chicago Title would have that burden at trial, in denying Chicago Title's motion for partial summary judgment. Order of October 15, 2004, at 14 ("If, at a later time, Defendant [Chicago Title] can carry its heavy burden and demonstrate allocability, the court will allocate expenses.").

As the Second Circuit stated in Prisco v. A. A. Carting Corp., 168 F.3d 593, 607 (2d Cir. 1999), a court's "revisiting without notice" an issue "which ultimately turned on the sufficiency of a party's evidence" after that party has put on its case "raises the specter of severe prejudice" if it deprives a party "of the opportunity to prepare and present evidence on that issue at trial." Indeed, it deprives that party of due process.

See also White v. Godinez, 301 F.3d 796, 803 (7th Cir. 2002)(under the law of the case doctrine, we do not reopen issues decided in earlier stages of the same

litigation unless … the party that benefited from the earlier ruling would not be unduly harmed").

### IV. THE COURT SHOULD RECONSIDER ITS REJECTION OF MRS. MORGAN'S CLAIM FOR A TAX OFFSET.

If Chicago Title had fulfilled its policy duties to the Morgans, by either (1) providing them with defense counsel or (2) directly paying their defense counsel after agreeing to do so, Morgans would not have owed federal income tax on the fees paid to defense counsel. Defense counsel's direct receipt of such amounts from Chicago Title would *not* have constituted the receipt of gross income by Morgans themselves for federal income tax purposes. 26 USC § 61(a).

However, because Chicago Title failed to perform, Mrs. Morgan should receive awards against Chicago Title to compensate her for (1) the defense fees Chicago Title failed to pay, with interest thereon; and (2) the fees, costs and expenses the Morgans were forced to incur in this action. Part IV of the Court's Order of November 8, 2007, contemplates the assessment of such fees, costs, and expenses – such fees have already been applied for.

Mrs. Morgan's awards of such amounts, when paid, will be taxable to her, because her or her counsel's receipt of such amounts *will* constitute gross income to Mrs. Morgan for federal income tax purposes, and she will not be able to subtract any of those amounts (fees, costs, expenses or interest) in determining their alternative minimum taxable income – neither miscellaneous expenses nor

interest are proper deductions for alternative minimum tax purposes.  See 26 U.S.C. §§ 56(b)(1)(a)(i), 61(a), 67(a-b) & 212(1); <u>Commissioner v. Banks</u>, 125 S.Ct. 826, 829-833 (2005).

Consequently, awards of tax offsets should accompany any and all future awards of fees, costs, and expenses to Mrs. Morgan, even if inappropriate on the $53,382.11 awarded on November 8, 2007.  That door should not be closed.

## <u>CONCLUSION</u>

Mrs. Morgan's motion should be granted for each and all of the foregoing reasons.

DATED:  Honolulu, Hawaii, November 26, 2007.

STEVEN B. JACOBSON
Attorneys at Law
A Limited Liability Law Company

_____
STEVEN B. JACOBSON
Attorneys for Plaintiff