ORIGINAL

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

STEVEN B. JACOBSON         4117-0
(sjacobson.law@hawaiiantel.net)
P. O. Box 240761
Honolulu, HI 96824-0761
Telephone: (808) 377-1814

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 20 2007

at __ o'clock and __ min. __ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK<br><br>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION TO ALTER AND AMEND AND/OR ALTERNATIVELY FOR NEW TRIAL; CERTIFICATE OF SERVICE<br><br>JUDGE: Hon. Barry M. Kurren |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION TO ALTER AND AMEND AND/OR ALTERNATIVELY FOR NEW TRIAL

The present posture of this action is undeniably absurd.

FIRST, Although Defendant Chicago Title breached its duty to defend Mr. and Mrs. Morgan in a Hawaii state court action that lasted *for over five years,*

although THE HAWAII STATE COURT AWARDED AND THUS *ACTUALLY AND IMPLICTLY* DETERMINED THAT NOT LESS THAN $131,941.30 OF THE MORGANS' FEES IN THAT ACTION WERE REASONABLY INCURRED BASED UPON THE MORGANS' DULY-SUBMITTED TASK-BY-TASK BREAKDOWN OF THEIR FEES AND THE STATE COURT RECORD (Trial Exhibit 141 et al.), although THE HAWAII SUPREME COURT'S SENTINEL DECISION HOLDS THAT AN INSURANCE CARRIER IN BREACH OF ITS DUTY TO DEFEND IS "*COLLATERALLY ESTOPPED* FROM RE-LITIGATING MATERIAL FACTUAL FINDINGS ACTUALLY OR IMPLICITLY ADJUDICATED IN THE UNDERLYING SUIT,"[1] and although THE UNITED STATES SUPREME COURT'S MIGRA DECISION[2] *REQUIRES* THIS COURT TO FOLLOW HAWAII'S COLLATERAL ESTOPPEL RULES IN DIVERSITY ACTIONS, the now-widowed Mrs. Morgan has yet to receive a judgment herein for *a single penny* of the more than $131,941.30 of reasonable fees she and her late husband were forced to incur in the Hawaii state court, despite seven years of litigation herein.

Adding to that absurdity, NONE of this Court's rulings and orders -- neither the Court's oral statement at trial when granting Chicago Title's Rule 52 motion,

---

[1] 76 Haw. 277, 296, 875 P.2d 894, 913 (1994)
[2] Migra v. Warren City School District Board of Education, 465 U.S. 75, 80-85, 102 S.Ct. 892, 896-898, 79 L.Ed.2d. 56, 61-64 (1984).

2

nor the Court's subsequent findings and conclusions, nor any of the Court's subsequent post-judgment orders[3] – EVEN MENTION the Hawaii state court's determinations that the Morgans reasonably incurred not less than $131,941.30 of fees. Nor do they EVEN MENTION the Morgans' point that the state court's determinations are binding in this action under Sentinel's collateral estoppel rule. Nor does the Ninth Circuit's brief memorandum.

Further adding to that absurdity, the Morgans repeatedly argued those points to this Court,[4] and Chicago Title never really even disputed them.

Instead, Chicago Title's preferred tactic, as in its present opposition (which disputes none of the above), was to divert the Court's attention to other matters. What could Chicago Title dispute? It can't dispute what the Hawaii state court said, or what Sentinel or Migra say.

Because this Court said absolutely nothing on the collateral estoppel point, neither the parties, nor the Ninth Circuit, nor the U. S. Supreme Court, can know why this Court disregarded it.

Did this Court simply overlook that $130,000+ point? Or does this Court

---

[3] See, esp., Findings and Conclusions, filed July 15, 2005, at 1-7, esp. 5-6; Order of October 26, 2005, at 1-8; Order of March 2, 2006, at 1-10, esp. 5-9; Order of May 8, 2006, at 1-2.

[4] See Morgans' Proposed Findings, filed June 20, 2005, at 85; Proposed Conclusions, filed June 20, 2005, at 103-104; Motion, filed August 1, 2005, at Motion, para. 2(c), p, 4, Requested Amendments and Additions, at 83, 84-85, Memorandum, at 135, 141.

think that, notwithstanding <u>Migra</u>, it need not follow <u>Sentinel</u>?

