Of Counsel:
ALSTON HUNT FLOYD & ING
Attorney At Law
A Law Corporation

NEIL F. HULBERT          1143-0
JADE LYNNE CHING         5808-0
LAURA P. COUCH           7860-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai`i  96813
Telephone:  (808) 524-1800

Attorneys for Defendant
CHICAGO TITLE INSURANCE
COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended, | ) ) ) ) ) | CIVIL NO. CV00 00145 BMK |
| Plaintiff, | ) ) ) | **DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S** |
| vs. | ) ) ) ) | ***AMENDED MOTION FOR AN AWARD OF ATTORNEYS' FEES***; **DECLARATION OF LAURA P.** |
| CHICAGO TITLE INSURANCE COMPANY, | ) ) ) | **COUCH; EXHIBITS "1" - "16"; CERTIFICATE OF SERVICE** |
| Defendant. | ) ) ) ) | Non-Hearing Motion JUDGE:  Hon. Barry M. Kurren |

668246-1/3968-37

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................... 1

II.   ARGUMENT ......................................................................................... 4

       A.    Under HRS § 431:10-242, Reasonable Attorneys' Fees
             are Awarded Only Where the Insurer has Contested
             Liability and the Insurer is Ordered to Pay Policy
             Benefits ..................................................................................... 2

       B.    The Fees Requested are Not Reasonable under HRS
             Under HRS § 607-14 or HRS § 431:10-242, and Must
             Be Denied ................................................................................. 8

            (1)    Counsel's "Quarter Hour" Billing is Excessive,
                    Unreasonable, and Warrants a Blanket Fee
                    Reduction ...................................................................... 9

            (2)    Counsel Billed Extensively for Secretarial Duties,
                    Purely Administrative Matters, and Paralegal
                    Tasks ........................................................................... 11

            (3)    The "Overlawyering" and Excessive Fees ................... 12

            (4)    Plaintiff's Fee Request is Grossly Disproportionate
                    to the Relief Sought, and is Per Se Unreasonable ........ 14

            (5)    The Fees, if Actually Billed, Would Violate Rule
                    1.5 of the Hawai`I Rules of Professional Conduct ....... 15

       C.    HRS § 607-14 Places a Cap on Attorneys' Fees .................... 15

III.   CONCLUSION .................................................................................... 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Mogilevsky v. Bally Total Fitness Corp.,*
    311 F. Supp. 2d 212 (D. Mass. 2004)........................................................... *13*

*Welch v. Metropolitan Life Insurance Company,*
    480 F.2d 942 (9th Cir. 2007) ......................................................................... 13

### STATE CASES

*Bow v. Nakamura,*
    6 Haw. App. 290, 719 P.2d 1103 (1986).......................................................... 9

*Clark v. Universal Debt Solutions, Inc.,*
    2007 WL 2386581 (D. Hawai`i 2007)...................................................... 12, 13

*Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,*
    58 Haw. 606 (1978) ...................................................................................... 18

*Jones v. Johnson,*
    41 Haw. 389 (Haw. Terr. 1956)...................................................................... 10

*Labrador v. Liberty Mutual Group,*
    103 Hawai`i 206, 81 P.3d 386 (2003) .............................................................. 7

*Mikelson v. United Services Automobile Association,*
    108 Hawai`i 358, 120 P.3d 257 (2005) ............................................................ 5

*Ranger Insurance Company v. Hinshaw,*
    103 Hawai`i 26, 79 P.3d 119 (2003) ................................................................ 6

*Ruwitch v. First National Bank of Miami,*
    327 So. 2d 833 (D. Fla. 1976) ...................................................................... 16

**STATE CASES (cont.)**

*S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club*,
    76 Hawai`i 396, 879 P.2d 501 ...................................................................... 17

*Sharp v. Hui Wahine, Inc.*,
    49 Haw. 241, 413 P.2d 242 (1966) ............................................................. 18

**STATE STATUTES**

HRS § 431:10-242 .............................................................................. 2, 3, 5, 6, 7, 10

HRS § 432:10-242 ........................................................................................... 7

HRS § 607-14   .................................................................................. 2, 3, 10, 17, 18

**DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO
PLAINTIFFS'** *AMENDED MOTION FOR AN AWARD OF THEIR
ATTORNEYS' FEES AND EXPENSES*

## I.    INTRODUCTION

After eight years of litigation seeking over 1.5 million dollars in damages, this Court awarded Plaintiff less than $60,000 ($31,251.03, with prejudgment interest of $24,178.61).

