

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

STEVEN B. JACOBSON    4117-0
(sjacobson.law@hawaiiantel.net)
P. O. Box 240761
Honolulu, HI 96824-0761
Telephone: (808) 377-1814

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 0 7 2008

at _11_ o'clock and _46_ min. _P_ M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK<br><br>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF AMENDED MOTION FOR AN AWARD OF ATTORNEYS' FEES; CERTIFICATE OF SERVICE<br><br>JUDGE: Hon. Barry M. Kurren |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF AMENDED MOTION FOR AN AWARD OF ATTORNEYS' FEES

Plaintiff Alice H. Morgan, Trustee ("Plaintiff"), replies as follows to

Defendant Chicago Title's opposition to her Amended Motion for an Award of

Attorneys' Fees.

1

I.    HRS § 431:10-242 CLEARLY APPLIES.  CHICAGO TITLE **HAS** BEEN ORDERED TO PAY "BENEFITS OWED UNDER A POLICY OF INSURANCE" TO MRS. MORGAN, AND CHICAGO TITLE CONCEDES THAT IT CONTESTED LIABILITY FOR THOSE BENEFITS.

Chicago Title contends that it has no liability for Mrs. Morgan's fees under HRS § 431:10-242, arguing that the amounts it has been ordered to pay aren't "benefits" owed under Morgans' Chicago Title policy.  Wrong.

A.    The term "benefit," as used in HRS Chapter 431, includes every policy obligation owed by an insurance carrier to its policyholders.  See, e.g., *Kapahua v. HIG, Ltd.*, 50 Hawaii 644, 646, 447 P.2d 669 (1968) (current HRS § 431:10-220 requires that insurance policies clearly describe carriers' duties to their policyholders so that "the parties need not guess about their duties and **benefits**"); B. Gardner, *Black's Law Dictionary* 166-167 (8th ed. 2004) (a "benefit" is any "advantage" or "privilege," including the right to use automobiles, tuition allowances, and clergy's right not to be tried for a felony [benefit of clergy]).

Therefore, for purposes of HRS § 431:10-242, the "benefits" owed under Morgans' policy are not limited to payment of "the costs, attorneys' fees and expenses incurred in defense of the title of the lien of the insured mortgage" – the benefits described on the first page of their policy.  (See CT Ex. 2, first page, last lines of text)

Elsewhere in Morgans' policy, as one of several alternatives to paying such defense expenses, fees and costs, Chicago Title gave itself – **under the express terms of its own policy!** – various "options" to provide different, alternative other "benefits" when faced with a challenge to an insured mortgage.

Most importantly, Chicago Title gave itself options to choose whether to either (1) continue to pay and provide for the defense of Morgans' mortgage until any challenge thereto was fully adjudicated, or (2) lessen its obligation for defense costs by "**pay[ing] or otherwise settl[ing] with other parties** for and in the name of [the] insured [Morgans]," thereby limiting its obligation for payment of defense fees and costs to those incurred "up to the time of the payment." (CT Ex. 2, para. 6(b)(1))

The consideration required to "otherwise settle with other parties" is, as a result, an alternative policy "benefit."

B.      Next, Chicago Title argues that it can nonetheless escape a fee assessment under HRS § 431:10-242 because "Plaintiff has no right to require Chicago Title to elect a particular option"[i] in providing policy benefits. (Oppo., at 6, lines 12-13) That argument is both disingenuous and wrong for at least three reasons.

---

[i] Chicago Title does *not* dispute the existence of its option to "pay or otherwise settle with other parties for and in the name of the insured claimant." (See Oppo., at 6, lines 3-4 *et seq.*)

First, despite years of litigation, Chicago Title has yet to pay either a single penny of Morgans' defense fees or costs, or a single penny of other, alternative benefits. Consequently, it is disingenuous for Chicago Title to imply that it chose to pay one kind of benefits, to the exclusion of its alternative choices. Chicago Title chose to pay and do nothing.

