IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>       Plaintiff,<br><br>  vs.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>       Defendant. | Civ. No. 00-00145 BMK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Before the Court is a motion for attorney's fees filed by Plaintiff Alice H. Morgan ("Morgan"), who seeks to recover some $383,523.80 from Defendant Chicago Title ("Chicago Title"). After careful consideration of the motion, the supporting and opposing memoranda, and the lengthy history of this case, Morgan's motion is hereby GRANTED IN PART and DENIED IN PART.

PROCEDURAL HISTORY

The present motion for attorney's fees comes at the end of seven years of litigation between Morgan and Chicago Title, arising out of a title insurance policy that Chicago Title sold to Morgan and her late husband in 1992. The policy

insured title to a property owned by Edgar J. Kerr ("Kerr"), which Kerr had mortgaged to the Morgans. After Kerr defaulted on his mortgage, the Morgans filed suit against Kerr and the subsequent purchaser of the property, Rosetta Dimiceli ("Dimiceli"). In opposing the Morgans' action in state court, Dimiceli raised defenses challenging Kerr's title to the property, as well as the Morgans' claim to that title. Chicago Title did not defend the title, or pay for the expenses the Morgans incurred in defending it.

Accordingly, in 2000, the Morgans filed this action against Chicago Title's seeking damages from Chicago Title's failure to defend their insured title. Specifically, Morgan sought damages of approximately $1,515,000, comprising a claim of about $200,000 for the fees they incurred in the foreclosure action, $285,000 for a judgment that the state courts failed to enter, $30,000 for a judgment they obtained against Dimiceli, but then surrendered in settlement with her, and $1,000,000 in punitive damages.

Chicago Title initially prevailed on a motion for summary judgment filed in 2002, but Morgan appealed to the Ninth Circuit Court of Appeals, which reversed the summary judgment ruling and remanded the case to this Court. In May, 2005, a bench trial was held to determine the amount of damages that Morgan incurred, if any. At the close of Morgan's case, the Court granted Chicago

Title's motion for judgment as a matter of law after Morgan failed to provide sufficient evidence of damages. Morgan once again appealed to the Ninth Circuit.

In April, 2007, the Ninth Circuit affirmed the Court's decisions on the majority of the issues that Morgan appealed, but remanded three aspects of the case for the Court's consideration. First, the Ninth Circuit ordered this Court to "consider whether the Morgans established that [their surrender of the Dimiceli judgment in settlement] was reasonable and in good faith, such that it 'may then be utilized as presumptive evidence of the breaching insurer's liability.'" (Remand Order 2.) Second, it directed the Court to "determine whether under the law of Hawaii and facts of this case, the Morgans are entitled to recover tax losses caused by Chicago Title's breach of contract." (Remand Order 4.) Finally, the Court was instructed to "consider Morgans' entitlement to attorneys' fees under Haw. Rev. Stat. § 607-14 (2006) and Haw. Rev. Stat. § 431:10-242 (2006)." (Remand Order 5.)

After further briefing on the matter, the Court ruled that Morgan was entitled to the face value of the Dimiceli judgment, which was $30,096.64, plus an additional $1,154.39 in post-judgment interest, which ran until the judgment was surrendered, plus $24,178.61 in pre-judgment interest that accrued from the date the case was filed until the entry of judgment, for a total of $55,429.64. The Court

3

also ruled that Morgan had not suffered any adverse tax consequences, and invited Morgan to file her motion for attorney's fees in the normal course. It is that motion is now before the Court.

## RELEVANT LAW

A policyholder or beneficiary of an insurance policy is entitled to an award of reasonable attorney's fees where an insurer who has contested liability under a policy "is ordered by the courts to pay benefits under the policy." Haw. Rev. Stat. § 431:10-242. In determining what constitutes "reasonable attorney's fees" under Hawaii's fee shifting statutes, "the trial court must engage in a Hensley analysis in order to determine whether it is reasonable to award attorney's fees for the entire time [p]laintiff's counsel spent on the case." Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 89 (Haw. 2001).

