IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 00-00145 BMK<br><br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

I. THERE IS NO FACTUAL BASIS FOR A 10% REDUCTION IN THE LODESTAR AMOUNT, BASED UPON PLAINTIFF'S ATTORNEY'S ROUNDING OF TIME ENTRIES TO QUARTER-HOURS.

The Court's Order (at 14) indicates a misunderstanding of the rounding-up-*or-down*-to-quarter-hours billing system used by Mrs. Morgan's counsel.

Specifically, in footnote 5 at page 14, the Order hypothesizes *sua sponte* – without any supporting evidence – that counsel's quarter-hour billing system could result in "dramatic" overbilling because it results in 5 and 11 minute entries being rounded up to .25 hour, 1 hour 6 minute entries being rounded up to 1.25 hours, and 2 hour 20 minute entries being rounded up to 2.50 hours.

~ 1 ~

That is simply not so. Said hypothetical is inaccurate because it fails to recognize that counsel's quarter-hour billing system includes rounding *down* as well as rounding *up*.

In counsel's quarter-hour billing system, 0-7 minute time expenditures are rounded down to .00 hours (unless there are no other entries for the day), 8-22 minute times are rounded up *or down* to .25 hour, 23-37 minute times are rounded up *or down* to .50 hour, 38-52 minute times are rounded up *or down* to .75 hour, 53-67 minute times are rounded up *or down* to 1.00 hour, and so on. (Declaration, para. 2)[1]

Where there is a single .25 hour entry for a given day, that .25 hour represents between 1 and 22 minutes of time actually incurred. (Declaration, para. 3)

Applying that system to the hypothetical in footnote 5, the time billed would have been 3.5 hours for 3.7 hours of time actually incurred – an *under*billing of .2 hour, in the Order's terminology (.0+.25+2.25+1.00), rather than an overbilling of .55 hour.

Those being the facts, there is no factual justification for *any* reduction – let

---

[1] See also Reply Memorandum re fees, filed March 7, 2008 (at 9):
"Mathematically, quarter hour billing increments theoretically benefit clients when they result in rounding down (16-22 minutes of work rounded down to 15 minutes, 31-37 minutes rounded down to 30, etc.), just as they theoretically benefit

alone a 10% reduction – in any of counsel's entries over .25/hour. Counsel's rounding-down-as-well-as-up billing system effectively "balances out" for daily entries over .25/hour.

Because .25/hour entries for a day may represent 1 minute, or 22 minutes, there is no basis for a significant reduction based upon the .25/hour entries, either.

Assuming that an average .25/hour entry represents 11.5 minutes of actual work (the median between 1 minute and 22 minutes),[2] counsel's .25/hour entries would be only – in the Court's parlance – 23.33% "overbilled" (3.5 minutes/15 minutes).

Because less than 3% of counsel's billed time herein is on days with .25/hour entries, the maximum "overbilling" is no more than 0.7% (23.33% of less than 3%) of counsel's total amount billed.

II.   THE REDUCTION OF ATTORNEY HOURS INCURRED DURING THE CURRENT REMAND IS BASED UPON A FUNDAMENTAL MISUNDERSTANDING OF BASIC NINTH CIRCUIT "LAW OF THE CASE" LAW.

In the Ninth Circuit, the question of whether a trial judge should follow the "law of the case" set forth in a Ninth Circuit panel decision, on any remand, is "discretionary." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir.

---

attorneys when rounded up (1-14 minutes rounded up to 15, 23-29 minutes rounded up to 30, etc.)."

[2] Notably, Chicago Title can cite only six .25/hour entries seemingly representing just 1-2 minutes of work time.

2000).

It is an *abuse* of discretion for a trial judge to *follow* a Ninth Circuit panel decision, if [(1)] "the panel's decision … was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was clearly different; (4) other changed circumstances exist; *or* (5) a manifest injustice would otherwise result." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005).

