IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICE H. MORGAN, Trustee of the Morgan Family Revocable Living Trust Under Agreement Dated September 20, 1990, as Amended, | CIVIL NO. 00-00145 BMK |
| | MEMORANDUM IN SUPPORT OF MOTION |
| Plaintiff, | |
| v. | |
| CHICAGO TITLE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION

As this Court's Order of March 31, 2008, has now recognized (at 2-3), the question of whether a trial judge should follow the "law of the case" set forth in a Ninth Circuit panel decision, on any remand, is "discretionary." United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000).

It is an *abuse* of discretion for a trial judge to *follow* a Ninth Circuit panel decision, if [(1)] "the panel's decision … was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was clearly different; (4) other changed circumstances exist; *or* (5) a manifest injustice would otherwise result." Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005).

~ 3 ~

Consequently, the Court's Order of January 4, 2008 (at 6) was mistaken insofar as it held that aspects of Mrs. Morgan's motion for reconsideration were "barred by 'the law of the case doctrine.'"

See also the analogous Seventh Circuit rule set forth in <u>Donohue v. Consolidated Operating and Production Co.</u>, 30 F.3d 907, 910-911 (7th Cir. 1994) ("A District Court that disagrees with an appeals' court's decision … and wants to invoke the clearly erroneous exception to the law of the case doctrine … should … signal its disagreement but carry out the mandate.").

<u>Donohue</u> was answering the question of what a district court should do when responding to an allegation that a party "succeeded in 'misleading our court of appeals into a clearly erroneous ruling.'" *Id.*, 30 F.3d at 811.

It was equally mistaken for the Order of January 4, 2008 (at 6) to describe Mrs. Morgan's Motion for Reconsideration as requesting reconsideration only of the Court's judgment entered back on October 31, 2005 – to the exclusion of the Court's new judgment entered on November 8, 2008 (after the 2005 judgment had been vacated by the Ninth Circuit, and this action had been remanded).

Mrs. Morgan sought reconsideration of the then-operative 2007 judgment, not the vacated one.

That being so:

~ 4 ~

I.  THE AMOUNT OF THE COURT'S JUDGMENT SHOULD BE INCREASED BY AN ADDDITIONAL $295,877.20, PLUS PRE-JUDGMENT INTEREST, TO REFLECT THE VALUE OF THE $295,877.20 DEFICIENCY CLAIM MR. AND MRS. MORGAN SURRENDERED IN SETTLEMENT.

ALTERNATIVELY, THERE SHOULD BE A NEW TRIAL OF THAT QUESTION.

AT MINIMUM, THE COURT SHOULD DISCLOSE WHETHER (1) IT ANALYZED THE ENTIRE STATE COURT RECORD AND THE APPLICABLE LAW ON THE MERITS OF THAT QUESTION, OR (2) WHETHER IT MERELY DENIED THAT CLAIM ON THE BASIS OF THE COURT'S NOW-REJECTED THEORY THAT NON-CASH CONSIDERATION SURRENDERED IN SETTLEMENT IS UNRECOVERABLE (WITHOUT ANALYZING THE STATE COURT RECORD), OR (3) WHETHER IT DENIED THAT CLAIM ON SOME OTHER THEORY, SO THE APPELLATE COURT CAN CONDUCT A KNOWLEDGABLE REVIEW AND SO THE APPELLATE COURT AND THE PARTIES CAN KNOW WHICH STANDARD OF REVIEW TO APPLY

It appears that this Court may never have understood the relevance, and thus may never have considered the evidence – i.e., the entire state court record (Trial Exhibits 4 through 209)[1] – submitted at trial by the Morgans to support their claim for the value of the $295,877.20 deficiency claim they surrendered in order to settle with Dimiceli.  See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-33, 37-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-40, 44-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

It would have been physically impossible for the Court to review and analyze the entire state court record before it granted Chicago Title's motion for judgment, made late morning on the first day of trial, right after the Court had

_____

[1] The relevance of the state court record is shown below.

ruled on which exhibits it would admit – especially given that the Court, at that time, was instead focusing on the question of attorneys' fees.