If the former is the case, then there was a clear mistake, and the Court should amend its findings, conclusions, and judgment accordingly – the Court overlooked a $130,000+ issue!! At the absolute minimum, if the former is the case, the Court should enter an order *telling* the parties and the appellate courts that it overlooked the collateral estoppel point, and how it would have resolved it – so that the parties and the appellate courts can proceed appropriately – applying the legal standards appropriate under such circumstances.

If the latter is the case, then the Court should enter an order which *tells* the parties and the appellate courts that it decided, notwithstanding <u>Migra</u>, that it need not follow <u>Sentinel</u>'s collateral estoppel rule, and *telling* the parties and the appellate courts why. Then the Ninth Circuit can determine whether this Court's holding was correct, *knowing what it was*. And, the Supreme Court will be better able to ascertain whether, and how, this Court and the Ninth Circuit may have misconstrued <u>Migra</u>, *if* that's what happened.[5] As the record stands, no one can tell.

Mr. Morgan was a legally sophisticated man, a graduate of UC Berkeley in

---

[5] The U. S. Supreme Court rarely grants certiorari review of appellate decisions remanding cases for further proceedings, preferring to consider final case results, after the trial and circuit courts have had a full opportunity to think their decisions through and fix any and all mistakes. It's next appeal in this case which would be more likely generate review of non-conformity with <u>Migra</u>.

4

engineering, and an experienced executive. He went to his grave without knowing how, given the collateral estoppel rule of <u>Sentinel</u>, and with the Hawaii state court already having determined that not less than $131,941.30 of the Morgans' state court fees were reasonable, this Court could nevertheless hold that none of them were reasonable.

The widow Morgan, and their heirs, have the same question. What was the Court's thinking?

That is a very good question, since this Court never addressed the collateral estoppel point, and thus has never attempted, either, an explanation of why <u>Sentinel</u>'s collateral estoppel rule might not apply.[6] The Ninth Circuit's brief memorandum – as an apparent result – never mentions <u>Sentinel</u>'s collateral estoppel rule either.

This Court itself said, at the time it granted the Rule 52 motion, that it was highly unusual, and odd, for the Court to grant such a motion – never before in the Court's career on the federal bench, never, if the memory of undersigned counsel is correct.

---

[6] Plaintiff would be astonished if, over the lunch break on the day of trial before granting judgment under Rule 52, the Court reviewed the duly-admitted Trial Exhibits establishing the amount of the state court's fee determination and Trial Exhibit 141, researched collateral estoppel law to determine the rule applicable where the duty to defend has been breached, and researched the circumstances under which federal trial courts are required to follow state collateral estoppel rules. There simply wasn't time.

5

Why didn't the Court apply Sentinel's collateral estoppel rule? Why? Please at least tell us.

SECOND, it is equally absurd that, as anyone can best tell, the Court never went through the evidence – i.e., the entire state court record (Trial Exhibits 4 through 209)[7] – submitted to support Morgans' claim for the value of the $295,877.20 deficiency claim they surrendered in order to settle with Dimiceli, in order to determine how that claim should have been decided.[8]

It would have been physically impossible for the Court to review and analyze the entire state court record over the lunch break at trial, before immediately granting Chicago Title's Rule 52 motion. Its only comment at that time, if undersigned counsel's memory is correct, was that "those kinds of claims" are unavailable.

Later, when the Court entered its findings and conclusions, its only comment on the $295,877.20 claim was that "the Plaintiffs did not produce any evidence" to support it – thus indicating that the Court had *not* gone through the state court record then either.[9] When this Court subsequently denied reconsideration of the $295,877.20 claim, it merely held that the value of surrendered claims (being non-

---

[7] The relevance of the state court record is shown below.
[8] See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-33, 37-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-40, 44-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.
[9] Findings and Conclusions, filed July 15, 2005.

cash) is unrecoverable and/or that Morgans had supposedly failed to cite a California Court of Appeal case (Earth Elements) holding that their value is recoverable – again indicating that it still had *not* gone through the state court record to weigh and evaluate the merits of the $295,877.20 claim – because it was flushing that claim on other grounds.[10]

The Ninth Circuit having now ruled that the value of surrendered non-cash consideration *is* recoverable, there was a clear mistake *if* the Court refrained from going through the State Court record to ascertain how Morgans' $295,877.20 claim should have been decided – the Court overlooked a $295,877.20+ issue – and the Court should amend its findings, conclusions, and judgment accordingly.