Plaintiff now claims she is entitled to $383,523.80 in attorneys' fees.

It should not surprise the Court to learn Plaintiff's unreasonable claim for fees has no support in law or fact.  To summarize:

- Plaintiff sought only consequential and punitive damages, not contract damages, and Hawai`i Revised Statutes ("HRS") § 431:10-242 does not support claims for attorneys' fees where the insurer is not ordered to pay benefits under a policy,

- Defendant Chicago Title Insurance Company ("Chicago Title") has not disputed liability for breach of insurance contract since **May 22, 2003**, and HRS § 431:10-242 does not support claims for attorneys' fees where liability was not disputed,

- The fees requested are unreasonable because they (1) are billed in quarter hour increments, (2) contain numerous entries billing attorney time for secretarial, paralegal and administrative duties, (3) are extraordinarily excessive and duplicative, (4) are grossly disproportionate to the actual recovery obtained, and (5) would violate Rule 1.5 of the Hawai`i Rules of Professional Conduct if actually billed, and

- As Plaintiff concedes, HRS § 607-14 caps attorneys' fees to 25% of the total recovery, or $13,857.41 in this case.

Accordingly, Chicago Title opposes Plaintiff's *Amended Motion for an Award of Attorneys' Fees* (the "Motion for Fees"). The Motion for Fees is an exorbitant request. Any attorneys' fees award to Plaintiff be limited to not more than $13,857.41, as provided by HRS § 607-14, and reasonably, it should be no more than 2% of the amount requested by Plaintiff for pursuing all claims, as explained below.

## II.    ARGUMENT

### A.    Under HRS § 431:10-242, *Reasonable* Attorneys' Fees are Awarded *Only* Where the Insurer has Contested Liability *and* the Insurer is Ordered to Pay Policy Benefits.

Plaintiff is not "automatically" entitled to attorneys' fees under HRS § 431:10-242. HRS § 431:10-242 provides, in relevant part:

> Where an insurer has contested its liability under a policy
> **and** is ordered by the courts to pay benefits under the
> policy, the policyholder, the beneficiary under a policy,
> or the person who has acquired the rights of the
> policyholder or beneficiary under the policy shall be
> awarded reasonable attorney's fees and the costs of suit,
> in addition to the benefits under the policy.

(Emphasis added.) HRS § 431:10-242 expressly requires that for attorneys' fees to be awarded to a policyholder, the insurer must have (1) contested its liability under a policy, *and* (2) been ordered by the court to pay benefits under the policy.

*Chicago Title (1) has not contested liability for the claimed*

*consequential damages for nearly five years, and (2) has not been ordered to pay*

2

668246-1

***benefits under the Policy***.  Plaintiff did not sue to recover policy benefits, only consequential and punitive damages.  Chicago Title's liability for consequential damages was established and ***narrowly drawn*** by the Ninth Circuit Court of Appeal in its Memorandum and Order, Appeal No. 05-17145, dated May 22, 2003 (the "Liability Order").[1]  Thereafter, this Court granted summary judgment on Plaintiff's punitive damage claim.  Accordingly, the issues for trial on remand were for ***consequential*** damages limited to (1) the reasonableness of Plaintiff's fee request for defense of the covered claim (the "DROA Claim") in the Foreclosure Action, (2) Plaintiff's right to recover damages for what they believed the Fifth Circuit Court "should" have awarded in the Foreclosure Action and the Deficiency Judgment given up in settlement, and (3) Plaintiff's right to recover a multiplier for "tax damages."

After remand, there was no dispute as to Chicago Title's liability for consequential damages for breach of insurance contract.  The parties have disputed vigorously the amount of consequential damages, but since May 22, 2003, the issue of liability has not been disputed.[2]  The Liability Order did not order Chicago

---

[1]  A copy of the May 22, 2003 Liability Order is attached as Exhibit 1 to the Declaration of Laura P. Couch, hereinafter the "Couch Declaration."