Second, Chicago Title lost its ability to dictate "a particular option" more than a decade ago, by breaching its duty to defend. Once a carrier breaches its duty to defend, "the insured is entitled to negotiate a reasonable and good faith settlement of the underlying claim" for which the carrier will be liable. *Sentinel Insurance Co. v. First Insurance Co.*, 76 Hawaii 277, 296, 875 P.2d 894, 913 (1994).[2]

Third, at this point, the courts have effectively exercised Chicago Title's option for it. Chicago Title having done nothing, the courts have determined that Chicago Title is liable for, at minimum, the value of part of the consideration the Morgans yielded in order to settle with Dimiceli. (See Chicago Title's Ex. 16, at 2)

---

[2] A carrier in breach of its duty to defend loses other "options" as well, such as its options to approve attorneys' fees in advance, to otherwise dictate defense strategy, to reject settlement offers, etc. *Id.*

C.    Chicago Title's play upon-words, using the term "consequential"

damages, is an irrelevant diversionary tactic.  See Oppo., at 3, line 2, at 5, line 6,

and at 7, line 10.

In this action, as a "consequence" of its failure to provide the Morgans with

benefits owed under their policy, Chicago Title has been ordered to provide Mrs.

Morgan with one contractual policy "benefit" – part of the value of part of the

consideration the Morgans yielded to "otherwise settle" with Dimiceli.  (See CT

Ex. 2, para. 6(b)(1))

D.    Equally irrelevant is Chicago Title's discussion (at 6-7) of the "loss

and damage" and "determined by a final judgment" provisions of Morgans' policy.

That discussion is apparently designed to mislead, to divert the Court's

attention from the actually-relevant policy provisions.  Under *Sentinel*, *supra*,

"final judgment" and other such requirements are inapplicable once the duty to

defend has been breached.

II.    HRS § 607-14 DOES NOT CAP MRS. MORGAN'S FEE RECOVERY
UNDER HRS § 431:10-242 – EITHER DIRECTLY OR INDIRECTLY.  IN
FACT, THE PLAIN WORDS OF HRS § 607-14 SHOW THAT
"REASONABLE" ATTORNEYS' FEES MAY OF COURSE EXCEED
25% OF A PREVAILING PARTY'S RECOVERY.

HRS § 607-14 merely caps fee applications made under that section.  It does

not cap fee applications made under HRS § 431:10-242, or under any other statute.

None of the cases cited by Chicago Title (at 15) even deal with fee applications made under HRS § 431:10-242.

Indeed, the words of HRS § 607-14 plainly show that §607-14 does **not** apply to statutes like HRS § 431:10-242:

> "Nothing in this section shall . . . affect any right of a prevailing party to recover attorneys' fees in excess of twenty-five per cent of the judgment pursuant to any statute that specifically provides that a prevailing party may recover all of its reasonable attorneys' fees."

In so wording HRS § 607-14, the Hawaii Legislature and Governor expressly recognized that "reasonable attorneys' fees" may of course exceed 25% of a party's ultimate judgment.

III.   <u>ALMOST ALL OF CHICAGO TITLE'S OTHER OBJECTIONS MUST BE DISREGARDED BECAUSE OF CHICAGO TITLE'S FAILURE TO COMPLY WITH THE SPECIFICITY REQUIREMENTS OF LR 54.3(f).</u>

As the moving papers show, the available information – through the first appeal, the trial, and the post-trial preparation of proposed findings and conclusions – shows that Mrs. Morgan's fees are in fact *lower* than those incurred by Chicago Title in its massive resistance to Morgans' claims, reflecting the greater efficiency of Morgans' counsel.

Nonetheless, Chicago Title is disputing the reasonableness of Mrs. Morgan's fee request.

However, Chicago Title has largely ignored the rigorous specificity

requirements of Local Rule 54.3, which imposes strict requirements upon both proponents and opponents of post-judgment fee motions.  LR 54.3(d & f).

Consequently, most of Chicago Title's objections to Mrs. Morgan's fee request must be disregarded.

Just as Local Rule 54.3 required Mrs. Morgan to meticulously list each and every time entry for which she seeks recovery, Local Rule 54.3(f) also requires Chicago Title, as the party opposing a fee motion, to "identify with specificity" **"each disputed time entry"** that it wishes to debate.  (emphasis added)

Chicago Title is in plain violation of Local Rule 54.3(f) because it is (1) requesting various kinds of "across-the-board" reductions without identifying more than a handful of the specific entries it apparently has in mind; and (2) offering so-called "examples" of entries it hopes to dispute, and then asking the Court – rather than specifying those it is thinking of (if any) – to wade through all of Mrs. Morgan's fee entries and choose any items the Court itself might think "similar."