The Hensley analysis requires an initial "lodestar" determination, calculated by multiplying the appropriate hourly rates by the number of hours reasonably expended on the litigation. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Hours that are "excessive, redundant, or otherwise unnecessary" are not reasonable. Hensley, 461 U.S. at 434. Where the hours expended are not properly documented, courts may also reduce the award accordingly. Id. at 433.

After the lodestar amount is calculated, courts must further reduce the

fee award to properly reflect the plaintiff's level of success in the case. Hensley, 461 U.S. at 435-436. In determining the plaintiff's level of success, the court must first determine "whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995). Claims are related where they "involve a common core of facts" or where they are "based on related legal theories." Hensley, 461 U.S. at 434-35. Claims are not related, however, where they are "distinctly different claims for relief that are based on different facts and legal theories." Id.

Where the successful and unsuccessful claims are not related, then the fee award "may not include time expended on the unsuccessful claims." Schwarz, 73 F.3d at 901. If the successful and unsuccessful claims are related, however, then the court must next evaluate "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. (quoting Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986)). If the plaintiff did not obtain "excellent results" overall, then the plaintiff may not be compensated for the time spent on the related, but unsuccessful, claims. Id.

The trial court has "a great deal of discretion" in reducing a prevailing party's fees for lack of overall success. See <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1398 (9th Cir. 1992). However, the court must "give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded." <u>Id.</u> Where the fee records are voluminous, "the district court is not required to set forth an hour-by-hour analysis of the fee request." <u>Id.</u> at 1399. The district court may employ percentage reductions of attorney's fees awards, as long as the court "set[s] forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction." <u>Id.</u> at 1400; <u>see e.g.</u> <u>Harris v. Marhoefer</u>, 24 F.3d 16, 18 (9th Cir. 1994) (affirming a general 50% reduction in the lodestar amount for lack of success based on "the number of claims dismissed or decided in defendant's favor" where a plaintiff originally seeking $5 million total from six defendants recovered only $25,000 from one defendant).

DISCUSSION

I. PLAINTIFF'S ELIGIBILITY FOR ATTORNEY'S FEES

Morgan seeks attorney's fees under Haw. Rev. Stat. 431:10-242, which provides that a policyholder or beneficiary of an insurance policy is entitled to an award of reasonable attorney's fees where an insurer (1) "has contested liability under a policy," and (2) "is ordered by the courts to pay benefits under the

policy." Haw. Rev. Stat. § 431:10-242. Chicago Title contends that it has not been ordered to pay "benefits under the policy," but rather has merely been ordered to pay consequential damages that flowed from its breach of the duty to defend.[1] Chicago Title argues that these consequential damages are not considered "benefits" under § 431:10-242, and points the Court to <u>Mikelsen v. United Services Automobile Ass'n</u>, 120 P.3d 257 (Haw. 2005) (denying a request for attorney's fees where the trial court found that the plaintiff was "entitled to UIM coverage" but did not order the insurer to pay benefits).

        Chicago Title's argument rests on the proposition that its duty to defend is not, in itself, a "benefit." It argues that the only "benefits" that it may be ordered to pay by the Court are the four "Options to Pay or Otherwise Settle Claims" set forth in paragraph 6 of the Policy. Chicago Title argues that these Options to Pay correspond only to the nine types of loss or damage insured by the policy. Because Morgan did not suffer one of these nine types of loss or damage, Chicago Title argues, she has never been eligible for any benefits under the policy, and the Court could not have ordered Chicago Title to pay benefits to the Morgan.

---

[1] Chicago Title also hints that the first criteria may also not be satisfied, since it "has not contested liability for the claimed consequential damages for nearly five years." (Mem. Opp. 2 (emphasis removed).) Just because it has not contested liability for any particular period of time does not mean Chicago Title has not contested liability, however. In fact, Chicago Title did contest liability, quite vigorously, up until the first remand from the Ninth Circuit.