Thus, it is simply wrong to say that this Court was "precluded from addressing" any of the issues Mrs. Morgan presented to this Court on remand – that it was therefore "unreasonable" for Mrs. Morgan to have even raised them, and that Mrs. Morgan's fee award should be reduced as a result. (See Order, at 9-11)

Given *Lummi* and *Ingle*, it was eminently "reasonable" for Mrs. Morgan to raise all such issues before this Court, including those which involve facts or law this Court and/or the Ninth Circuit either overlooked or misunderstood, and for Mrs. Morgan to argue that they resulted in erroneous and/or unjust results.[3]

---

[3] How, for example, can Mrs. Morgan justly or properly be denied recovery of *any* of the Morgans' fees incurred in defending the validity of their Chicago Title-insured mortgage, even though they presented duly-admitted trial exhibits showing that the Hawaii state court already determined that they actually and reasonably incurred not less than $131,941.30 of fees in the state court action, even though Morgans' duly-admitted trial exhibits also included Morgans' detailed task-by-task breakdown of the fees they incurred there, even though the Hawaii Supreme Court's *Sentinel* decision requires this Court to give collateral estoppel

In raising those issues, Mrs. Morgan was simply asking this Court to exercise its discretion, under *Lummi* and *Ingle*, to depart from the law of the case in order to cure clear error and/or manifest injustice. Mrs. Morgan has the right to argue her best case, and to ask this Court to exercise its duly-established remedial powers!

Indeed, if Mrs. Morgan hadn't raised those issues during the current remand, Chicago Title would doubtlessly and endlessly scream – in its own upcoming appeal and Mrs. Morgan's upcoming appeal – that Mrs. Morgan waived those issues by "failing" to raise them before this Court on remand.

*Minidoka Irrigation District v. Department of Interior*, 406 F.3d 567, 573 (9th Cir. 2005), is an example of what is supposed to be done where a previous ruling is questioned as erroneous or unjust: there the Ninth Circuit dealt with *the merits* of whether a prior panel ruling was erroneous, after citing the "clearly erroneous" rule.

On the "preclusion" question, Mrs. Morgan would only add that *Lummi* and *Ingle* are fully consistent with other aspects of "law of the case" law. See, *e.g.*, *Christensen v. Colt Industries Operating Co.*, 486 U.S. 800, 817, 108 S.Ct. 2166,

---

effect to the Hawaii state court's determination, and even though the U.S. Supreme Court's *Migra* decision requires that the federal courts follow Hawaii collateral estoppel law in diversity cases (460 U.S. at 80-85, 102 S.Ct. at 896-898) – points which neither this Court nor the Ninth Circuit have ever addressed?

2178, 100 L.Ed.2d 811, 831 (1988) (appellate courts need not follow their own prior rulings in a case if clearly erroneous, or if they create manifest injustice); *Minidoka, supra* (same).

The Seventh Circuit has an analogous rule. See *Donohue v. Consolidated Operating and Production Co.*, 30 F.3d 907, 910-911 (7th Cir. 1994) ("A District Court that disagrees with an appeals' court's decision … and wants to invoke the clearly erroneous exception to the law of the case doctrine … should … signal its disagreement but carry out the mandate."). *Donohue* was answering the question of what a district court should do where in responding to an allegation that a party "succeeded in 'misleading our court of appeals into a clearly erroneous ruling.'" *Id.*, 30 F.3d at 811.

No circuit has a "code of silence" requiring that trial courts pass over contentions that prior rulings were erroneous and/or created an injustice.

III. <u>THE COURT'S IMPLICIT RULING, THAT HRS § 431:10-242 LIMITS FEE RECOVERIES THEREUNDER TO THOSE FEES INCURRED IN PURSUING ELEMENTS OF BENEFITS THAT AN INSURANCE POLICYHOLDER IS ABLE TO RECOVER, IS INCORRECT.</u>

The Order's discussion and analysis of the applicable facts and law overlooks three key points. In reality, all of Mrs. Morgan's fees should have been awarded, because all of them were incurred in pursuing matters which were, at minimum, reasonably debatable. The three points are:

<u>First</u>, Mrs. Morgan has a single claim for benefits owed under the policy, not

multiple "claims." Within that single claim she requested different elements of damage, as the Court notes (at 18), but those requests were part and parcel of the *same* claim – specifically, the first claim for relief in the Morgan's complaints.