When the Court later entered its findings and conclusions, its only comment on the claim for the value of the surrendered $295,877.20 deficiency claim was that "the Plaintiffs did not produce any evidence on the remaining consequential damage claims" – obviously indicating that no such evidence, let alone the entire state court record, had been weighed and evaluated. Findings and Conclusions, filed July 15, 2005, at 1033.

When Morgans then filed post-finding motions, the Court denied reconsideration of the $295,877.20 claim, based upon findings that the value of non-cash consideration given up in settlement is unrecoverable, and/or that Morgans had supposedly failed to cite the California Court of Appeal's Earth Elements holding in their pre-judgment filings – again without indicating that the Court had gone through the State Court record to weigh and evaluate the merits of the $295,877.20 claim. Order of October 28, 2005, at 1227-1228; Order of March 2, 2006, at 1261-1265.

The Ninth Circuit has now ruled that Mrs. Morgan *can* recover the value of non-cash consideration she surrendered in settlement, disregarding the Court's (inaccurate)[2] finding that <u>Earth Elements</u> hadn't been cited.

Mrs. Morgan therefore asks the Court to reconsider that claim, weigh and consider the evidence it apparently deemed irrelevant to its considerations before, and upon such reconsideration increase her judgment by $295,877.20 plus pre-judgment interest.[3]

Alternatively, Mrs. Morgan asks that her judgment be increased by such other value as the Court may determine that said claim had[4] at the time it was surrendered, plus prejudgment interest, or order a new trial on that question.

If nothing else, please state, and thereby disclose to the appellate court and the parties, whether this Court went through the State Court record and weighed

---

[2] <u>Earth Elements</u> had been cited in Morgans' Trial Brief, filed May 10, 2005, at 1-17, 25; Proposed Findings, filed June 20, 2005, at 30), Proposed Conclusions, filed June 20, 2005, at 35-36), and reconsideration motion filed August 1, 2005, at 39-40.

[3] That part of the settlement was in good faith for the same reasons the other parts of the settlement were in good faith.

[4] Under Hawaii contract and tort law, "The uncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount." "When the fact of damage is established, Hawaii law will not insist upon a higher degree of certainty as to the amount of damages than the nature of the case admits, particularly where the uncertainty was caused by the defendant's own wrongful conduct." "Damages which cannot accurately be measured should not for that reason be denied, but the amount should be left to the jury." <u>Living Designs, Inc. v. E.I. DuPont de Nemours & Co.</u>, 431 F.3d 355, 366, 376 (9th Cir. 2005).

and evaluated its merits, or whether it simply rejected it on the theory that non-cash consideration is unrecoverable (or some other theory), so the appellate court and the parties can apply an appropriate standard of review.

If this Court declined to follow Hawaii state law, notwithstanding <u>Migra v. Warren City School District Board of Education</u>, 465 U.S. 75, 80-85, 102 S.Ct. 892, 896-898, 79 L.Ed.2d. 56, 61-64 (1984)(state collateral estoppel law applies in diversity actions), the Court should say so so that the Ninth Circuit and U. S. Supreme Court can determine whether <u>Migra</u> should have been followed.

As for the merits of her claim:

At the trial of this action, Mr. and Mrs. Morgan presented claims for two kinds of damages: (1) the value of the consideration they surrendered in settling with Dimiceli after Chicago Title breached its duty to defend them in the state court action, *and* (2) the attorneys' fees and costs they incurred in the state court action. See, e.g., as to the value of the surrendered consideration, Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

Mrs. Morgan's two-part claim for *the value of the surrendered consideration* should not be confused with her analytically separate claim for the *attorneys' fees and costs* incurred by the Morgans in the state court action.