At the absolute minimum, *if* that is the case, the Court should enter an order *telling* the parties and the appellate courts that it previously refrained from going through the State Court record to ascertain how Morgans' $295,877.20 claim should have been decided, as well as how this Court would have resolved that question – so that the parties and the appellate courts can proceed appropriately – applying the legal standards appropriate under such circumstances.

Alternatively, if this Court *did* go through the State Court record to ascertain how Morgans' $295,877.20 claim should have been decided, and rejected it, then

---

[10] Order of October 28, 2005; Order of March 2, 2006.    Earth Elements had been cited in Morgans' Trial Brief, filed May 10, 2005, at 1-17, 25; Proposed Findings,

the Court should enter an order which *tells* the parties and the appellate courts how this Court thinks that claim should have been resolved, and *why*. Then the parties and the Ninth Circuit can determine whether this Court's holding was correct, *knowing what it was*.

As the record stands, no one can tell. There are no Orders of this Court saying whether the State Court record was evaluated to see how the $295,877.20 should have been decided or, if there was such an evaluation, the reasons said claim was deficient. Nor, again, does the Ninth Circuit's memorandum offer any explanation.

Here likewise, Mr. Morgan went to his grave without any explanation of why the Morgans' claim for the value of the surrendered $295,000+ deficiency claim had been rejected -- other that explanations the Ninth Circuit rejected. Again, the widow Morgan, and their heirs, have the same question. If this Court found their $295,000+ claim deficient on the merits, what was the Court's thinking?

Again, this Court itself said, at the time it granted the Rule 52 motion, that it was highly unusual, and odd, for the Court to grant such a motion.

Chicago Title's Arguments Deficient: Chicago Title's contention that this Court's new judgment is the same as its old one, upon which it bases its arguments

---

filed June 20, 2005, at 30), Proposed Conclusions, filed June 20, 2005, at 35-36),

for all kinds of procedural shenanigans, is simply wrong. Mrs. Morgan's motion is a timely Rule 59 motion, and should be granted as such.

The Court's previous judgment granted Mr. and Mrs. Morgan only $1.00 of damages. The new judgment is presently for $53,000+. The old judgment has been superseded.

Notably, Chicago Title does *not* dispute the merits of Mrs. Morgans' $131,000+ collateral estoppel fee claim or her $295,000+ value-of-surrendered-claim claim.

Chicago Title's "argument" is, in essence, that the merits are irrelevant. It was able to pull the wool over the Court's eyes by diverting its attention from the $131,000+ collateral estoppel-fee and $295,000+ value-of-surrendered-claim claim – so that the Court never or never properly considered them – and it is somehow too late to do anything about it. So ha ha ha, it must be rewarded for its sleight-of-hand by getting to keep more than $400,000 that it owes the widow Morgan.

That is not justice, and is not an acceptable result in a court of law in the United States of America.

## CONCLUSION

Mrs. Morgan's motion should be granted for each and all of the foregoing

---

and reconsideration motion filed August 1, 2005, at 39-40.

reasons, and those set forth in her moving papers.

DATED: Honolulu, Hawaii, December 20, 2007.

>STEVEN B. JACOBSON
>Attorneys at Law
>A Limited Liability Law Company
>
>_____
>STEVEN B. JACOBSON
>Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

A copy of the foregoing document was served today by first-class United States mail or hand delivery upon:

NEIL F. HULBERT, ESQ.
Alston Hunt Floyd & Ing
18th Floor, Pacific Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Attorneys for Defendant

DATED: Honolulu, Hawaii, December 20, 2007.

STEVEN B. JACOBSON
Attorney for Plaintiff