[2]  *See* Chicago Title's Trial Brief.

Title to pay benefits under the Policy; [3] it only determined liability for potential

consequential damages for its failure to defend in the Foreclosure Action.  The

Hawai`i Supreme Court interprets HRS § 431:10-242 strictly.  In *Mikelson v.*

*United Services Automobile Association,* 108 Hawai`i 358, 120 P.3d 257 (2005),

the Hawai`i Supreme Court specifically found that an order that the insured is

entitled to "coverage" under a policy does not automatically entitle the insured to

fees under HRS § 431:10-242.  Because the final order did not resolve the issue for

payment of any benefit, both required elements under HRS § 431:10-242 were not

met and the right to fees under HRS § 431:10-242 was not triggered.  *Id.,* at 360-

361 and 259-260.  Similarly, in *Ranger Insurance Company v. Hinshaw,* 103

Hawai`i 26, 79 P.3d 119 (2003), the insured was denied recovery of fees under

HRS § 431:10-242 notwithstanding the fact that the court found that the insured

was the "prevailing party" in the action.  The court followed the strict language of

HRS § 431:10-242 requiring that an insurer both contest liability ***and*** be ordered to

pay benefits under a policy prior to awarding attorneys' fees under the statute.  *Id.*

at 234, 127.  "[A]lthough [the insurer] contested its liability under the policy issued

---

[3] The term "Policy" refers to that certain Loan Policy of Title Insurance
dated January 10, 1992 (Chicago Title's ALTA Loan Policy (4-6-90)) insuring the
priority of Plaintiffs' mortgage on a fee simple estate in Lot 22 of the Princeville at
Hanalei in Hanalei, Kauai, Hawai`i, File Plan No. 1557 (the "Property") as
security.  (Couch Declaration, Exhibit 2.)

4

to [insurer], it was not ordered by the court to pay any benefits thereunder". *Id.*
*See also Labrador v. Liberty Mut. Group,* 103 Hawai`i 206, 211, 81 P.3d 386, 391
(2003) (reviewing HRS § 432:10-242 strictly as applying only to fees incurred in a
"suit," i.e., "court of law" and not in an arbitration proceedings).

        Chicago Title has not been ordered to pay benefits under the Policy.
Plaintiff's recovery is for ***consequential*** damages attributable to Chicago Title's
failure to defend a potentially covered claim made by Dimiceli in the Foreclosure
Action.[4]  Plaintiff successfully defeated Dimiceli's claims and therefore incurred
no liability to Dimiceli for a claim covered under the Policy.  Plaintiff did obtain
the Deficiency Judgment against Dimiceli for "unpaid rent," which was
relinquished in settlement, i.e., the Deficiency Judgment the amount of which this
Court has awarded to Plaintiff.

        Obviously recognizing that HRS § 431:10-242 requires an order to
pay policy benefits as a condition to an award of fees, Plaintiff now, for the first
time, claims the Deficiency Judgment represents a "benefit" under the Policy.

---

    [4] The consequential nature of the damages sought is evident from Plaintiff's
own pleading, i.e., the Second Amended Complaint filed January 31, 2001.  In the
Second Amended Complaint, Plaintiff alleges "…Chicago Title is liable to
Plaintiffs for their attorneys' fees, costs and expenses incurred in dealing with
Dimiceli's contentions, ***as well as for*** the losses plaintiffs suffered as a result of
having to enter into an unfavorable settlement agreement with Dimiceli to avoid
further fees, costs and expenses in dealing with her contentions." (Second
Amended Complaint, ¶ 12, emphasis added.)

668246-1

Plaintiff is wrong. Plaintiff relies on paragraph 6(b) of the Conditions and
Stipulations of the Policy, but her reliance is misplaced.[5] Paragraph 6 addresses
Chicago Title's options when a claim is made, ***not*** its liability for breach of
contract. Paragraph 6 states that when a claim is made, in addition to the option of
defending or prosecuting a claim for the insured (under paragraph 4), Chicago Title
has the following options:

    (a)    pay the amount of insurance (i.e., $300,000.00),

    (b)    purchase the indebtedness of the insured mortgage,

    (c)    pay or settle with the insured or other parties, or

    (d)    pay or settle with the insured "the loss or damage provided for
           under" the Policy.