This tactic of Chicago Title – of deliberate non-compliance with Local Rule 54.3(f) – not only defeats Rule 54.3(f)'s purpose of limiting the entries the Court needs to review (to those which are genuinely disputed), but also invites inappropriate *sua sponte* speculation by the Court (over which entries Chicago Title may have meant), and makes it impossible for Mrs. Morgan to know what she needs to reply to.

IV.   UNDER HRS § 431:10-242, MRS. MORGAN IS ENTITLED TO
      RECOVER ALL OF HER FEES REASONABLY INCURRED IN THIS
      ACTION, INCLUDING (1) FEES REASONABLY INCURRED IN
      PURSUING ELEMENTS OF HER DAMAGES WHICH HAVE NOT,
      OR AT LEAST NOT YET, BEEN AWARDED, AND (2) FEES
      RECORDED IN QUARTER-HOUR INCREMENTS.

No Cap.  Under HRS § 431:10-242, Mrs. Morgan is entitled to recover all of

her fees which were reasonably incurred in this action.  There is nothing in the

wording of HRS § 431:10-242 – "reasonable attorneys' fees" – placing any

specific cap on fee recoveries thereunder.

Unawarded Damages.  Without citing any authority, Chicago Title asserts

(at 17) that Mrs. Morgan cannot recover fees incurred in pursuing elements of her

damages which have  not, or at least not yet, been awarded.  That is plainly wrong.

In *Sentinel*, *supra*, 76 Hawaii at 296, 875 P.2d at 913, the Hawaii Supreme

Court approvingly cited *Arenson v. National Auto and Casualty Co.*, 48 Cal.2d

528, 310 P.2d 961 (1957), as an example to be followed in determining the

reasonableness or attorneys' fees.

In *Arenson*, the California Supreme Court held that "reasonably incurred"

(968) fees included amounts incurred in pursuing an unsuccessful constitutional

challenge to a tort claim seeking a $274.18 recovery, in the absence of a "showing

that such issues were not debatable or were not advanced in good faith" (967).

*Arenson*, 310 P.2d at 967-968.

Similarly, in *Sharp v. Hui Wahine*, 49 Hawaii 241, 244-245 (1966), the

Hawaii Supreme Court held that "the benefits resulting to the client from the

services" were merely one of many factors to be considered in determining the

reasonableness of attorneys' fees.

*Sharp* recognized such other factors as "the time and labor required," "the

novelty and difficulty of the questions involved," "the skill required to properly

conduct the case," "the amount involved in the controversy," the contingency or

uncertainty of the compensation," and "whether [the employment is] for a casual or

an established and consistent client," as all being potentially relevant. *Id.*

Quarter-Hour Increments. Nothing in HRS § 431:10-242, the reported case

law, or the Rules of the United States District Court for the District of Hawaii,

precludes the use of quarter hour increments in determining reasonable attorneys'

fees – let alone in diversity cases applying Hawaii law.

There is no particular magic in any particular billing increment.

Mathematically, quarter hour billing increments theoretically benefit clients when

they result in rounding down (16-22 minutes of work rounded down to 15 minutes,

31-37 minutes rounded down to 30, etc. ), just as they theoretically benefit

attorneys when rounded up (1-14 minutes rounded up to 15, 23-29 minutes

rounded up to 30, etc.). Attorneys typically set their per hour billing rates with

their total receipts in mind. Consequently, any new rule outlawing quarter-hour

billing rates, if actually significant, would likely result in upward adjustments to per hour billing rates.

The only reported "quarter hour" case cited by Chicago Title, *Welch v. Metropolitan Life*, 480 F.3d 942 (9th Cir. 2007),[3] is not applicable because the Court was interpreting a federal statute, ERISA, rather than a Hawaii statute. Moreover, in *Welch*, the District Court concluded that use of *minimum* quarter hour billing increments had actually resulted in inflated billing of approximately 20% ("the district court expressly correlated its reduction for quarter hour billing to Kantor & Kantor's actual over-billing").

Such a conclusion is mathematically impossible in this case. Here, a review of Mrs. Morgan's Exhibit A shows that less than 3% of the time incurred on Morgans' behalf in this action (less than 50 hours) was on days or for items for which only one quarter-hour was billed. Chicago Title (at 9-10) is able to specify only find six specific quarter-hours charges – involving a total of only 1 ½ billed hours – which it specifies as allegedly being for less than 15 actual minutes.