Chicago Title's reading of the policy, however, fails to find a place for its bargained-for obligation to "pay the costs, attorney's fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured . . . ." (Mem. Opp., Ex. 2.) Chicago Title was no less obligated to provide this service to Morgan that it was obligated to pay for any losses she incurred if her title were ultimately defective; it too is a benefit of the policy.

Because it was no longer in a position to provide Morgan with this benefit, however, Chicago was ordered to reimburse her for the expenses she was able to prove that she incurred in defending the title herself, namely, the Dimiceli judgment. This replacement value of the benefit is no different than the benefit itself. Morgan is entitled to her reasonable attorney's fees under Haw. Rev. Stat. § 431:10-242.

II. AMOUNT OF FEES TO WHICH PLAINTIFF IS ENTITLED

A. Hours Reasonably Expended

The first step is to determine the hours that Morgan reasonably expended on this litigation. Morgan requests reimbursement for a total of 1469.75 hours spent by her principal attorney, Mr. Jacobson, 8 hours spent by Ms. Palmero, a paralegal, and 5.5 hours spent by Ms. Oshiro-Pacheco, another paralegal. The Court will reduce these hours to account for (1) work that was not necessary to the

case, and (2) the overbilling that likely resulted from Morgan's counsel's practice of billing in quarter-hour increments.

1. Unnecessary and Irrelevant Work

The Court finds that Morgan's counsel spent an unreasonable number of hours on this case after it was remanded by the Ninth Circuit for the second time. Specifically, Morgan spent 24.5 hours preparing and filing her opening memo and reply memo, 31.5 hours preparing and filing a motion to alter and amend, 5.75 hours preparing and filing her motion for attorney's fees, and an additional 29.25 hours on research and related case administration.[2] This comes to a total of 91 hours that Morgan spent litigating the narrow issues of (1) whether the Dimiceli judgment was made in good faith, and (2) the amount of interest, tax-related damages, and attorney's fees to which Morgan was entitled as a result of surrendering that judgment.

Much of these 91 hours appear to have been spent on work that was unnecessary, and not relevant to the issues before the Court. In her motion to alter and amend, for example, Morgan spent just four pages of her memorandum in support requesting the Court's reconsideration of the manner in which it calculated

---

[2] These numbers are derived from Morgan's Case Development entries from May 15, 2007 through December 7, 2007 (Mem. Supp., Ex. A, at 8-9) and her Post Trial Motions and Memoranda entries from May 12, 2007 through January 18, 2008 (Mem. Supp., Ex. A, at 34-35).

the interest to which Morgan is entitled, and two pages requesting reconsideration of the Court's rejection of her tax offset theory. The remaining fourteen pages of her memorandum exclusively addressed issues that Morgan had already unsuccessfully raised before the Ninth Circuit Court of Appeals and which this Court was precluded from addressing, namely, the merits of her other damages claims.

Similarly, Morgan's ten page reply memorandum in support of her motion to alter and amend was entirely unresponsive to Chicago Title's opposition, and contained several remarks that bordered on the unprofessional.[3] Even now, in her reply memorandum on her motion for attorney's fees, Morgan once again returns to the merits of the already-decided issue of her "seemingly airtight claim for the $295,877.20 value of [her] surrendered deficiency claim" that she presented during the 2005 bench trial. (Reply 18.)

While some of the arguments Morgan made after the Ninth Circuit's second remand were quite reasonable, others were decidedly not reasonable.

---

[3]See, for example, page nine of Morgan's reply memorandum, claiming that Chicago Title "was able to pull the wool over the Court's eyes by diverting its attention from the $131,000+ collateral estoppel-fee and $295,000+ value-of-surrendered claim – so that the Court never or never properly considered them – and it is somehow too late to do anything about it. So ha ha ha, it must be rewarded for its sleight of hand by getting to keep more than $400,000 that it owes the widow Morgan. That is not justice, and it is not an acceptable result in a court of law in the United States of America."