Those requests were based upon a common legal theory – that having breached its duty to defend, Chicago Title owes the Morgans the fees they incurred and the value they surrendered in settling the state court case, under *Sentinel* and the terms and conditions of their policy. Those requests are not "distinctly different claims." (Compare Order, at 5)

Consequently, Mrs. Morgan's claim should be treated as a single claim for purposes of assessing fees.

Second, Hawaii state law, as set forth in *Schefke v. Reliable Collection Agency, Ltd.*, 32 P.2d 52 (Haw. 2001), does *not* provide that fees are recoverable under HRS § 431:10-242 only if incurred in pursuing a particular request for relief that has been successful.

*Schefke's* holding that fees are to be awarded only on claims upon which a party prevails applies only to claims under the fee statutes involved in *Schefke*. *Id.*, 32 P.3d at 88 & n.77. *Schefke* carefully distinguished those particularly limited fee statutes from those, like HRS § 431:10-242 and many federal fee statutes, which merely require that a party have "prevailed" in an action or the like. *Id.*

Under HRS § 431:10-242, attorney's fees are recoverable wherever an

insurer "has contested its liability under a policy and is ordered by the courts to pay benefits under the policy." Consequently, assuming *Schefke* otherwise applies, that particular part of *Schefke* does not.

*Schefke* does not re-write any statutes.

Third, the Order's concern with "lack of success" overlooks *Sentinel*, 875 P.2d at 913, where the Hawaii Supreme Court approvingly cited *Arenson v. National Auto and Casualty Co.*, 48 Cal.2d 528, 310 P.2d 961 (1957), as an example to be followed in determining the reasonableness of attorneys' fees.

In *Arenson*, the California Supreme Court held that "reasonably incurred" (968) fees included amounts incurred in pursuing an unsuccessful constitutional challenge to a tort claim seeking a $274.18 recovery, in the absence of a "showing that such issues were not debatable or were not advanced in good faith" (967). *Arenson*, 310 P.2d at 967-968.

IV. UNDER SCHEFKE, THE LOADSTAR SHOULD BE INCREASED BECAUSE OF THE CONTINGENT NATURE OF MRS. MORGAN'S COUNSEL'S REPRESENTATION AND OTHER FACTORS.

Chicago Title's previous opposition has already admitted (at 15) that Mrs. Morgan's counsel represents her on a contingency basis, would be paid nothing for his many years of representation absent Mrs. Morgan prevailing, and has not been paid since the outset of this action several years ago.

Accordingly, if *Schefke* rather than *Sentinel* applies, all three elements for an increase in a *Schefke* loadstar, based upon the contingency, are admittedly present in this action and require an increase in the lodestar – *i.e.,* a contingency, its not being hedged, plus other factors. *Id.,* at 106 *et seq.* (Part XXII); see also Declaration, para. 6.

The risk to Mrs. Morgan's counsel undertook of not being paid at all is underscored by the fact that both Judge Gillmor and Judge Kurren previously entered erroneous judgments for Chicago Title, and there was also a $1.00 judgment with no fee award – each of which required counsel's endurance and persistence despite his not being paid – factors which would discourage any attorney from taking such cases in the future.

Chicago Title's extraordinary obstreperousness is another *Schefke* factor showing that the loadstar should be increased. Chicago Title has advanced a seemingly endless series of theories in an attempt to avoid any liability for its breach of its duty to defend – including the several theories the Ninth Circuit subsequently rejected. It even denied the existence of its duty to defend!

The importance of the issues before the Court is another *Schefke* factor militating for an increase in the loadstar. Hawaii's public policy – and an important one – is that insurance carries comply with the duties they have undertaken to their consumer-policyholders, and not even try to grind them down

with erroneous and evasive claim denials, etc. See HRS 431:13-303(11)(unfair claims settlement practices).

Considering all of the *Schefke* factors, the loadstar should be multiplied by a factor of 1.75.

WHEREFORE Mrs. Morgan's motion should be granted, and her fee award increased in light of the factors discussed above.

DATED: Honolulu, Hawaii, March 28, 2008.

      STEVEN B. JACOBSON
      Attorneys at Law
      A Limited Liability Law Company

      _____
      STEVEN B. JACOBSON
      Attorneys for Plaintiff