The surrendered consideration was (1) the $30,096.64 judgment against Dimiceli which is the subject of Part I above, plus (2) Morgans' claim against Dimiceli for the $295,877.20 deficiency still owed to the Morgans on their secured promissory note, after the state-court-ordered foreclosure sale. See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

The $295,877.20 value of the surrendered deficiency claim was sought under Sentinel Insurance Co. v. First Insurance Co. of Hawaii, 76 Haw. 277, 296, 875 P.2d 894, 913 (1994)("Sentinel"), where the Hawaii Supreme Court held that once the duty to defend has been breached, the carrier's policyholder is "entitled to negotiate a reasonable and good faith settlement of the underlying claim which amount may then be utilized as presumptive evidence of the breaching insurer's liability" to the policyholder for indemnification, the carrier's breach having "waive[d] its right to approve of any settlement" as well as its right to require that liability be established by a litigated judgment. Id.; see, e.g., Proposed Findings, filed June 20, 2005, at 28, 37; Proposed Conclusions, filed June 20, 2005, at 34-36, 44-45; 76; see also Morgan Trial Brief, filed May 10, 2005, at 25.

$295,877.20 is the amount of the deficiency judgment entered against Kerr, the promisor, by the Hawaii state court. Trial Exhibit 147. That fact is important

because <u>Sentinel</u> further holds, as a matter of Hawaii law, that an insurance carrier in breach of its duty to defend is "collaterally estopped from re-litigating material factual findings" – such as the amount of the deficiency here – which were "actually or implicitly adjudicated in the underlying suit," even though the carrier was not a party thereto. <u>Id</u>.

   *Under <u>Migra v. Warren City School District Board of Education</u>, 465 U.S. 75, 80-85, 102 S.Ct. 892, 896-898, 79 L.Ed.2d. 56, 61-64 (1984), and its progeny, this Court is required to follow Hawaii collateral estoppel law.*

   The Morgans' showing at trial as to the value of their deficiency claim against Dimiceli, which was on appeal by the time it was surrendered in settlement, necessarily consisted entirely of documents.  See Proposed Findings, filed June 20, 2005, at 8, 10-13, 21-22, 28-62; Proposed Conclusions, filed June 20, 2005, at 17, 19-22, 27, 34-76; see also Morgan Trial Brief, filed May 10, 2005, at 24-32.

   Those documents showed that Morgans' state appeal "should" have been successful, based upon a review of the record in the state trial court, which is a common way of showing the value of a lost or surrendered appellate claim.  See, e.g., <u>Daugert v. Pappas</u>, 104 Wash.2d 254, 704 P.2d 600, 603-604 (Wash. 1985); Proposed Findings, filed June 20, 2005, at 37-62; Proposed Conclusions, filed June 20, 2005, at 45-76; see also Morgan Trial Brief, filed May 10, 2005, at 26-32.

Use of a "should" or "reasonable appellate court" standard in conducting such evaluations eliminates speculation over individualized factors. See Mattco Forge, Inc. v Arthur Young & Co., 52 Cal. App.4[th] 820, 840, 60 Cal.Rptr.2d 780, 793 (1997).

The amount of the $295,877.20 deficiency, definitively established by the deficiency judgment against Kerr, can be recalculated by re-performing the same calculations performed by the state trial judge. See Proposed Findings, filed June 20, 2005, at 10-13, 58-62; Proposed Conclusions, filed June 20, 2005, at 19-22, 71-76; see also Trial Exhibits 141 and 148.

That Dimiceli "should" have been held liable for that deficiency is established by her agreement – of which Morgans were third-party beneficiaries as a matter of Hawaii law – to take title to seller Kerr's property subject to the Morgans' mortgage, and to pay amounts she otherwise would have owed Kerr directly to the Morgans to help retire their mortgage. Trial Exhibit 106, at 4, para. 7; Trial Exhibit 218, *passim*; Trial Brief, filed May 10, 2005, at 26-29; Proposed Findings, filed June 20, 2005, at 8, 46-49; Proposed Conclusions, filed June 20, 2005, at 17, 56-60.