(Policy, page 4, Exhibit 2 to the Couch Declaration.) Plaintiff has no right to
require Chicago Title to elect a particular option. "Loss or damage provided for
under" the Policy means loss or damage related to the nine (9) covered risks stated
on page 1 of the Policy. ("[T]he Company, insures…against loss or
damage…sustained or incurred by the insured by reason of….") (*See* Policy, page
1.) Such risks all relate to either title defects or the insured mortgage's lack of

---

[5] Plaintiff may assert that the claim for fees in the Foreclosure Action were a
benefit under the Policy. Plaintiff is wrong on this point as well. Paragraph 6(b)
refers to fees and costs "authorized by [Chicago Title]". It is undisputed that
Chicago Title authorized none of the fees and costs claimed.

668246-1

priority. To constitute "loss or damage" under the policy, an insured must suffer a final determination against it adverse to the title or the lien of the insured mortgage. (*See* Policy, Conditions and Stipulations, paragraph 8(b).) Plaintiff suffered no such adverse determination. The Deficiency Judgment against Dimiceli is in Plaintiff's favor and thus not a determination adverse to the insured. Further, the Deficiency Judgment has no relation to any of the Policy's covered risks. Relinquishing the Deficiency Judgment is a consequential damage, does not constitute damages for a covered risk, and thus is not a benefit under the Policy.

Until this motion, Plaintiff consistently argued that the surrender of the Deficiency Judgment is a consequential damage. (*See* Second Amended Complaint, ¶ 12; Plaintiff's Trial Brief, page 18, Exhibit 3 hereto; Appellants' Opening Brief, pages 29-33, Exhibit 4 hereto; s*ee also* Memorandum and Order, page 4, "For their bad faith claim, Morgan's sought only punitive damages and the same consequential damages available in their breach of contract claim," Exhibit 16 hereto.) While Chicago Title does not agree with this Court's determination regarding the amount of damages, Plaintiff's prior assertion is consistent with the law. Consequential damages are the foreseeable costs resulting from a breach of contract, not the direct expectation contract damages. *Bow v. Nakamura,* 6 Haw.App. 290, 293-294, 719 P.2d 1103, 1106 (1986); *Jones v. Johnson,* 41 Haw. 389, *3 (Haw. Terr. 1956). Here, direct expectation contract damages would be

7

those resulting from a loss associated with a title defect or lack of priority for the insured mortgage determined adversely to Plaintiff, neither of which exist.

Although Plaintiff might be the prevailing party by virtue of her limited damage award ($31,351.03), this action has never concerned the liability of Chicago Title to pay policy benefits, and its liability for consequential damages has not been disputed since at least the Liability Order in May 2003. Since that time, Chicago Title never contested its liability for consequential damages related to its failure to defend the DROA Claim. Thus, the only issue before this Court has been the amount of, but not the obligation to pay, consequential damages. Accordingly, Plaintiffs are not entitled to the attorneys' fees they seek under HRS § 431:10-242.

### B.    The Fees Requested are Not Reasonable under HRS § 607-14 or HRS § 431:10-242, and Must be Denied

Even if Plaintiff were entitled to fees under HRS § 431:10-242 (which she is not), only *reasonable* fees are recoverable pursuant to HRS §§ 431:10-242 and 607-14 (only $13,857.41 is arguably recoverable under HRS § 607-14). Nearly *all* the fees in Exhibit A to the Motion for Fees are patently unreasonable. The procedural and evidentiary requirements for an attorneys' fees motion before this Court are specific under LR 54.3, which requires specific itemization of work descriptions, the services rendered, and expenses incurred by litigation phase. LR 54.3(d)(1)-(3). A detailed review of Plaintiff's itemization demonstrates most of

8

the requested fees were not reasonably incurred (*see* Exhibit 5 to the Couch

Declaration, which categorizes Plaintiff's billing and fees by "task," i.e., by the

stages of litigation, and Exhibit 6, which summarizes fees incurred for unnecessary

filings), and at the very least, Plaintiff's request must be denied on this basis.