---

[3] Chicago Title has not attached a copy of *Clark v. Universal Debt Solutions*, as required for citations of unreported decisions available only on Westlaw (FRAP Rule 32.1(b), so Mrs. Morgan cannot comment on that case. Her counsel is not a Westlaw subscriber.

V.    ALL OF MRS. MORGAN'S REQUESTED FEES WERE
      REASONABLY INCURRED.

Applying the standards set forth in *Sharp*, together with the Hawaii Supreme

Court's subsequently-created *Sentinel-Arenson* rule that fees are recoverable as

long as the prevailing party's contentions were debatable and not in bad faith, it is

clear that Mrs. Morgan is entitled to all of the fees she is requesting.

Many applicable factors are undisputed: (1) Chicago Title mounted an

extraordinarily extensive defense to Morgans' claims, requiring a huge amount of

work in reply; (2) both Judge Gillmor and Magistrate Judge Kurren entered

erroneous rulings requiring post-judgment motions and appeals to the Ninth Circuit

before Mrs. Morgan was able to recover anything (no duty to defend, no right to

recover the value of consideration surrendered in settlement); (3) the Court and

Chicago Title certainly treated the questions presented as novel; (4) the questions

presented were difficult enough to require appeals, and many of them are still

being debated; (5) the fees in this action are contingent[4]; and (6) the Morgans are

one-situation clients of their counsel as distinguished from regular and consistent

clients.

The amounts involved in this controversy are substantial, in excess of

$1,000,000. Mrs. Morgan is entitled to recover (1) over $200,000 of fees and costs

incurred in defending Morgans' mortgage and/or in mitigating Morgans' damages

resulting from Chicago Title's breach of its duty to defend plus a decade of 10%

pre-judgment interest ; (2) the $295,877.20 value of the deficiency claim Morgans'

surrendered in order to settle with Dimiceli plus a decade of 10% prejudgment

interest; (3) the value of the $30,096.64 judgment Morgans surrendered to settle

with Dimiceli plus pre-judgment interest; (4) a multiplier to cover their resultant

tax losses; and (5) Morgans' fees and costs incurred in this case.

With such large amounts at stake, and given the extraordinary defense

mounted by Chicago Title, it was essential that Morgans carefully present and

meticulously document every element of their claims, including ascertainment of

the applicable law and carefully following it.

### B. Mrs. Morgan Is Entitled To Recover All Disputed Fees Incurred In Phase Two of This Case, From Its Inception Through the First Appeal.

During the first phase of this action, the Morgans established that Chicago

Title breached its duty to defend them in the underlying Kauai Circuit Court

action, and therefore is liable for failing to provide promised benefits.[5]

But that was only after Judge Gillmor, who disagreed that there was a duty

to defend and disputed much of Morgans' legal analysis, erroneously forced the

filing of a Second Amended Complaint, erroneously entered summary judgment

against them, and erroneously denied reconsideration of the summary judgment.

---

[4] CT Exhibit 15.

[5] It was undisputed that Chicago Title did not defend.

The resultant appeal raised hotly debated questions of both notice and coverage.

Chicago Title now specifies and argues that several items during this phase were "unnecessary": preparation of the original complaint (later voluntarily amended to meet objections);[6] a court appearance required after Chicago Title failed to take its dismissal motion off calendar despite notice that Morgans were amending; "preparation and defense" of Morgans' first amended complaint (dismissal denied except as to bad faith/punitive damages); responding to a motion to compel (sanctions not awarded); moving to disqualify Chicago Title's counsel (who had served as claims examiner and therefore was a prospective witness); and moving for reconsideration, alteration, and amendment of the summary judgment (later reversed on appeal).   (CT Ex. 6, at 1-2)

However, Chicago Title has failed to show, or even attempt a showing, of why these items were "unnecessary" or, more importantly under *Sentinel-Arenson*, that any of them were not debatable or were in bad faith.  Without a complaint, this action would never have proceeded.  If Chicago Title hadn't filed a meritless summary judgment motion, there would have been no need to seek reconsideration, alteration, or amendment of the *erroneously-entered* summary

---

[6] Contrary to Chicago Title (at 13), no one "agreed" that the original complaint was "deficient," it was not "defended," and it did not cost "$2,000" to prepare.

judgment.