Morgan could have achieved the judgment she ultimately obtained in this case with a far smaller expenditure of time and money.[4]  Accordingly, the Court will award Morgan fees for only 50 hours of the 91 hours that she spent on this case after the Ninth Circuit's second remand.  This reduction reflects the Court's best estimate of the amount of time that Morgan's counsel spent researching and preparing arguments that had no relevance to the current proceedings, and for which Morgan will not be awarded any fees.

        Chicago Title contends that in addition to the excessive amount of time that Morgan spent on this case after its second remand, Morgan also spent an excessive amount of time on other aspects of the case as well.  In particular, Chicago Title points to the 140 hours that Morgan has billed for "drafting and preparing proposed findings of facts and conclusions of law which directly contradicted the ruling of this Court at trial in 2005"; the 30.25 hours that Morgan billed "for research related to the proposed findings of facts and conclusions of law"; the 8 hours that Morgan billed "for drafting and defending Plaintiff's initial pleading which was voluntarily dismissed and amended"; the 28 hours that Morgan billed "for drafting and defending Plaintiff's unsuccessful motion for

---

[4]This is highlighted by the fact that Chicago Title made a Rule 68 offer of judgment to Morgan in the amount of $61,169.56 on August 8, 2007, which included all costs to date. Morgan ultimately recovered just $59,682.40 (a judgment of $31,251.03, interest of 24,178.61, and costs of $4,252.76.).

11

reconsideration" denied on May 20, 2002; and the 12.5 hours that Morgan billed for preparing trial testimony, although no testimony was provided.

Morgan responds that Chicago Title's arguments on these topics violate Local Rule 54.3(f)'s requirement that a responsive motion "identify with specificity . . . each disputed time entry." Local Rule 54.3(f). In addition, Morgan contends that all of the time spent on this case was necessary, given the "large amounts at stake, and given the extraordinary defense mounted by Chicago Title." (Reply 12.) Morgan particularly points out the fact that she twice had to take her case to the Ninth Circuit Court of Appeals in order to get the relief she has ultimately obtained. The Court agrees with Morgan on this point, and finds that the amount of time Morgan spent on this case prior to the Ninth Circuit's second remand was not unreasonable, given the context. Accordingly, Morgan's time will be reduced by a total of only 41 hours for the unnecessary work that was performed after the second remand.

### 2. Billing by the Quarter Hour

Chicago Title argues that Morgan's practice of billing a minimum of a quarter-hour of time for every activity is "an excessive billing practice and unreasonable." (Mem. Opp. 9.) To illustrate the unreasonableness of this practice, Chicago Title points to several one-line and two-line emails for which a full

quarter-hour of time was billed, even though the work could not have taken more than one or two minutes. In addition, Chicago Title points the Court to Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 949 (9th Cir. 2007) (affirming a trial court's 20% across-the-board reduction of hours for billing by the quarter hour where the trial court "found the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and emails that likely took a fraction of the time").

Morgan argues that Welch is inapplicable here "because the Court was interpreting a federal statute, ERISA, rather than a Hawaii statute." (Reply Mem. 10.) However, in Welch, the reduction for quarter hour billing was made in the course of calculating the lodestar under Hensley, which is also the first step in applying Hawaii's attorney's fee statutes. See Schefke, 32 P.3d at 89. Any difference in context, therefore, is insignificant. She also contends that this practice is not prohibited by Hawaii law. She is, of course, correct. Chicago Title does not request that Morgan be awarded no fees on account of her quarter-hour billing, however, just that her fees be appropriately reduced to more closely approximate the amount of time actually spent on the case.