As held in In re New England Fish Co., 749 F.2d 1277, 1281 (9th Cir. 1994), in determining whether a third party is an "intended" beneficiary of a contractual promise, a provision that performance be rendered directly to the third party

"objectively verifies" the contracting parties' "inten[t]" to benefit the third party, and any alleged "subjective motive, purpose or desire of the contracting parties is not material."

The present judgment for Mrs. Morgan should therefore be increased by $295,877.20, plus interest at the legal rate reflecting the increase in the amount of the deficiency between June 26, 1998, and the date the Morgans surrendered the deficiency claim in settlement, and pre-judgment interest at the legal rate since the date of the surrender.

## II. THE COURT SHOULD RECONSIDER ITS COMPLETE REJECTION OF ANY AND ALL FEES AND COSTS INCURRED BY THE MORGANS AS A RESULT OF CHICAGO TITLE'S BREACH OF ITS DUTY TO DEFEND.

THE COURT'S RECENT RULING GRANTING MRS. MORGAN'S FEES INCURRED HEREIN, A RECENT HAWAII SUPREME COURT DECISION, THE EVIDENCE AND LAW THE COURT APPARENTLY OVERLOOKED, AND OTHER FACTORS, ALL SHOW THAT THE MORGANS ESTABLISHED THEIR RIGHT TO RECOVER THEIR STATE COURT FEES, AND THAT A PARTIAL NEW TRIAL ON THE FEE AND COST QUESTION SHOULD BE GRANTED.

AT MINIMUM, THE COURT SHOULD DISCLOSE (1) WHETHER IT CONSIDERED PLAINTIFFS' EVIDENCE AND THE APPLICABLE LAW ESTABLISHING THAT COLLATERAL ESTOPPEL BARRED CHICAGO TITLE FROM DISPUTING THE REASONABLENESS AND NECESSITY OF NOT LESS THAN $131,941.30 OF THE FEES INCURRED BY THE MORGANS IN THE STATE COURT ACTION, OR (2) WHETHER IT OVERLOOKED THAT ARGUMENT, AND (3) IF THE COURT REJECTED IT RATHER THAN OVERLOOKED IT, WHAT ITS REASONS FOR REJECTING IT WERE, SO THE APPELLATE COURT CAN PERFORM A KNOWLEDGABLE REVIEW AND SO THE APPELLATE COURT AND THE PARTIES KNOW WHICH STANDARD OF REVIEW TO APPLY

<u>Amount, Reasonableness, and Necessity</u>. At trial, the Morgans showed the amount, reasonableness and necessity of their state court attorneys' fees in two different ways – the first of which the Court apparently overlooked.

First, the Morgans presented duly-admitted exhibits showing that the Hawaii state court had already determined that they actually, reasonably and reasonably incurred not less than $131,941.30 of fees in the underlying state court action, based upon the state court's own review of the state court record, the sworn declaration of Morgans' counsel, and *Morgans' detailed task-by-task breakdown of their fees incurred there.* See Proposed Findings, filed June 20, 2005, at 85, detailing the calculation and the exhibits supporting it; Proposed Conclusions, filed June 20, 2005, at 103-104, again detailing the same; Trial Exhibits 141, 146 and 147.

*The Morgans' detailed task-by-task fee breakdown was in essentially the same form as the Morgans' fee application in this case, which the Court has now found sufficient to support a fee award herein, and to be compliant with Local Rule 54.*

That breakdown is attached as Exhibit 141 to Plaintiff's Motion to Alter and Amend filed in December 2007.

The Morgans then showed that under Sentinel, supra, 76 Haw. at 296, 875 P.2d at 913, the state court's determination that they actually and reasonably incurred at least $131,941.30 of fees resolves that question for purposes of this action. Proposed Findings, filed June 20, 2005, at 86; Proposed Conclusions, filed June 20, 2005, at 104.