> (1)    *Counsel's "Quarter Hour" Billing is Excessive, Unreasonable,*
>        *and Warrants a Blanket Fee Reduction*

**All** the time entries are in quarter hour segments.  Exhibit A is replete

with tasks requiring only a minute or two, but for which a full quarter-hour (.25)

was billed at $250.00 per hour.  At best, it is an excessive billing practice and

unreasonable.  The following chart provides just a few examples of multiple

overbilled entries in Exhibit A:

| Date | Init. | Description of Services | Hours/Amount |
|------|-------|-------------------------|--------------|
| 5/11/05 | SBJ | email Couch re status of drafts of stipulated Morgan, Cuatto and Sulla testimony[6] (Exhibit A, page 26) | .25/$62.50 |
| 5/11/05 | SBJ | email Couch re proposed add'l exhibits[7] (Exhibit A, page 26) | .25/$62.50 |
| 5/12/05 | SBJ | reply to Couch email re service of trial brief[8] (Exhibit A, page 26) | .25/$62.50 |

---

[6] This email is one line in length.  (*See* Couch Declaration, Exhibit 7.)

[7] A copy of this short email is also attached.  (Couch Declaration, Exhibit 8.)

[8] It is hard to believe this email took more than 60 seconds to draft and send.
(*See* Couch Declaration, Exhibit 9.)

668246-1

| 5/14/05 | SBJ | Email Couch re rationale for stip changes[9] (Exhibit A, page 26) | .25/$62.50 |
| 5/19/05 | SBJ | Reply to Couch email re exhibit copies[10] (Exhibit A, page 27) | .25/$62.50 |
| 5/25/05 | SBJ | Call and e-mail from Couch re scheduling of settlement conference[11] | .25/$62.50 |

Careful review of Exhibit A demonstrates such entries are not the exception, but the norm. Fortunately, this sort of excessive billing and "padding" are not tolerated by courts considering fee award requests. In *Clark v. Universal Debt Solutions, Inc.,* 2007 WL 2386581 *2 (D. Hawai`i 2007), the District Court of Hawai`i reduced a fee request by a flat percentage reduction because counsel billed in quarter-hour increments and that, "while such a billing practice may appear harmless on its face, over the course of litigation, use of such a billing method may result in unearned legal fees." *Id.* The Ninth Circuit echoes the sentiment of *Clark*. In *Welch v. Metropolitan Life Insurance Company,* 480 F.2d 942 (9th Cir. 2007), the Ninth Circuit held the district court did not abuse its discretion by

---

[9] A copy of this short email is attached. (Couch Declaration, Exhibit 10.)

[10] A copy of this short email is attached. (Couch Declaration, Exhibit 11.)

[11] A copy of this short email confirming the settlement conference is attached. (Couch Declaration, Exhibit 12.)

10

imposing 20% across-the-board reduction in hours based on quarter-hour billing increments.   Exhibit A to the Motion for Fees demonstrates that at the very least, a similar reduction is warranted here.

> (2)   *Counsel Billed Extensively for Secretarial Duties, Purely Administrative Matters, and Paralegal Tasks*

Attorneys may not recover their standard hourly rate for performing tasks appropriate to a less experienced lawyer or paralegal. *Mogilevsky v. Bally Total Fitness Corp.,* 311 F.Supp.2d 212, 217-218 (D. Mass. 2004) (prevailing plaintiff awarded attorneys' fees at lower rates where work could have been performed by less experienced attorney or paralegal).  Courts require plaintiffs be held to a rate which would factor in time by the attorneys that "would no doubt have been performed by employees with significantly lower hourly rates." *Id.* at 218.  Contrary to counsel's contention that he billed at a $75.00 rate for "paralegal type services" (*see* Motion for Fees, page 3), however, Exhibit A to the Motion for Fees reflects only ***four*** such entries in its 38 pages for a total of 11.50 hours (a savings of $2127.50) (Exhibit A, page 27).  Clearly, Exhibit A demonstrates that counsel consistently and liberally billed $250.00 per hour for work which should have been completed by an associate attorney or paralegal:

- Over 238 hours ($59,500) for "research," much of it for duplicative issues.