Chicago Title (at 12) especially faults the Morgans for seeking

reconsideration in 2002 after Judge Gillmor granted summary judgment.

However, the Morgans' points were correct, as the Ninth Circuit later held, and

there would have been no need for the first appeal if that motion had been granted.

arguments were correct, and the Ninth Circuit

B.  Mrs. Morgan Is Entitled To Recover All Disputed Fees Incurred In Phase
Two of This Case, After The First Remand Through the Resolution of Post-Trial
Motions.

After the first remand, it was time for Morgans to prove the benefits they

lost after Chicago Title breached its duty to defend.

Fees and Costs Incurred In the Underlying Action:  The Morgans presented

this Court with a seemingly airtight case for their Circuit Court fees and costs, in

two different ways.

First, the Hawaii state judge had already determined that Morgans had

actually and reasonably incurred not less than $131,941.30 of fees in the Circuit

Court action, based upon the state court's own review of the state court record, the

sworn declaration of Morgans' counsel, and Morgans' detailed task-by-task

breakdown of their fees presented as an exhibit in the Circuit Court.

---

Morgans' counsel agreed to amend their $812.50 complaint to save the cost of
arguing about it.  See Chicago Title's own Ex. 5, top entry.

That determination was (and is) binding in this action.  Under *Sentinel,*

*supra*, 76 Hawaii at 296, an insurance carrier in breach of its duty to defend is

"collaterally estopped from re-litigating material factual findings actually or

implicitly adjudicated in the underlying suit," even though the carrier was not a

party thereto, in subsequent litigation with its policyholders.[7]  Id.

Consequently, to prove that Chicago Title owed at least that $131,940.30 to

them, the Morgans' case at trial included the state court's judgment and other

orders showing the Circuit Court's determination, the detailed task-by-task

breakdown of its Circuit Court fees utilized by the Circuit Court judge, and the

authenticating declaration.[8]

Second, to prove their entitlement to the additional Circuit Court fees they

were requesting, the Morgans presented the same task-by-task breakdown (which

included fees above $131,941.30), plus all of their invoices for fees and costs in the

Circuit Court action, the Circuit Court record showing what had occurred there,

and the duly-admitted stipulated testimony of two of their Circuit Court attorneys.

(See Trial Exhibits 141 [subexhibits], 212-214; stipulated Sulla and Cuatto

---

[7] Under Migra v. Warren City School District Board of Education, 465 U.S. 75, 80-
85, 102 S.Ct. 892, 896-898, 79 L.Ed.2d. 56, 61-64 (1984), and its progeny, this
Court is required to follow Hawaii collateral estoppel law.

[8] See Proposed Findings, filed June 20, 2005, at 85-86, detailing the calculation
and the exhibits supporting it; Proposed Conclusions, filed June 20, 2005, at 103-
104, again detailing the same; Trial Exhibits 141, 146 and 147.

testimony)

Morgan's third and principal attorney was fully prepared at trial, as soon as Chicago Title called him as a witness, to fully explain the reasonableness of each and every fee item Chicago Title was disputing, and to defend that testimony. (See Mrs. Morgan's Exhibit A, at 27, entries for 5-17-05 and 5-18-05)

The attorney's testimony was anticipated at that point because of the Court's previous indication, in denying summary judgment, that it would apply California law in the absence of Hawaii law on burdens of proof after carriers have breached their duty to defend. Under *Aerojet-General Corp. v. Transport Indemnity Co.,* 17 Cal.4th 38, 64, 948 P.2d 909, 925 (Cal. 1997), it is insurance carriers in breach of their duty to defend which have "the burden of proof" that their policyholders' fees and costs "are in fact . . . unnecessary."

Third, because Chicago Title had attempted to create a phony non-existent "allocation" issue,[9] Morgans' Circuit Court counsel was prepared to testify when called by Chicago Title on that issue as well. (See Mrs. Morgan's Exhibit A, at 27, entries for 5-17-05 and 5-18-05)

California law holds that insurance carriers in breach of their duty to defend, rather than their policyholders, have the burden of proving that policyholders' reasonably incurred fees and costs are allocable to uncovered matters. The Upper

Deck Co., LLC v. Federal Insurance Co., 358 F.3d 608, 612 (9th Cir. 2004) ("Once

it has been established that there is a duty to defend, '*the insurer* becomes

obligated to defend against all of the claims in the lawsuit, both covered and

uncovered, until *the insurer* produces undeniable evidence supporting the

allocation of a specific portion of the defense costs to a non-covered claim."); Buss

v. Superior Court, 47 Cal.App.4[th] 679, 50 Cal.Rptr. 447, 456-457 (Cal.App. 1996)

(the insurer's burden of proving by "undeniable evidence" the existence of

uncovered matters, and that fee, cost or expense items are solely allocable to them,

is equivalent to the burden faced by a movant for summary judgment), *aff'd*, 16

Cal.4[th] 38, 939 P.2d 766 (Cal. 1997).