13

Morgan also contends that if the Court does decide to reduce her fee award because of quarter-hour billing, a 20% across-the-board reduction would be inappropriate because "less than 3% of the time incurred on Morgans' behalf . . . was on days or for items for which only one quarter-hour was billed." (Reply 10.)  While this may be the case, quarter-hour billing can also result in overbilling for large time entries where that entry aggregates work performed at different times throughout the day.[5]  After reviewing the billing records in this particular case, the Court finds that a 10% reduction in Morgan's hours is appropriate to ensure that she receives no undue benefit from her counsel's practice of quarter-hour billing.  After the reduction for unnecessary work and this 10% reduction, Morgan will be entitled to recover for 1,272.83 hours billed by Mr. Jacobson for attorney work, and 13.05 hours billed by him for paralegal work.[6]

---

[5]For example, a person who recorded time in quarter hour increments might bill 4.25 hours for work performed from 9:10-9:15, 9:45-9:56, 10:10-12:30, and 3:20-4:26, by recording .25 hours for the first 5 minutes, another .25 hours for the subsequent 11minutes, another 2.5 hours for the subsequent two hours and twenty minutes, and 1.25 hours for the final hour and six minutes.  Thus, an entry might show 4.25 hours of work for only 3.7 total hours.  While this problem is not entirely avoided by tenth-of-an-hour billing, the overbilling is much less dramatic because of the smaller time increments.  A person who worked these same hours while billing in tenth-of-an-hour increments would have billed only 3.8 hours total.

[6] (1455.25 - 41) x 90% = 1,272.83 hours.
　　14.5 hours x 90% = 13.05 hours

She will also be able to recover 7.2 hours billed by Ms. Palmero, and 4.9 hours billed by Ms. Oshiro-Pacheco.[7]

    B.  Reasonable Hourly Rate

After calculating the hours reasonably worked, the next step in determining the total fee award is to determine the reasonable hourly rate for the work performed.  Morgan seeks to recover a fee of $250/hour for the bulk of Mr. Jacobson's work in this case.  For four particular entries listing certain paralegal activities which he performed, Mr. Jacobson billed at a rate of just $75/hour.  Morgan also seeks a rate of $100/hour and $75/hour for two other paralegals that worked minimal amounts of time on this case.

Chicago Title does not dispute the reasonableness of these rates, but argues that Mr. Jacobson should bill at a lower rate for some of the secretarial and administrative work he performed.  In particular, Chicago Title contends that an associate attorney or paralegal could have performed, at a much lower hourly rate, the 238 hours billed for research, as well as for the 235 hours billed for "drafting." (Mem. Opp. 11.)  Chicago Title objects to Morgan's counsel's billing at the rate of $250 per hour for administrative and case-management activities, although the

---

[7] 8 x 90% = 7.2
5.5 x 90% = 4.95
Morgan also references a $150 flat rate bill from Western Title Insurance Company, but fails to provide any document in support of this claim, and so will not be awarded these fees.

particular disputed entries are not identified.

Morgan's counsel responds that he is not required to delegate administrative matters to others, and that in any event, he has no staff who could perform such work. Morgan is correct that he is not required to delegate such tasks to others. At the same time, however, he will not be allowed to recover at the rate of $250/hour for purely secretarial and administrative matters. Morgan appears to recognize that a lower billing rate is sometimes appropriate, as evidenced by the rate of $75/hour that he billed on the four occasions previously mentioned. In addition to these four entries, the Court has identified twenty-six other entries, totaling 16.75 hours, which appear to pertain to work that is exclusively secretarial or administrative in nature.[8] The Court will award Morgan a rate of $75/hour for these 16.75 hours.[9]

---

[8]The Court has identified the following entries from Category A as being secretarial or administrative in nature: 5/12/2000, 6/20/2000, 7/7/2000, 11/13/2000, 2/24/2001, 3/1/2001, 3/16/2001, 3/19/2001, 4/13/2001, 12/27/2001, 1/24/2002, 7/22/2002, 1/8/2003, 7/17/2003, 8/1/2003, 10/29/2003, 12/23/2003, 8/4/2004; the Court has also identified the following entries from Category H as being secretarial or administrative in nature: 8/8/2005, 8/9/2005, 8/11/2005, 8/12/2005, 11/18/2005, 8/31/2007, 10/22/2007, 1/18/2008.