That is because of <u>Sentinel</u>'s holding that, as a matter of Hawaii law, an insurance carrier in breach of its duty to defend is "collaterally estopped from re-litigating material factual findings actually or implicitly adjudicated in the underlying suit," even though the carrier was not a party thereto.  <u>Id</u>.

*Under <u>Migra</u>, <u>supra</u>, 465 U.S. at 80-85, 102 S.Ct. at 896-898, 79 L.Ed.2d. at 61-64, this federal district court is required to follow Hawaii collateral estoppel law in diversity cases.*

It appears obvious, however, from the Court's findings and conclusions, that the Court overlooked, and may never even have considered, (1) Morgans' collateral estoppel argument, (2) <u>Migra</u>'s requirement that the federal courts apply Hawaii's special collateral estoppel rule in diversity actions where an insurance company has breached its duty to defend, (3) the existence or significance of the state court's determination that Morgans had reasonably incurred at least $131,941.30 of fees in the underlying action, or (4) the Morgans' detailed task-by-task breakdown of their state court fees.

Neither the collateral estoppel argument, nor the existence of the state court's determination, nor the Morgans' detailed task-by-task breakdown of their state court fees, are addressed – or even mentioned – in the court's findings and conclusions.  Findings and Conclusions, filed July 15, 2005, at 1-7, esp. 5-6.

Nor is any of those matters mentioned in any of the Court's subsequent

orders, although the Morgans again pointed to them in their motion for amended findings and conclusions.  Motion, filed August 1, 2005, at Motion, para. 2(c), p, 4, Requested Amendments and Additions, at 83, 84-85, Memorandum, at 135, 141; Order of October 26, 2005, at 1-8; Order of March 2, 2006, at 1-10, esp. 5-9; Order of May 8, 2006, at 1-2.

That being so, the Court should reconsider its previous findings and conclusions in light of the overlooked matters, i.e., the state court's determination, Sentinel, Migra, and the Morgans' (attached) detailed task-by-task fee breakdown, and hold that Morgans' have indeed established the actuality, reasonableness, and necessity of at least $131,941.30 of their state court fees.

Alternatively, if the Court did consider the significance of the state court's determination of the $131,941.30 figure, but chose to disregard it *sub silento*, the Court should reconsider that decision in light of Sentinel, Migra, the Morgans' task-by-task fee breakdown, and the Hawaii Supreme Court's new decision – rendered after this Court's previous orders – in Stanford Carr Development v. Unity House, 111 Haw. 286, 306, 141 P.3d 459, 479 (2006).

In Stanford Carr Development, supra, the Hawaii Supreme Court held that a declaration by the supervising litigation attorney that s/he reviewed and approved fee charges sought, and that the time spent and costs incurred were reasonable and necessary under the circumstances, is sufficient to support a request for all such

fees and costs.  It further held as follows (id.):

> "This Court has stated that 'The Judge is an expert [her]self and
> knows as well as a legal expert what are reasonable attorneys' fees …
> the amount of attorneys fees is within the jurisdiction of the Court,
> and in fixing that amount the trial court may proceed on its own
> knowledge of the value of the solicitor's services.'  In re Thz Fo
> Farm, 37 Haw. 447, 453 (1947).  Here the circuit court judge had
> personal knowledge of the complexity of the litigation and the nature
> and quality of the legal services rendered before it."

Second, Morgans attempted a *de novo* showing of the actuality,

reasonableness and necessity of a larger amount of fees incurred in the underlying

action, which showing this Court rejected in its entirety.

If the Court overlooked the Morgans' detailed, duly authenticated, task-by-

task fee summary in rejecting that showing, or applied law now superseded in

Stanford Carr Development in doing so, that rejection should be reconsidered.