- Over 235 hours ($58,750.00) for "drafting."

11

(*See* Motion for Fees, Exhibit A.)

Incredibly, counsel also billed extensively for ***non-legal*** work altogether.  Counsel billed $250.00 per hour for calls and review of general administrative matters, for calls to court clerks for hearing dates and status, for the filing and service of documents, and even for the preparation of general engagement letters.  Exhibit A to the Motion for Fees is littered with such inappropriate billing entries, some of which have been summarized in Exhibit 13 hereto.  It is wholly inappropriate for an attorney - - a partner no less - - to bill for secretarial and administrative duties.  Plaintiff's attorneys' fee claim is inflated and unreasonable.

(3)    *The "Overlawyering" and Excessive Fees*

Plaintiff's Exhibit A also demonstrates counsel billed this case much in the same manner he billed the Foreclosure Action, i.e., it was excessively "overlawyered" for the amount of work typically required.  Exceptionally over-billed matters include, but are certainly not limited to:

- 140 hours ($35,000.00) drafting and preparing proposed findings of fact and conclusions of law which directly contradicted the ruling of this Court at trial in 2005 (Exhibit A, pages 28-30).

- 30.25 hours ($7562.50) for research related to the proposed findings of fact and conclusions of law, most of which were issues already briefed in Plaintiff's trial brief and other filings (Exhibit A, pages 28-30),

12

- 8 hours ($2000.00) for drafting and defending Plaintiff's initial pleading which was voluntarily dismissed and amended. Plaintiff should not recover fees for a pleading counsel agreed was deficient. (Exhibit A, page 14-15; Exhibit 5 to the Couch Declaration, page 1.)

- 28 hours ($7000.00) for drafting and defending Plaintiff's unsuccessful motion for reconsideration (28 hours) (denied May 20, 2002). (Exhibit A, pages 18-19; Exhibit 5 to the Couch Declaration, page 4.)

- 12.5 hours ($3125.00) preparing "my trial testimony" where counsel never provided any testimony (Exhibit A, page 27)

- Notwithstanding Plaintiff's loss on summary judgment *and* her loss in seeking reconsideration thereof, counsel billed 14.25 hours ($3500.00) for a motion requesting this Court to "alter and amend" its judgment. (Exhibit 5 to the Couch Declaration, page 4.)

In just these examples alone, counsel billed 233 hours at $250.00 per hour for

(almost $60,000) for what can only be characterized as superfluous billing on

matters already litigated, or, as in the case of preparing trial testimony, for attorney

"preparation" never even implemented at trial. Even a cursory review of these

itemized fees demonstrates they are plainly unreasonable and must be reduced.

Finally, Plaintiff filed a motion to reconsider virtually every motion

she lost, and frequently filed a motion for relief when the reconsideration was

denied. In all instances, Plaintiff did not present new facts or legal authority not

already available when the initial motions or oppositions were filed, and mirrored

13

her practice in the Foreclosure Action which also unnecessarily increased the claimed fees.

> (4)    *Plaintiff's Fee Request is Grossly Disproportionate to the Relief Sought, and is Per Se Unreasonable*

Having sought over 1.5 million dollars in this litigation, Plaintiffs were ultimately awarded damages of $31,351.03, plus $24,178.61 in pre-judgment interest. Fees which do not bear a reasonable relation to the result obtained are unreasonable. *Ruwitch v. First National Bank of Miami,* 327 So.2d 833 (D. Fla. 1976) (court held $15,000 fee award for $22,356.46 judgment did not bear a reasonable relation to the result and was inappropriate). Viewed as a whole, the requested fees are, **at best,** grossly disproportionate to the amount at stake. Fees nearing $400,000 for a recovery of less than $60,000 show little benefit from the legal services. Indeed, Plaintiff's disproportionate result is underscored and magnified in light of the many efforts Chicago Title undertook to settle this action without the incurring of unnecessary fees. Such efforts were most recently reflected in Chicago Title's Offer of Judgment dated August 8, 2007, wherein Chicago Title offered - - again - - to settle for more than Plaintiff ultimately won in a judgment. (Couch Declaration, Exhibit 14.)