There was no issue as to allocation anyway. Chicago Title objected to

Circuit Court fees the Morgans incurred in seeking the amounts owed to them from

Dimiceli and others, but such fees are recoverable because they were incurred in

mitigating Morgans' losses from Chicago Title's failure to provide promised

benefits. *Zanakis-Pico v. Cutter Dodge Co.,* 98 Haw. 309, 321, 47 P.3d 1222,

1234 (2002) (citing New York law)(mitigating parties *can* recover "costs incurred

in making reasonable efforts to mitigate damages"); *Baker v. Dorfman*, 239 F.3d

415, 427 (2d Cir. 2000) (applying New York law; awarding fees incurred in an

unsuccessful appeal undertaken to mitigate damages from an attorneys'

---

[9] The Ninth Circuit did not affirm this Court on allocation questions.

malpractice); *Gordon & Co. v. Ross*, 84 F.3d 542, 546-547 (2d Cir. 1996)

(applying New York law; "proper efforts" to mitigate damages include bringing

legal proceedings, hiring detectives, and paying ransoms; an "injured party who

makes a successful effort to avoid or reduce damages will be entitled to recover the

expenses necessarily incurred in so doing, but also ... will be entitled to recover

the expenses of a proper effort even though it proves unsuccessful").

<u>The Value of the Consideration Yielded in Settlement</u>.  Mrs. Morgan has

largely prevailed on Morgans' claim for the value of the judgment surrendered in

settlement.

In addition, at trial, the Morgans presented a seemingly airtight claim for the

$295,877.20 value of their surrendered deficiency claim against Dimiceli.

The Circuit Court established the amount of the $295,877.20 deficiency by

awarding that amount, as the amount still owed under his note (the one secured by

the insured mortgage), against Kerr, the promisor.  Under *Sentinel*, as already

shown, an insurance carrier in breach of its duty to defend is "collaterally estopped

from re-litigating material factual findings" – such as the amount of the deficiency

– which were "actually or implicitly adjudicated in the underlying suit," even

though the carrier was not a party thereto. *Id.*

Consequently, Morgans' entered the deficiency judgment into the trial

record (Trial Exhibit 147), as well as the Circuit Court filings upon which it was

based.

The Circuit Court had denied the Morgans a similar judgment. Accordingly, the Morgans also entered into the trial record all documents which would have been included in the record of their state court appeal, to show that the state appellate court should have reversed and entered a judgment for the same amount against Dimiceli.

Showing that an appeal should have been successful, based upon a review of the record in the state trial court, is a common way of showing the value of a lost or surrendered appellate claim. See, e.g., <u>Daugert v. Pappas</u>, 104 Wash.2d 254, 704 P.2d 600, 603-604 (Wash. 1985).

Use of a "should" or "reasonable appellate court" standard in conducting such evaluations eliminates speculation over individualized factors. See <u>Mattco Forge, Inc. v Arthur Young & Co.</u>, 52 Cal. App.4th 820, 840, 60 Cal.Rptr.2d 780, 793 (1997).

<u>Reasonableness of Morgans' Fees During This Phase</u>. Chicago Title contends that, during this phase, it was "unnecessary" for Morgans to seek reconsideration of the Court's pretrial partial summary judgment motion; move for post-remand discovery; successfully move for an amended judgment, findings, and conclusions (after judgment was mistakenly entered for Chicago Title); move for relief from the judgment and to alter and amend it (the Ninth Circuit later vacated

it); straighten out jurisdictional problems (the Ninth Circuit responded by entering an order fixing them); and move to alter and amend the fee and cost order (the amount awarded was increased).  (CT Ex. 6, at 2-3)

However, here again, Chicago Title has failed to show, or even attempt a showing, of why any of these items were "unnecessary" or, more importantly under *Sentinel-Arenson*, that any of them were not debatable or were in bad faith. Morgans prevailed on most of them.  If the judgment for Chicago Title hadn't been set aside, Chicago Title would be seeking fees from the Morgans!