[9]These 16.75 hours, once reduced by the general 10% reduction for quarter-hour billing, become 15.08 hours. This will be subtracted from Mr. Jacobson's "attorney hours" and added to his "paralegal hours."

The Court will, however, award Morgan her requested rate of $250/hour for all research and drafting charges. The skills of an attorney are required for research and drafting; while an attorney with less experience could probably have performed much of this work, the Court assumes that a less experienced attorney would have spent a far greater number of hours on this work than did Morgan's counsel. Accordingly, the rate Morgan seeks for the time her counsel spent researching and drafting is reasonable.

Morgan's final lodestar award, then, will be $317,638.50.[10] In addition, Morgan is entitled to excise tax in the amount of 4.712%. This totals **$332,605.63.**

    C. <u>Level of Success</u>

Finally, the Court is obligated to ensure that Morgan's final fee award is proportionate to her overall level of success in the case. <u>Hensley</u>, 461 U.S. at 435-36. Here, Morgan's base lodestar award of $332,605.63 is *not* proportional to the $55,429.64 that she ultimately recovered from Chicago Title. See, e.g. <u>McGinnis v. Kentucky Fried Chicken of California</u>, 51 F.3d 805, 810 (9th Cir. 1994) (reversing a district court that had failed to reduce fees to account for

---

[10] ($250/hour x (1,272.83 hours - 15.08 hours)) + ($75/hour x (13.05 hours + 15.08 hours)) + ($100/hour x 7.2 hours) + ($75/hour x 4.95 hours) = $317,638.50

plaintiff's lack of success after the $200,000 punitive damages award was overturned, because while "lawyers might reasonably spend $148,000 worth of time to win $234,000. . . . no reasonable person would pay lawyers $148,000 to win $34,000.")

Morgan presents three distinct damages claims, apart from her request for punitive damages: (1) her claim for $200,000 for the fees incurred in the foreclosure action, (2) $285,000 for a judgment that the state courts failed to enter, and (3) $30,000 for a judgment she obtained against Dimiceli, and surrendered during settlement. These three claims are related, since they "involve a common core of facts" and are "based on related legal theories," Hensley, 461 U.S. at 434-35. The Court must therefore evaluate "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. (quoting Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986)). In this instance, the significance of the overall relief obtained by Morgan is quite small, when compared to the total hours that were reasonably expended on the litigation. These are not "excellent results," and so Morgan's overall fee award must be reduced. Id.

Given the lengthy history of this case and the interrelatedness of these claims, it is impossible for the Court to determine precisely which hours were spent

on which claims. As Chicago Title notes, "it is impossible to do any reasonable analysis as to how much time was reasonably incurred in pursuing only the $30,000 Deficiency Judgment damage claim." (Mem. Opp. 16.) Accordingly, the Court must resort to less precise metrics to ensure that Morgan's attorney fee recovery is commensurate with her overall level of success in the case. One such methodology, advocated by Chicago Title, would be to calculate Morgan's ultimate recovery as a percentage of the damages she originally sought and award her that same percentage of her lodestar attorney's fees. Even leaving Morgan's request for punitive damages out of the equation, Morgan recovered only about 11% of the actual damages she sought.[11] The Court believes that this approach would undervalue the success that Morgan was able to achieve in this case.

       Instead, the Court will weight each of Morgan's three damages claims equally. Since Morgan prevailed on one of these three damages claims, she will be awarded 33% of her lodestar amount, or **$109,759.86.** The Court believes that this award appropriately reflects Morgan's level of success in this case, given the amount she actually recovered, as well as history of this case and the time reasonably spent on it.

---

[11] $55,429 / ($200,000 + $285,000 + $15,000) = .1076

## CONCLUSION

For the foregoing reasons, Morgan's motion for attorney's fees is GRANTED IN PART and DENIED IN PART. Morgan is awarded $109,759.86 in attorney's fees and related non-taxable expenses.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: March 20, 2008

Morgan v. Chicago Title; Civ. No. 00-00145 BMK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

20