That rejection should be reconsidered in any event, because it is based upon

a mistaken reading of Aerojet-General Corp. v. Transport Indemnity Co., 17

Cal.4th 38, 64, 948 P.2d 909, 925 (Cal. 1997), which actually holds that it is

insurance carriers in breach of their duty to defend which have "the burden of

proof" that their policyholders' fees and costs "are in fact . . . unnecessary" –that is

*not* their policyholders' burden.

If the Court doubts that the Hawaii Supreme Court would apply the same

rule as the California Supreme Court, i.e., placing the burden of proving

reasonableness and necessity upon insurance carriers in breach of their duty to

defend, that question should be certified to the Hawaii Supreme Court for its resolution under Hawaii Rule of Appellate Procedure 13.

Allocability. Notwithstanding this Court's previous holding, California law plainly holds that it is insurance carriers in breach of their duty to defend which have the burden of proving that their policyholders' reasonably incurred fees and costs are allocable to uncovered matters – that is *not* the policyholder's burden.

That is, quite clearly, what is held in both The Upper Deck Co., LLC v. Federal Insurance Co., 358 F.3d 608, 612 (9th Cir. 2004) ("Once it has been established that there is a duty to defend, '*the insurer* becomes obligated to defend against all of the claims in the lawsuit, both covered and uncovered, until *the insurer* produces undeniable evidence supporting the allocation of a specific portion of the defense costs to a non-covered claim."); and Buss v. Superior Court, 47 Cal.App.4[th] 679, 50 Cal.Rptr. 447, 456-457 (Cal.App. 1996) (the insurer's burden of proving by "undeniable evidence" the existence of uncovered matters, and that fee, cost or expense items are solely allocable to them, is equivalent to the burden faced by a movant for summary judgment), *aff'd*, 16 Cal.4[th] 38, 939 P.2d 766 (Cal. 1997).

Notably, the Ninth Circuit did *not* affirm that part of the Court's vacated 2005 decisions.

Consequently, the Court's previous findings and conclusions which so held

should be revised and amended, to say that Chicago Title has the burden of proving

allocability. The Court should order a new trial limited to the question of whether

Chicago Title can meet its burden of proving that any of Mrs. Morgans' actual,

reasonable, and necessary state court fees are allocable to uncovered matters.

If the Court doubts that the Hawaii Supreme Court would apply the same

rule as the California Supreme Court, i.e., placing the burden of proving allocation

upon insurance carriers in breach of their duty to defend, that question should

likewise be certified to the Hawaii Supreme Court for its resolution under Hawaii

Rule of Appellate Procedure 13.

Alternatively, if this Court maintains that the burden of proving non-

allocability is on Mrs. Morgan, she should be granted a partial new trial for the

purpose of allowing her to meet that burden. The record shows that this Court

clearly indicated that Chicago Title would have that burden at trial, in denying

Chicago Title's motion for partial summary judgment. Order of October 15, 2004,

at 14 ("If, at a later time, Defendant [Chicago Title] can carry its heavy burden and

demonstrate allocability, the court will allocate expenses.").

As the Second Circuit stated in Prisco v. A. A. Carting Corp., 168 F.3d 593,

607 (2d Cir. 1999), a court's "revisiting without notice" an issue "which ultimately

turned on the sufficiency of a party's evidence" after that party has put on its case

"raises the specter of severe prejudice" if it deprives a party "of the opportunity to

~ 18 ~

prepare and present evidence on that issue at trial." Indeed, it deprives that party of due process.

See also <u>White v. Godinez</u>, 301 F.3d 796, 803 (7th Cir. 2002)(under the law of the case doctrine, we do not reopen issues decided in earlier stages of the same litigation unless … the party that benefited from the earlier ruling would not be unduly harmed").

<u>CONCLUSION</u>

Mrs. Morgan's should be relieved from the judgment as requested for each and all of the foregoing reasons.

DATED:  Honolulu, Hawaii, April 25, 2008.

STEVEN B. JACOBSON
Attorneys at Law
A Limited Liability Law Company


STEVEN B. JACOBSON
Attorneys for Plaintiff