> (5)    *The Fees, if Actually Billed, Would Violate Rule 1.5 of the Hawai`i Rules of Professional Conduct*

Rule 1.5 of the Hawai`i Rules of Professional Conduct requires that

14

"[A] lawyer's fee shall be reasonable." A fee more than ten (10) times greater than the recovery is obviously excessive and unreasonable. Of course, counsel need not worry about this potential violation because he will not be billing Plaintiff anything close to that amount; his arrangement with Plaintiff is for a contingent fee. Plaintiff is entitled to a percentage of what Chicago Title pays and counsel keeps the rest.

Indeed, Plaintiff paid only approximately $75,000 of the $200,000 of fees in the Foreclosure Action.[12]

### C.    HRS § 607-14 Places a Cap on Attorneys' Fees

Plaintiff appears to concede she is limited under HRS § 607-14 to a fee award not to exceed 25% of the judgment. HRS § 607-14; *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club,* 76 Hawai`i 396, 398, 879 P.2d 501, 503 (1994); *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 619, 575 P.2d 869, 879 (1978); *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 248-249, 413 P.2d 242, 247 (1966) (noting that fee is not justified where the actual services performed do not justify it). Certainly, $383,520.80 in attorneys' fees is not reasonably incurred or justified where the award is only for $31,351.03. If Plaintiff is entitled to fees at all, it must be limited not more than $13,857.41.

---

[12] A copy of Plaintiff's fee agreement with counsel, produced by Plaintiff in discovery, is attached hereto as Exhibit 15.

668246-1

Another way to look at the fee request is to compare the amount finally awarded to the amount Plaintiff claimed. Plaintiff sought, in round numbers, consequential damages of $30,000 for the "surrendered" judgment, $200,000 for her fees in the Foreclosure Action, $285,000 for the judgment the State Court should have but did not enter, and punitive damages of at least $1,000,000, for a total of $1,515,000. Her recovery was only the $30,000 claim, a mere 2% of her total claim. Applying the 2% to her total fee claim of $383,520 yields $7,670, just over one half allowed by the HRS § 607-14 formula. Clearly, most of the claimed fees were incurred in pursuit of the claims Plaintiff lost. There is little doubt that had Plaintiff properly limited her claim to the $30,000 Deficiency Judgment, rather than tilting at windmills, this case would not have consumed 7 years and hundreds of thousands of dollars of time.[13]

Because every time entry fails to differentiate or allocate work among the 4 different damage claims (the $30,000 Deficiency Judgment, the $200,000 judgment not awarded in the Foreclosure Action, the $200,000 for fees in the Foreclosure Action, and the $1,000,000 for punitive damages) it is impossible to do any reasonable analysis as to how much time was reasonably incurred in pursuing only the $30,000 Deficiency Judgment damage claim, the only claim for

---

[13] Indeed, had Plaintiff's claim been properly limited in scope, it would not have reached the jurisdictional limit required for this Court.

16

which Plaintiff is entitled to any fees.  Obviously, counsel spent some time on this

claim, but Plaintiff seeks recovery for work done on **all** the claims.  Plaintiff is not

entitled to fees for pursuit of claims she lost, or work that did not result in a victory

for her.  Plaintiff has failed to carry her burden to the degree of certainty required.

Once again, Plaintiff leaves Chicago Title and the Court to guess.

### III.    CONCLUSION

Based on the foregoing, Chicago Title respectfully requests that

Plaintiffs' *Motion for Fees* be substantially reduced to no more than 25% of the

Judgment, and reasonably it should be no more than 2% of the amount requested

for pursuing all claims.

DATED:  Honolulu, Hawai`i, February 15, 2008.

/s/ Laura P. Couch
NEIL F. HULBERT
JADE LYNNE CHING
LAURA P. COUCH
Attorneys for Defendant Chicago
 Title Insurance Company

17

668246-1