Chicago Title faults (at 12) Morgans' counsel for preparing to defend his own testimony on the reasonableness of his fees and allocation.  However, those were clearly key issues in Chicago Title's view, Chicago Title had named Morgans' counsel as a witness, and it was reasonable for him to prepare to defend his testimony.

Chicago Title also disputes the preparation of Morgans' findings and conclusions (at 12).  However, this was a case based largely upon documents, and Morgans' counsel was denied an opening statement, so Morgans' findings and conclusions were their only opportunity to brief the issues after the exhibits were agreed upon – to brief the "appeal-within-a-trial" and other key points.

Additional research was obviously appropriate, and did not result in

"duplication," because the Court had already granted Chicago Title's motion for

judgment.

C.  Mrs. Morgan Is Entitled To Recover All Disputed Fees Incurred In Phase
Three of This Case, After The Second Remand To The Present.

Here Chicago Title's only objection is to Mrs. Morgan's successful motion

to increase the amount of the current judgment, as "unnecessary."  (CT Ex. 6, at 3)

But there is no attempt to show that the motion was not debatable or in good faith –

it was partially successful.  Nor is there any attempt to show why it was

"unnecessary."

VI.    MRS. MORGAN IS NOT SEEKING FEES FOR
       INAPPROPRIATE "SECRETARIAL DUTIES," ETC.

A review of Chicago Title's Exhibit 13 shows nothing which a competent

attorney, conscious of his/her professional responsibilities to the courts and the

attorney's clients, should be required to delegate to available staffers.  Moreover,

Mrs. Morgan's counsel is a sole practitioner with no staff except when specially

hired for a particular case.[10]  He has no "employees with lower billing rates."

Insuring compliance with Court deadlines, making, receiving and

responding to telephone calls from court personnel, reviewing and inspecting client

documents to insure that everything appropriate is being produced and nothing

inappropriate is being revealed in a document production, interfacing with process servers, filing documents when already at the courthouse, writing letters to opposing counsel, reviewing letters from opposing counsel, preparing engagement letters, reviewing and executing stipulations to be filed with the court (attorneys must sign stipulations), following up when experts haven't been paid, drafting appellate brief covers to conform with the appellate rules, preparing stipulations, gathering information from law firms for fee applications, discussing authentication requirements with clients, analyzing documents to determine which ones are needed as trial exhibits, receiving calls to him from opposing counsel's staff, preparing motions!, preparing reply memos!, preparing motions to alter and amend!, and arranging their filing by messengers and others, are all appropriate tasks for attorneys.

### VII. THE CONTINGENT NATURE OF COUNSEL'S RETENTION, AND THE MORGANS' INABILTY TO AFFORD THE FEES THEY INCURRED IN THE KAUAI COURT, ARE FACTORS INDICATING THAT THE FEE AWARD HEREIN SHOULD BE HIGHER – NOT LOWER.

*See Sharp, supra; Welch, supra*; compare Chicago Title's memo at 15. As a matter of public policy and professional responsibility, attorneys are supposed to devote time to clients who cannot afford appropriate representation.

DATED: Honolulu, Hawaii, March 7, 2008.

---

[10] Mrs. Morgan's counsel saves his clients unnecessary overhead expenses by retaining secretaries and paralegals only when needed.

STEVEN B. JACOBSON
Attorneys at Law
A Limited Liability Law Company


STEVEN B. JACOBSON

Undersigned counsel hereby certifies that his word processing system shows the foregoing memorandum to contain 4,431 words, and thus complies with LR 7.5(e).

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ALICE H. MORGAN, Trustees of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>        Plaintiff,<br><br>   v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>        Defendant. | CIVIL NO. 00-00145 BMK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served on this date by first-class United States Mail upon the following:

NEIL F. HULBERT, ESQ.
Alston Hunt Floyd & Ing
1001 Bishop Street, 18th Floor, ASB Tower
Honolulu, Hawai'i 96813

Attorneys for Defendant

DATED: Honolulu, Hawaii, March 7, 2008.

STEVEN B. JACOBSON
Attorneys at Law
A Limited Liability Law Company

STEVEN B. JACOBSON

1